

FILED

MAR 06 2015

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

15CV 368—CAB RBB

## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: LENOVO ADWARE LITIGATION    /    MDL DOCKET NO._____

## MOTION FOR TRANSFER OF ACTIONS TO THE EASTERN DISTRICT OF NORTH CAROLINA PURSUANT TO 28 U.S.C. SECTION 1407 FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS

Plaintiff Lukas Pick ("Plaintiff" or "Movant") respectfully moves this Panel for an Order pursuant to 28 U.S.C. §1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation consolidating or coordinating for pretrial proceedings the putative class actions set forth in the accompanying Schedule of Actions (hereinafter the "Actions") to the Eastern District of North Carolina, as well as any other related actions that are subsequently-filed. Plaintiff's case was filed and is currently pending in the Eastern District of North Carolina before the Honorable James C. Dever III. Plaintiff seeks transfer of this multi-district litigation ("MDL") to the Eastern District of North Carolina and assignment to the Honorable Judge Dever. The grounds for this motion are fully articulated in the accompanying Memorandum of Law, which are summarized as follows:

1.     All of the Actions concern the inclusion of "adware" software, known as Superfish Visual Discovery ("Superfish Adware"), on Lenovo computers, thereby intercepting electronic communications sent or received by the computers, from January 1, 2014 through the

present, in violation of the Federal Wiretap Act, 18 U.S.C. §2511, *et seq.*, and other related statutes. Lenovo secretly loaded their computers with Superfish Adware, without the consent of purchasing consumers (the "Class"), and subsequently hijacked web sessions, invaded the privacy of the Class, and exposed them to security risks.

2. Each of the Actions were filed in various federal jurisdictions:

(a) *Bennett v. Lenovo (United States), Inc., et al.*, No. 3:15-CV-00368-CAB-RBB (S.D. Cal. filed Feb. 19, 2015);

(b) *Hunter v. Lenovo (United States), Inc., et al.*, No. 5:15-cv-00819 (N.D. Cal. filed Feb. 23, 2015);

(c) *Sterling International Consulting Group v. Lenovo (United States) Inc. et al.*, No. 5:15-cv-00807-RMW (N.D. Cal. filed Feb. 23, 2015); and

(d) *Pick v. Lenovo (United States), Inc., et al.*, No. 5:15-cv-00068-D (E.D.N.C. filed Feb. 24, 2015).

3. Because the claims filed in all of the Actions involve common issues of fact and common claims, overlapping putative classes, and the same defendants, the Actions should be transferred to a single district for coordination and consolidation of pretrial proceedings.

4. Transfer of the Actions to the Eastern District of North Carolina would best serve the convenience of the parties and witnesses and promote the just and efficient conduct of all the actions. The Eastern District of North Carolina is particularly appropriate because:

(a) Lenovo's corporate headquarters is located in the District;

(b) Lenovo has a laptop manufacturing facility located in North Carolina,

(c) the decisions concerning the installation of the adware were made in this District;

(d)     witnesses who designed the affected computers and made software decisions on the computers at issue are located in North Carolina;

(e)     the Eastern District of North Carolina is under-utilized and has not one pending MDL case, whereas the Northern District of California, where two of the other Actions currently sit, is burdened with seventeen MDL cases and the Southern District of California, where one of the other Actions is currently pending, has seven pending MDL cases. *See* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-17- .pdf at p. 1 (last visited Feb. 24, 2015) a copy of which is attached hereto as Exhibit 1;

(f)     the Eastern District of North Carolina has the resources and requisite experience to handle MDL and is a highly efficient jurisdiction; and

(g)     the Eastern District of North Carolina is convenient to all parties and witnesses for travel purposes.

5.     If the Actions are not transferred and consolidated, the parties and courts will face the burden and expense of litigating claims involving overlapping putative classes and the same defendants in multiple judicial districts.

WHEREFORE, Plaintiff respectfully requests that the Panel enter an Order pursuant to 28 U.S.C. §1407 consolidating or coordinating for pretrial proceedings the putative class actions set forth in the accompanying Schedule of Actions to the Eastern District of North Carolina, as well as any other related actions that are subsequently-filed.

DATED: February 25, 2015

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
MARK DEARMAN
HOLLY W. KIMMEL
ALEX D. KRUZYK

*s/ Mark Dearman*
MARK DEARMAN

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
hkimmel@rgrdlaw.com
akruzyk@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

BLUE STEPHENS & FELLERS LLP
DHAMIAN A. BLUE
DANIEL T. BLUE, JR.
DANIEL T. BLUE, III
205 Fayetteville Street, Suite 300
Raleigh, NC 27601
Telephone: 919/833-1931
919/833-8009 (fax)
dab@bluestephens.com

Attorneys for Plaintiff

# EXHIBIT 1

# MDL Statistics Report - Distribution of Pending MDL Dockets by District

**MDL Filters:**
Status: Transferred
Limited to Active Litigations

| District | Judge (Title) | Docket No. | Litigation | Actions Now Pending | Total Actions (Historical) |
|---|---|---|---|---|---|
| ALN | Karon O. Bowdre (Chief Judge, USDC) | MDL -2595 | IN RE: Community Health Systems, Inc., Customer Data Security Breach Litigation | 5 | 5 |
| | R. David Proctor (U.S. District Judge) | MDL -2406 | IN RE: Blue Cross Blue Shield Antitrust Litigation | 28 | 51 |
| ARE | Billy Roy Wilson (Sr. District Judge) | MDL -1507 | IN RE: Prempro Products Liability Litigation | 50 | 9,761 |
| AZ | James A Teilborg (Sr. District Judge) | MDL -2119 | IN RE: Mortgage Electronic Registration Systems (MERS) Litigation | 5 | 94 |
| CAC | David O Carter (U.S. District Judge) | MDL -2145 | IN RE: Medical Capital Securities Litigation | 1 | 18 |
| | Dale S Fischer (U.S. District Judge) | MDL -2274 | IN RE: CitiMortgage, Inc., Home Affordable Modification Program (HAMP) Contract Litigation | 12 | 13 |
| | Dale S Fischer (U.S. District Judge) | MDL -2404 | IN RE: Nexium (Esomeprazole) Products Liability Litigation | 22 | 55 |
| | Andrew J. Guilford (U.S. District Judge) | MDL -2461 | IN RE: MyKey Technology Inc. Patent Litigation | 6 | 6 |
| | Philip S Gutierrez (U.S. District Judge) | MDL -2074 | IN RE: WellPoint, Inc., Out-of-Network "UCR" Rates Litigation | 1 | 13 |
| | Philip S Gutierrez (U.S. District Judge) | MDL -2438 | IN RE: 5-Hour Energy Marketing and Sales Practices Litigation | 0 | 16 |
| | Margaret M Morrow (Sr. District Judge) | MDL -2291 | IN RE: Wesson Oil Marketing and Sales Practices Litigation | 7 | 7 |
| | Mariana R Pfaelzer (Sr. District Judge) | MDL -2265 | IN RE: Countrywide Financial Corp. Mortgage-Backed Securities Litigation | 13 | 47 |
| | Dean D Pregerson (U.S. District Judge) | MDL -2199 | IN RE: POM Wonderful LLC Marketing and Sales Practices Litigation | 16 | 23 |
| | James V Selna (U.S. District Judge) | MDL -2151 | IN RE: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation | 90 | 436 |
| | Christina A Snyder (U.S. District Judge) | MDL -2317 | IN RE: Oreck Corporation Halo Vacuum and Air Purifiers Marketing and Sales Practices Litigation | 6 | 6 |
| | George H Wu (U.S. District Judge) | MDL -2153 | IN RE: United Parcel Service "Air-in-Ground" Marketing and Sales Practices Litigation | 0 | 5 |
| | George H Wu (U.S. District Judge) | MDL -2424 | IN RE: Hyundai and Kia Fuel Economy Litigation | 55 | 56 |
| | George H Wu (U.S. District Judge) | MDL -2531 | IN RE: Michaels Stores, Inc., Wage and Hour Employment Practices Litigation | 6 | 7 |
| CAN | Charles R Breyer (Sr. District Judge) | MDL -1913 | IN RE: Transpacific Passenger Air Transportation Antitrust Litigation | 26 | 26 |
| | Charles R Breyer (Sr. District Judge) | MDL -2159 | IN RE: AutoZone, Inc., Wage and Hour Employment Practices Litigation | 5 | 7 |
| | Charles R Breyer (Sr. District Judge) | MDL -2184 | IN RE: Google Inc. Street View Electronic Communications Litigation | 21 | 21 |
| | Edward M. Chen (U.S. District Judge) | MDL -2330 | IN RE: Carrier IQ, Inc., Consumer Privacy Litigation | 68 | 70 |
| | Maxine M Chesney (Sr. District Judge) | MDL -2532 | IN RE: Yosemite National Park Hantavirus Litigation | 10 | 10 |
| | Samuel Conti (Sr. District Judge) | MDL -1917 | IN RE: Cathode Ray Tube (CRT) Antitrust Litigation | 69 | 73 |
| | Edward J. Davila (U.S. District Judge) | MDL -2314 | IN RE: Facebook Internet Tracking Litigation | 22 | 30 |
| | James Donato (U.S. District Judge) | MDL -2600 | IN RE: Protegrity Corporation and Protegrity USA, Inc., Patent Litigation | 17 | 17 |
| | Susan Yvonne Illston (Sr. District Judge) | MDL -1827 | IN RE: TFT-LCD (Flat Panel) Antitrust Litigation | 12 | 177 |
| | Susan Yvonne Illston (Sr. District Judge) | MDL -2124 | IN RE: Conseco Life Insurance Co. Lifetrend Insurance Marketing and Sales Practices Litigation | 3 | 6 |
| | William H Orrick, III (U.S. District Judge) | MDL -2521 | IN RE: Lidoderm Antitrust Litigation | 23 | 24 |
| | Yvonne Gonzalez Rogers (U.S. District Judge) | MDL -2420 | IN RE: Lithium Ion Batteries Antitrust Litigation | 9 | 79 |
| | Yvonne Gonzalez Rogers (U.S. District Judge) | MDL -2497 | IN RE: Air Crash at San Francisco, California, on July 6, 2013 | 20 | 35 |
| | Richard Seeborg (U.S. District Judge) | MDL -2015 | IN RE: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation | 0 | 13 |
| | Richard Seeborg (U.S. District Judge) | MDL -2143 | IN RE: Optical Disk Drive Products Antitrust Litigation | 45 | 45 |
| | Jeffrey S White (U.S. District Judge) | MDL -2555 | IN RE: Coca-Cola Products Marketing and Sales Practices Litigation (No. II) | 8 | 8 |
| | Claudia Wilken (Chief Judge, USDC) | MDL -2541 | IN RE: National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation | 7 | 8 |
| CAS | Michael M. Anello (U.S. District Judge) | MDL -2286 | IN RE: Midland Credit Management, Inc., Telephone Consumer Protection Act (TCPA) Litigation | 129 | 134 |
| | Anthony J. Battaglia (U.S. District Judge) | MDL -2258 | IN RE: Sony Gaming Networks and Customer Data Security Breach Litigation | 65 | 65 |
| | Anthony J. Battaglia (U.S. District Judge) | MDL -2452 | IN RE: Incretin-Based Therapies Products Liability Litigation | 607 | 614 |
| | Roger T Benitez (U.S. District Judge) | MDL -1889 | IN RE: Peregrine Systems, Inc., Securities Litigation | 0 | 35 |
| | Larry Alan Burns (U.S. District Judge) | MDL -2121 | IN RE: Musical Instruments and Equipment Antitrust Litigation | 34 | 38 |
| | John A Houston (U.S. District Judge) | MDL -2295 | IN RE: Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act (TCPA) Litigation | 61 | 65 |
| | Barry Ted Moskowitz (Chief Judge, USDC) | MDL -2087 | IN RE: Hydroxycut Marketing and Sales Practices Litigation | 120 | 129 |
| CO | John L Kane, Jr (Sr. District Judge) | MDL -2063 | IN RE: Oppenheimer Rochester Funds Group Securities Litigation | 4 | 30 |
| CT | Vanessa Lynee Bryant (U.S. District Judge) | MDL -2407 | IN RE: Higher One OneAccount Marketing and Sales Practices Litigation | 6 | 6 |
| | Alvin W Thompson (U.S. District Judge) | MDL -2478 | IN RE: Convergent Telephone Consumer Protection Act (TCPA) Litigation | 20 | 22 |
| | Stefan R Underhill (U.S. District Judge) | MDL -2516 | IN RE: Aggrenox Antitrust Litigation | 23 | 25 |
| DC | Rosemary M Collyer (U.S. District Judge) | MDL -1880 | IN RE: Papst Licensing Digital Camera Patent Litigation | 0 | 15 |
| | Paul L Friedman (Sr. District Judge) | MDL -1869 | IN RE: Rail Freight Fuel Surcharge Antitrust Litigation | 7 | 18 |
| | Richard J Leon (U.S. District Judge) | MDL -1668 | IN RE: Federal National Mortgage Association Securities, Derivative & "ERISA" Litigation | 1 | 18 |
| | Emmet G Sullivan (U.S. District Judge) | MDL -2165 | IN RE: Endangered Species Act Section 4 Deadline Litigation | 4 | 24 |

| | Judge | MDL No. | Title | | |
|---|---|---|---|---|---|
| | Reggie B Walton (U.S. District Judge) | MDL -2524 | IN RE: Health Management Associates, Inc., Qui Tam Litigation (No. II) | 9 | 9 |
| DE | Sue L Robinson (U.S. District Judge) | MDL -2429 | IN RE: Automated Transactions LLC Patent Litigation | 17 | 28 |
| | Gregory M Sleet (U.S. District Judge) | MDL -2344 | IN RE: Bear Creek Technologies, Inc., ('722) Patent Litigation | 15 | 15 |
| | Leonard P. Stark (Chief Judge, USDC) | MDL -1717 | IN RE: Intel Corp. Microprocessor Antitrust Litigation | 56 | 82 |
| FLM | James S Moody, Jr (Sr. District Judge) | MDL -1626 | IN RE: Accutane (Isotretinoin) Products Liability Litigation | 2 | 123 |
| | Gregory A Presnell (U.S. District Judge) | MDL -2557 | IN RE: Auto Body Shop Antitrust Litigation | 23 | 23 |
| FLS | Cecilia M Altonaga (U.S. District Judge) | MDL -2051 | IN RE: Denture Cream Products Liability Litigation | 75 | 223 |
| | James Lawrence King (Sr. District Judge) | MDL -2036 | IN RE: Checking Account Overdraft Litigation | 11 | 100 |
| | Joan A Lenard (U.S. District Judge) | MDL -2457 | IN RE: Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practices Litigation | 7 | 7 |
| | Kenneth A Marra (U.S. District Judge) | MDL -1916 | IN RE: Chiquita Brands International, Inc., Alien Tort Statute and Shareholders Derivative Litigation | 13 | 18 |
| | Kenneth A Marra (U.S. District Judge) | MDL -2246 | IN RE: Air Crash Near Rio Grande, Puerto Rico, on December 3, 2008 | 5 | 7 |
| | Donald M Middlebrooks (U.S. District Judge) | MDL -1928 | IN RE: Trasylol Products Liability Litigation | 3 | 1,834 |
| | Federico A Moreno (U.S. District Judge) | MDL -2599 | IN RE: Takata Airbag Products Liability Litigation | 21 | 21 |
| | Patricia A Seitz (U.S. District Judge) | MDL -2183 | IN RE: Brican America LLC Equipment Lease Litigation | 2 | 6 |
| GAM | Clay D Land (Chief Judge, USDC) | MDL -2004 | IN RE: Mentor Corp. ObTape Transobturator Sling Products Liability Litigation | 454 | 758 |
| GAN | Timothy C Batten (Sr. District Judge) | MDL -2089 | IN RE: Delta/AirTran Baggage Fee Antitrust Litigation | 1 | 14 |
| | William S Duffey, Jr (U.S. District Judge) | MDL -2329 | IN RE: Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation | 396 | 404 |
| | Thomas W Thrash, Jr (Chief Judge, USDC) | MDL -1845 | IN RE: ConAgra Peanut Butter Products Liability Litigation | 1 | 388 |
| | Thomas W Thrash, Jr (Chief Judge, USDC) | MDL -2084 | IN RE: AndroGel Antitrust Litigation (No. II) | 10 | 14 |
| | Thomas W Thrash, Jr (Chief Judge, USDC) | MDL -2218 | IN RE: Camp Lejeune, North Carolina, Water Contamination Litigation | 13 | 14 |
| | Thomas W Thrash, Jr (Chief Judge, USDC) | MDL -2495 | IN RE: Atlas Roofing Corporation Chalet Shingle Products Liability Litigation | 10 | 12 |
| | Thomas W Thrash, Jr (Chief Judge, USDC) | MDL -2583 | IN RE: The Home Depot, Inc., Customer Data Security Breach Litigation | 36 | 36 |
| ID | B. Lynn Winmill (Chief Judge, USDC) | MDL -2186 | IN RE: Fresh and Process Potatoes Antitrust Litigation | 2 | 7 |
| ILC | Harold A Baker (Sr. District Judge) | MDL -2104 | IN RE: IKO Roofing Shingle Products Liability Litigation | 12 | 16 |
| ILN | Marvin E Aspen (Sr. District Judge) | MDL -1715 | IN RE: Ameriquest Mortgage Co. Mortgage Lending Practices Litigation | 19 | 523 |
| | Robert M Dow, Jr (U.S. District Judge) | MDL -2031 | IN RE: Dairy Farmers of America, Inc., Cheese Antitrust Litigation | 10 | 10 |
| | Robert M Dow, Jr (U.S. District Judge) | MDL -2575 | IN RE: Fluidmaster, Inc., Water Connector Components Products Liability Litigation | 7 | 7 |
| | Robert W Gettleman (Sr. District Judge) | MDL -2519 | IN RE: AIG Workers Compensation Insurance Policyholder Litigation | 7 | 7 |
| | Joan B Gottschall (Sr. District Judge) | MDL -2334 | IN RE: Liberty Refund Anticipation Loan Litigation | 10 | 10 |
| | Joan B Gottschall (Sr. District Judge) | MDL -2590 | IN RE: Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation | 21 | 21 |
| | James F Holderman, Jr (U.S. District Judge) | MDL -2303 | IN RE: Innovatio IP Ventures, LLC, Patent Litigation | 0 | 24 |
| | James F Holderman, Jr (U.S. District Judge) | MDL -2416 | IN RE: Capital One Telephone Consumer Protection Act (TCPA) Litigation | 30 | 81 |
| | Matthew F Kennelly (U.S. District Judge) | MDL -1997 | IN RE: Text Messaging Antitrust Litigation | 3 | 38 |
| | Matthew F Kennelly (U.S. District Judge) | MDL -2545 | IN RE: Testosterone Replacement Therapy Products Liability Litigation | 1,017 | 1,019 |
| | John Z. Lee (U.S. District Judge) | MDL -2492 | IN RE: National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation | 14 | 14 |
| | Joan Humphrey Lefkow (Sr. District Judge) | MDL -2371 | IN RE: Unified Messaging Solutions LLC Patent Litigation | 0 | 72 |
| | Harry D Leinenweber (Sr. District Judge) | MDL -2580 | IN RE: Opana ER Antitrust Litigation | 10 | 10 |
| | Charles R Norgle, Sr (U.S. District Judge) | MDL -1604 | IN RE: Ocwen Federal Bank FSB Mortgage Servicing Litigation | 0 | 93 |
| | Rebecca R Pallmeyer (U.S. District Judge) | MDL -2272 | IN RE: Zimmer NexGen Knee Implant Products Liability Litigation | 1,343 | 1,559 |
| | Milton I Shadur (Sr. District Judge) | MDL -2455 | IN RE: Stericycle, Inc., Steri-Safe Contract Litigation | 10 | 10 |
| | Amy J St. Eve (U.S. District Judge) | MDL -2602 | IN RE: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation | 5 | 5 |
| ILS | David R Herndon (Chief Judge, USDC) | MDL -2100 | IN RE: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation | 3,643 | 11,785 |
| | David R Herndon (Chief Judge, USDC) | MDL -2385 | IN RE: Pradaxa (Dabigatran Etexilate) Products Liability Litigation | 1,848 | 2,592 |
| INN | Robert L Miller, Jr (U.S. District Judge) | MDL -2391 | IN RE: Biomet M2a Magnum Hip Implant Products Liability Litigation | 1,963 | 2,451 |
| INS | Larry J McKinney (Sr. District Judge) | MDL -2181 | IN RE: Method of Processing Ethanol Byproducts and Related Subsystems ('858) Patent Litigation | 22 | 22 |
| | Richard L Young (Chief Judge, USDC) | MDL -2570 | IN RE: Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Products Liability Litigation | 59 | 59 |
| KS | John W Lungstrum (Sr. District Judge) | MDL -1616 | IN RE: Urethane Antitrust Litigation | 0 | 33 |
| | John W Lungstrum (Sr. District Judge) | MDL -2591 | IN RE: Syngenta AG MIR162 Corn Litigation | 533 | 533 |
| | Kathryn H Vratil (Sr. District Judge) | MDL -1840 | IN RE: Motor Fuel Temperature Sales Practices Litigation | 31 | 54 |
| | Kathryn H Vratil (Sr. District Judge) | MDL -2473 | IN RE: Monsanto Company Genetically-Engineered Wheat Litigation | 8 | 18 |
| KYE | Joseph M Hood (U.S. District Judge) | MDL -1877 | IN RE: ClassicStar Mare Lease Litigation | 11 | 30 |
| | Danny C Reeves (U.S. District Judge) | MDL -2226 | IN RE: Darvocet, Darvon and Propoxyphene Products Liability Litigation | 3 | 253 |
| | Amul R Thapar (U.S. District Judge) | MDL -2515 | IN RE: Pilot Flying J Fuel Rebate Contract Litigation (No. II) | 7 | 8 |
| KYW | John G Heyburn II (Sr. District Judge) | MDL -2504 | IN RE: Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) and Wage and Hour Litigation | 12 | 12 |
| | Thomas B Russell (U.S. District Judge) | MDL -2308 | IN RE: Skechers Toning Shoe Products Liability Litigation | 1,016 | 1,089 |
| LAE | Carl J Barbier (U.S. District Judge) | MDL -2179 | IN RE: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | 2,941 | 3,083 |
| | Kurt D Engelhardt (U.S. District Judge) | MDL -1873 | IN RE: FEMA Trailer Formaldehyde Products Liability Litigation | 0 | 4,828 |
| | Kurt D Engelhardt (U.S. District Judge) | MDL -2454 | IN RE: Franck's Lab, Inc., Products Liability Litigation | 34 | 34 |
| | Eldon E Fallon (U.S. District Judge) | MDL -1657 | IN RE: Vioxx Marketing, Sales Practices and Products Liability Litigation | 114 | 10,319 |
| | Eldon E Fallon (U.S. District Judge) | MDL -2047 | IN RE: Chinese-Manufactured Drywall Products Liability Litigation | 293 | 363 |
| | Eldon E Fallon (U.S. District Judge) | MDL -2592 | IN RE: Xarelto (Rivaroxaban) Products Liability Litigation | 220 | 220 |

| | Judge | MDL No. | Title | | |
|---|---|---|---|---|---|
| | Sarah S Vance (Chief Judge, USDC) | MDL -2328 | IN RE: Pool Products Distribution Market Antitrust Litigation | 32 | 35 |
| LAW | Rebecca F Doherty (U.S. District Judge) | MDL -2299 | IN RE: Actos (Pioglitazone) Products Liability Litigation | 4,033 | 4,186 |
| MA | Denise J. Casper (U.S. District Judge) | MDL -2503 | IN RE: Solodyn (Minocycline Hydrochloride) Antitrust Litigation | 15 | 15 |
| | Nathaniel M Gorton (U.S. District Judge) | MDL -2067 | IN RE: Celexa and Lexapro Marketing and Sales Practices Litigation | 7 | 13 |
| | Timothy S Hillman (U.S. District Judge) | MDL -2566 | IN RE: TelexFree Securities Litigation | 9 | 9 |
| | Michael A Ponsor (Sr. District Judge) | MDL -2208 | IN RE: Prudential Insurance Company of America SGLI/VGLI Contract Litigation | 4 | 4 |
| | F. Dennis Saylor (U.S. District Judge) | MDL -2375 | IN RE: Body Science LLC Patent Litigation | 6 | 6 |
| | Richard G Stearns (U.S. District Judge) | MDL -2432 | IN RE: Neurografix ('360) Patent Litigation | 10 | 10 |
| | Richard G Stearns (U.S. District Judge) | MDL -2513 | IN RE: Collecto, Inc., Telephone Consumer Protection Act (TCPA) Litigation | 3 | 3 |
| | Douglas P Woodlock (U.S. District Judge) | MDL -2428 | IN RE: Fresenius GranuFlo/NaturaLyte Dialysate Products Liability Litigation | 2,686 | 2,687 |
| | William G Young (U.S. District Judge) | MDL -2409 | IN RE: Nexium (Esomeprazole) Antitrust Litigation | 20 | 20 |
| | Rya W Zobel (U.S. District Judge) | MDL -2193 | IN RE: Bank of America Home Affordable Modification Program (HAMP) Contract Litigation | 31 | 32 |
| | Rya W Zobel (U.S. District Judge) | MDL -2242 | IN RE: Prograf Antitrust Litigation | 8 | 8 |
| | Rya W Zobel (U.S. District Judge) | MDL -2419 | IN RE: New England Compounding Pharmacy, Inc., Products Liability Litigation | 699 | 702 |
| MD | Catherine C Blake (U.S. District Judge) | MDL -2294 | IN RE: Webvention LLC ('294) Patent Litigation | 12 | 22 |
| | Marvin J Garbis (Sr. District Judge) | MDL -1961 | IN RE: Municipal Mortgage & Equity, LLC, Securities and Derivative Litigation | 12 | 14 |
| | Marvin J Garbis (Sr. District Judge) | MDL -2581 | IN RE: CTP Innovations, LLC, Patent Litigation | 9 | 9 |
| | J. Frederick Motz (Sr. District Judge) | MDL -2491 | IN RE: GNC Corp. TriFlex Products Marketing and Sales Practices Litigation (No. II) | 4 | 10 |
| | J. Frederick Motz (Sr. District Judge) | MDL -2498 | IN RE: Nutramax Cosamin Marketing and Sales Practices Litigation | 4 | 5 |
| | J. Frederick Motz (Sr. District Judge) | MDL -2528 | IN RE: Natrol, Inc., Glucosamine/Chondroitin Marketing and Sales Practices Litigation | 4 | 4 |
| | Roger W Titus (Sr. District Judge) | MDL -2083 | IN RE: KBR, Inc., Burn Pit Litigation | 1 | 58 |
| ME | D. Brock Hornby (U.S. District Judge) | MDL -2426 | IN RE: TRS Recovery Services, Inc., and TeleCheck Services, Inc., Fair Debt Collection Practices Act (FDCPA) Litigation | 5 | 5 |
| MIE | Marianne O Battani (Sr. District Judge) | MDL -2311 | IN RE: Automotive Parts Antitrust Litigation | 160 | 180 |
| | Paul D Borman (U.S. District Judge) | MDL -1952 | IN RE: Packaged Ice Antitrust Litigation | 96 | 100 |
| | Sean F Cox (U.S. District Judge) | MDL -2042 | IN RE: Refrigerant Compressors Antitrust Litigation | 38 | 51 |
| MIW | Robert Holmes Bell (U.S. District Judge) | MDL -1846 | IN RE: Trade Partners, Inc., Investors Litigation | 6 | 7 |
| MN | Michael James Davis (Chief Judge, USDC) | MDL -1431 | IN RE: Baycol Products Liability Litigation | 1 | 9,107 |
| | Michael James Davis (Chief Judge, USDC) | MDL -1836 | IN RE: Mirapex Products Liability Litigation | 3 | 440 |
| | Michael James Davis (Chief Judge, USDC) | MDL -2359 | IN RE: HardiePlank Fiber Cement Siding Litigation | 13 | 13 |
| | Joan N Ericksen (U.S. District Judge) | MDL -2526 | IN RE: Life Time Fitness, Inc., Telephone Consumer Protection Act (TCPA) Litigation | 4 | 4 |
| | Donovan W Frank (U.S. District Judge) | MDL -2441 | IN RE: Stryker Rejuvenate and ABG II Hip Implant Products Liability Litigation | 2,297 | 2,352 |
| | Paul A Magnuson (Sr. District Judge) | MDL -2522 | IN RE: Target Corporation Customer Data Security Breach Litigation | 109 | 112 |
| | Ann D Montgomery (U.S. District Judge) | MDL -2090 | IN RE: Wholesale Grocery Products Antitrust Litigation | 0 | 4 |
| | Ann D Montgomery (U.S. District Judge) | MDL -2586 | IN RE: Supervalu, Inc., Customer Data Security Breach Litigation | 4 | 4 |
| | Susan Richard Nelson (U.S. District Judge) | MDL -2551 | IN RE: National Hockey League Players' Concussion Injury Litigation | 9 | 9 |
| | John R Tunheim (U.S. District Judge) | MDL -1943 | IN RE: Levaquin Products Liability Litigation | 178 | 2,048 |
| MOE | Henry Edward Autrey (U.S. District Judge) | MDL -1672 | IN RE: Express Scripts, Inc., Pharmacy Benefits Management Litigation | 1 | 22 |
| | Henry Edward Autrey (U.S. District Judge) | MDL -2382 | IN RE: Emerson Electric Co. Wet/Dry Vac Marketing and Sales Practices Litigation | 8 | 8 |
| | Catherine D Perry (Chief Judge, USDC) | MDL -1811 | IN RE: Genetically Modified Rice Litigation | 9 | 412 |
| | John A. Ross (U.S. District Judge) | MDL -2470 | IN RE: Schnuck Markets, Inc., Customer Data Security Breach Litigation | 5 | 5 |
| | Rodney W Sippel (U.S. District Judge) | MDL -1964 | IN RE: NuvaRing Products Liability Litigation | 1,762 | 1,862 |
| | Rodney W Sippel (U.S. District Judge) | MDL -2562 | IN RE: Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation | 10 | 10 |
| MOW | Gary A Fenner (U.S. District Judge) | MDL -2567 | IN RE: Pre-Filled Propane Tank Antitrust Litigation | 37 | 37 |
| | Fernando J Gaitan, Jr (Sr. District Judge) | MDL -2361 | IN RE: Simply Orange Orange Juice Marketing and Sales Practices Litigation | 12 | 15 |
| | Fernando J Gaitan, Jr (Sr. District Judge) | MDL -2474 | IN RE: H&R Block IRS Form 8863 Litigation | 14 | 14 |
| NCW | Graham C Mullen (Sr. District Judge) | MDL -1932 | IN RE: Family Dollar Stores, Inc., Wage and Hour Employment Practices Litigation | 2 | 29 |
| | Graham C Mullen (Sr. District Judge) | MDL -2384 | IN RE: Swisher Hygiene, Inc., Securities and Derivative Litigation | 9 | 9 |
| NH | Paul J Barbadoro (U.S. District Judge) | MDL -2320 | IN RE: Colgate-Palmolive Softsoap Antibacterial Hand Soap Marketing and Sales Practices Litigation | 5 | 10 |
| | Steven J McAuliffe (Sr. District Judge) | MDL -2263 | IN RE: Dial Complete Marketing and Sales Practices Litigation | 11 | 17 |
| NJ | Madeline C. Arleo (U.S. District Judge) | MDL -2506 | IN RE: AZEK Building Products, Inc., Marketing and Sales Practices Litigation | 3 | 4 |
| | Claire C. Cecchi (U.S. District Judge) | MDL -1663 | IN RE: Insurance Brokerage Antitrust Litigation | 13 | 51 |
| | Stanley R Chesler (U.S. District Judge) | MDL -1419 | IN RE: K-Dur Antitrust Litigation | 4 | 45 |
| | Stanley R Chesler (U.S. District Judge) | MDL -1658 | IN RE: Merck & Co., Inc., Securities, Derivative & "ERISA" Litigation | 5 | 47 |
| | Katharine S Hayden (Sr. District Judge) | MDL -2020 | IN RE: Aetna, Inc., Out-of-Network "UCR" Rates Litigation | 8 | 13 |
| | Jose L Linares (U.S. District Judge) | MDL -2577 | IN RE: GAF Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation | 12 | 12 |
| | William J Martini (U.S. District Judge) | MDL -2280 | IN RE: Morgan Stanley Smith Barney LLC Wage and Hour Employment Practices Litigation | 6 | 6 |
| | William J Martini (U.S. District Judge) | MDL -2353 | IN RE: Tropicana Orange Juice Marketing and Sales Practices Litigation | 13 | 15 |
| | William J Martini (U.S. District Judge) | MDL -2415 | IN RE: L'Oreal Wrinkle Cream Marketing and Sales Practices Litigation | 9 | 9 |
| | Joel A Pisano (U.S. District Judge) | MDL -2243 | IN RE: Fosamax (Alendronate Sodium) Products Liability Litigation (No. II) | 516 | 1,177 |
| | Esther Salas (U.S. District Judge) | MDL -2471 | IN RE: Vehicle Carrier Services Antitrust Litigation | 29 | 29 |
| | Peter G Sheridan (U.S. District Judge) | MDL -2332 | IN RE: Lipitor Antitrust Litigation | 30 | 31 |

| | | | | | |
|---|---|---|---|---|---|
| | Peter G Sheridan (U.S. District Judge) | MDL -2396 | IN RE: TR Labs Patent Litigation | 6 | 9 |
| | Jerome B Simandle (Chief Judge, USDC) | MDL -2540 | IN RE: Caterpillar, Inc., C13 and C15 Engine Products Liability Litigation | 16 | 16 |
| | Susan D Wigenton (U.S. District Judge) | MDL -2158 | IN RE: Zimmer Durom Hip Cup Products Liability Litigation | 392 | 544 |
| | Freda L Wolfson (U.S. District Judge) | MDL -2418 | IN RE: Plavix Marketing, Sales Practices and Products Liability Litigation (No. II) | 33 | 93 |
| NV | Kent J Dawson (U.S. District Judge) | MDL -2527 | IN RE: First National Collection Bureau, Inc., Telephone Consumer Protection Act (TCPA) Litigation | 4 | 4 |
| | Robert Clive Jones (U.S. District Judge) | MDL -2357 | IN RE: Zappos.com, Inc., Customer Data Security Breach Litigation | 11 | 11 |
| NYE | Margo K. Brodie (U.S. District Judge) | MDL -1720 | IN RE: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation | 92 | 94 |
| | Brian M Cogan (U.S. District Judge) | MDL -1738 | IN RE: Vitamin C Antitrust Litigation | 4 | 10 |
| | Nicholas G Garaufis (Sr. District Judge) | MDL -2221 | IN RE: American Express Anti-Steering Rules Antitrust Litigation (No. II) | 13 | 13 |
| | John Gleeson (U.S. District Judge) | MDL -1775 | IN RE: Air Cargo Shipping Services Antitrust Litigation | 102 | 110 |
| | John Gleeson (U.S. District Judge) | MDL -2331 | IN RE: Propecia (Finasteride) Products Liability Litigation | 743 | 746 |
| | Dora Lizette Irizarry (U.S. District Judge) | MDL -2215 | IN RE: Glaceau Vitaminwater Marketing and Sales Practice Litigation (No. II) | 2 | 6 |
| | Roslynn R. Mauskopf (U.S. District Judge) | MDL -2413 | IN RE: Frito-Lay North America, Inc., "All Natural" Litigation | 13 | 13 |
| | Allyne R Ross (U.S. District Judge) | MDL -2395 | IN RE: Air Crash at Georgetown, Guyana, on July 30, 2011 | 15 | 22 |
| | Arthur D Spatt (Sr. District Judge) | MDL -2451 | IN RE: HSBC Bank USA, N.A., Debit Card Overdraft Fee Litigation | 3 | 3 |
| NYS | Vernon S. Broderick (U.S. District Judge) | MDL -2542 | IN RE: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation | 26 | 26 |
| | Naomi Reice Buchwald (Sr. District Judge) | MDL -2262 | IN RE: Libor-Based Financial Instruments Antitrust Litigation | 51 | 72 |
| | Valerie E. Caproni (U.S. District Judge) | MDL -2548 | IN RE: Commodity Exchange, Inc., Gold Futures and Options Trading Litigation | 27 | 27 |
| | Valerie E. Caproni (U.S. District Judge) | MDL -2573 | IN RE: London Silver Fixing, Ltd., Antitrust Litigation | 8 | 8 |
| | Andrew L. Carter, Jr (U.S. District Judge) | MDL -2475 | IN RE: North Sea Brent Crude Oil Futures Litigation | 10 | 11 |
| | P. Kevin Castel (U.S. District Judge) | MDL -1995 | IN RE: Time Warner Inc. Set-Top Cable Television Box Antitrust Litigation | 0 | 7 |
| | P. Kevin Castel (U.S. District Judge) | MDL -2058 | IN RE: Bank of America Corp. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation | 16 | 52 |
| | Miriam Goldman Cedarbaum (Sr. District Judge) | MDL -2072 | IN RE: Federal Home Loan Mortgage Corp. (Freddie Mac) Securities Litigation | 1 | 5 |
| | Denise L Cote (Sr. District Judge) | MDL -2293 | IN RE: Electronic Books Antitrust Litigation | 30 | 32 |
| | Denise L Cote (Sr. District Judge) | MDL -2476 | IN RE: Credit Default Swaps Antitrust Litigation | 7 | 9 |
| | Paul A Crotty (U.S. District Judge) | MDL -2013 | IN RE: Fannie Mae Securities and Employee Retirement Income Security Act (ERISA) Litigation | 2 | 24 |
| | George B Daniels (U.S. District Judge) | MDL -1570 | IN RE: Terrorist Attacks on September 11, 2001 | 23 | 28 |
| | Katherine B. Forrest (U.S. District Judge) | MDL -2481 | IN RE: Aluminum Warehousing Antitrust Litigation | 6 | 33 |
| | Jesse M Furman (U.S. District Judge) | MDL -1529 | IN RE: Adelphia Communications Corp. Securities & Derivative Litigation (No. II) | 1 | 75 |
| | Jesse M Furman (U.S. District Judge) | MDL -2543 | IN RE: General Motors LLC Ignition Switch Litigation | 167 | 168 |
| | Jesse M Furman (U.S. District Judge) | MDL -2589 | IN RE: Barclays Liquidity Cross and High Frequency Trading Litigation | 5 | 5 |
| | Paul G Gardephe (U.S. District Judge) | MDL -2011 | IN RE: The Reserve Fund Securities and Derivative Litigation | 1 | 40 |
| | Paul G Gardephe (U.S. District Judge) | MDL -2157 | IN RE: JPMorgan Auction Rate Securities (ARS) Marketing Litigation | 1 | 5 |
| | Thomas P Griesa (Sr. District Judge) | MDL -2052 | IN RE: Tremont Group Holdings, Inc., Securities Litigation | 9 | 31 |
| | Thomas P Griesa (Sr. District Judge) | MDL -2075 | IN RE: Austin Capital Management, Ltd., Securities and Employee Retirement Income Security Act (ERISA) Litigation | 2 | 6 |
| | Thomas P Griesa (Sr. District Judge) | MDL -2082 | IN RE: Meridian Funds Group Securities & Employee Retirement Income Security Act (ERISA) Litigation | 5 | 5 |
| | Lewis A Kaplan (Sr. District Judge) | MDL -2017 | IN RE: Lehman Brothers Holdings, Inc., Securities and Employee Retirement Income Security Act (ERISA) Litigation | 29 | 55 |
| | Lewis A Kaplan (Sr. District Judge) | MDL -2335 | IN RE: Bank of New York Mellon Corp. Foreign Exchange Transactions Litigation | 8 | 12 |
| | Kenneth M Karas (U.S. District Judge) | MDL -2052 | IN RE: Ford Fusion and C-Max Fuel Economy Litigation | 17 | 17 |
| | John F Keenan (Sr. District Judge) | MDL -1789 | IN RE: Fosamax Products Liability Litigation | 902 | 1,138 |
| | Victor Marrero (Sr. District Judge) | MDL -1950 | IN RE: Municipal Derivatives Antitrust Litigation | 1 | 36 |
| | Victor Marrero (Sr. District Judge) | MDL -2088 | IN RE: Fairfield Greenwich Group Securities Litigation | 1 | 63 |
| | Victor Marrero (Sr. District Judge) | MDL -2338 | IN RE: MF Global Holdings Ltd. Investment Litigation | 1 | 25 |
| | Robert P Patterson, Jr (Sr. District Judge) | MDL -2213 | IN RE: Commodity Exchange, Inc., Silver Futures and Options Trading Litigation | 0 | 43 |
| | William H Pauley, III (U.S. District Judge) | MDL -1409 | IN RE: Currency Conversion Fee Antitrust Litigation | 0 | 35 |
| | Shira Ann Scheindlin (Sr. District Judge) | MDL -1358 | IN RE: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | 20 | 189 |
| | Shira Ann Scheindlin (Sr. District Judge) | MDL -1499 | IN RE: South African Apartheid Litigation | 1 | 14 |
| | Cathy Seibel (U.S. District Judge) | MDL -2434 | IN RE: Mirena IUD Products Liability Litigation | 1,178 | 1,209 |
| | Sidney H Stein (U.S. District Judge) | MDL -1603 | IN RE: OxyContin Antitrust Litigation | 3 | 103 |
| | Sidney H Stein (Sr. District Judge) | MDL -2070 | IN RE: Citigroup Inc. Securities Litigation | 0 | 24 |
| | Richard J Sullivan (U.S. District Judge) | MDL -2296 | IN RE: Tribune Company Fraudulent Conveyance Litigation | 72 | 73 |
| | Robert W Sweet (Sr. District Judge) | MDL -1963 | IN RE: The Bear Stearns Companies Inc. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation | 4 | 30 |
| | Robert W Sweet (Sr. District Judge) | MDL -2352 | IN RE: Century 21 Department Stores, LLC, Fair and Accurate Credit Transactions Act (FACTA) Litigation | 5 | 5 |
| | Robert W Sweet (Sr. District Judge) | MDL -2389 | IN RE: Facebook, Inc., IPO Securities and Derivative Litigation | 43 | 57 |
| OHN | Christopher A Boyko (U.S. District Judge) | MDL -2001 | IN RE: Whirlpool Corp. Front-Loading Washer Products Liability Litigation | 10 | 11 |
| | James G Carr (Sr. District Judge) | MDL -1953 | IN RE: Heparin Products Liability Litigation | 8 | 574 |
| | Patricia A Gaughan (U.S. District Judge) | MDL -2044 | IN RE: Vertrue Inc. Marketing and Sales Practices Litigation | 13 | 13 |
| | David A Katz (U.S. District Judge) | MDL -2197 | IN RE: DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation | 7,116 | 9,362 |
| | Donald C Nugent (U.S. District Judge) | MDL -2220 | IN RE: KABA Simplex Locks Marketing and Sales Practices Litigation | 19 | 20 |
| | Benita Y. Pearson (U.S. District Judge) | MDL -2316 | IN RE: Ford Motor Co. Spark Plug and 3-Valve Engine Products Liability Litigation | 5 | 5 |
| | Dan A Polster (U.S. District Judge) | MDL -1909 | IN RE: Gadolinium Contrast Dyes Products Liability Litigation | 2 | 729 |

| | | | | | |
|---|---|---|---|---|---|
| | Jack Zouhary (U.S. District Judge) | MDL -2196 | IN RE: Polyurethane Foam Antitrust Litigation | 62 | 98 |
| OHS | Sandra S Beckwith (Sr. District Judge) | MDL -2050 | IN RE: Bill of Lading Transmission and Processing System Patent Litigation | 0 | 14 |
| | Edmund A Sargus, Jr (U.S. District Judge) | MDL -2433 | IN RE: E. I. du Pont de Nemours and Company C-8 Personal Injury Litigation | 1,954 | 1,960 |
| OKW | Robin J Cauthron (U.S. District Judge) | MDL -2048 | IN RE: Cox Enterprises, Inc., Set-Top Cable Television Box Antitrust Litigation | 1 | 27 |
| | Robin J Cauthron (U.S. District Judge) | MDL -2309 | IN RE: Transdata, Inc., Smart Meters Patent Litigation | 9 | 9 |
| PAE | Harvey Bartle, III (U.S. District Judge) | MDL -1203 | IN RE: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation | 15 | 20,206 |
| | Michael M Baylson (Sr. District Judge) | MDL -2437 | IN RE: Domestic Drywall Antitrust Litigation | 7 | 27 |
| | Anita B Brody (Sr. District Judge) | MDL -2034 | IN RE: Comcast Corp. Set-Top Cable Television Box Antitrust Litigation | 5 | 24 |
| | Anita B Brody (Sr. District Judge) | MDL -2323 | IN RE: National Football League Players' Concussion Injury Litigation | 329 | 333 |
| | Jan E DuBois (Sr. District Judge) | MDL -2081 | IN RE: Blood Reagents Antitrust Litigation | 32 | 34 |
| | Jan E DuBois (Sr. District Judge) | MDL -2460 | IN RE: Niaspan Antitrust Litigation | 17 | 17 |
| | Mitchell S Goldberg (U.S. District Judge) | MDL -2445 | IN RE: Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation | 12 | 12 |
| | C. Darnell Jones, II (U.S. District Judge) | MDL -1782 | IN RE: Pharmacy Benefit Managers Antitrust Litigation | 6 | 6 |
| | J. Curtis Joyner (Sr. District Judge) | MDL -2235 | IN RE: Foot Locker, Inc., Fair Labor Standards Act (FLSA) and Wage and Hour Litigation | 5 | 5 |
| | Gene E.K. Pratter (U.S. District Judge) | MDL -2002 | IN RE: Processed Egg Products Antitrust Litigation | 22 | 32 |
| | Gene E.K. Pratter (U.S. District Judge) | MDL -2284 | IN RE: Imprelis Herbicide Marketing, Sales Practices and Products Liability Litigation | 15 | 157 |
| | Eduardo C Robreno (Sr. District Judge) | MDL -875 | IN RE: Asbestos Products Liability Litigation (No. VI) | 1,662 | 192,049 |
| | Cynthia M Rufe (U.S. District Judge) | MDL -1871 | IN RE: Avandia Marketing, Sales Practices and Products Liability Litigation | 1,422 | 5,239 |
| | Cynthia M Rufe (U.S. District Judge) | MDL -2342 | IN RE: Zoloft (Sertraline Hydrochloride) Products Liability Litigation | 539 | 660 |
| | Cynthia M Rufe (U.S. District Judge) | MDL -2458 | IN RE: Effexor (Venlafaxine Hydrochloride) Products Liability Litigation | 49 | 74 |
| | Edward G. Smith (U.S. District Judge) | MDL -2571 | IN RE: Impulse Monitoring, Inc., Aetna Intraoperative Monitoring Services Claims and Employee Retirement Income Security Act (ERISA) Litigation | 27 | 33 |
| | Lawrence F Stengel (U.S. District Judge) | MDL -2436 | IN RE: Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation | 186 | 197 |
| PAM | Yvette Kane (U.S. District Judge) | MDL -2380 | IN RE: Shop-Vac Marketing and Sales Practices Litigation | 9 | 10 |
| PAW | Donetta W Ambrose (Sr. District Judge) | MDL -1942 | IN RE: Flat Glass Antitrust Litigation (No. II) | 1 | 27 |
| | Joy Flowers Conti (Chief Judge, USDC) | MDL -2354 | IN RE: Maxim Integrated Products, Inc., Patent Litigation | 5 | 27 |
| | Arthur J Schwab (U.S. District Judge) | MDL -1674 | IN RE: Community Bank of Northern Virginia Mortgage Lending Practices Litigation | 4 | 8 |
| RI | Mary M Lisi (U.S. District Judge) | MDL -1842 | IN RE: Kugel Mesh Hernia Patch Products Liability Litigation | 273 | 2,232 |
| | William E Smith (Chief Judge, USDC) | MDL -2472 | IN RE: Loestrin 24 Fe Antitrust Litigation | 13 | 13 |
| SC | Richard M Gergel (U.S. District Judge) | MDL -2502 | IN RE: Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation (No. II) | 1,814 | 1,817 |
| | David C Norton (U.S. District Judge) | MDL -2333 | IN RE: MI Windows and Doors, Inc., Products Liability Litigation | 17 | 18 |
| | David C Norton (U.S. District Judge) | MDL -2514 | IN RE: Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices and Products Liability Litigation | 17 | 20 |
| TNE | Curtis Lynn Collier (U.S. District Judge) | MDL -2343 | IN RE: Skelaxin (Metaxalone) Antitrust Litigation | 14 | 17 |
| | Harry S Mattice, Jr (U.S. District Judge) | MDL -2508 | IN RE: Cast Iron Soil Pipe and Fittings Antitrust Litigation | 16 | 18 |
| TNW | J. Daniel Breen (Chief Judge, USDC) | MDL -1551 | IN RE: Reciprocal of America (ROA) Sales Practices Litigation | 12 | 19 |
| | Samuel H Mays, Jr (U.S. District Judge) | MDL -2009 | IN RE: Regions Morgan Keegan Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation | 22 | 66 |
| TXE | Leonard E Davis (Chief Judge, USDC) | MDL -2355 | IN RE: Parallel Networks, LLC, ('111) Patent Litigation | 7 | 9 |
| TXN | Jane J Boyle (U.S. District Judge) | MDL -2405 | IN RE: On-Line Travel Company (OTC)/Hotel Booking Antitrust Litigation | 29 | 33 |
| | Sidney A. Fitzwater (U.S. District Judge) | MDL -2587 | IN RE: IntraMTA Switched Access Charges Litigation | 65 | 65 |
| | David C Godbey (U.S. District Judge) | MDL -2099 | IN RE: Stanford Entities Securities Litigation | 88 | 134 |
| | James Edgar Kinkeade (U.S. District Judge) | MDL -2244 | IN RE: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation | 7,045 | 7,133 |
| TXS | Keith P Ellison (U.S. District Judge) | MDL -2185 | IN RE: BP p.l.c. Securities Litigation | 32 | 50 |
| | Melinda Harmon (U.S. District Judge) | MDL -1446 | IN RE: Enron Corp. Securities, Derivative & "ERISA" Litigation | 5 | 199 |
| | Gray H. Miller (U.S. District Judge) | MDL -2266 | IN RE: Wells Fargo Wage and Hour Employment Practices Litigation (No. III) | 0 | 6 |
| | Lee H Rosenthal (U.S. District Judge) | MDL -2046 | IN RE: Heartland Payment Systems, Inc., Customer Data Security Breach Litigation | 0 | 35 |
| TXW | Sam Sparks (U.S. District Judge) | MDL -2588 | IN RE: Whole Foods Market, Inc., Greek Yogurt Marketing and Sales Practices Litigation | 10 | 10 |
| UT | Robert J. Shelby (U.S. District Judge) | MDL -2510 | IN RE: BRCA1- and BRCA2-based Hereditary Cancer Test Patent Litigation | 1 | 10 |
| WAE | Lonny R Suko (Sr. District Judge) | MDL -2494 | IN RE: Columbia and Snake River Dams Clean Water Act Litigation | 0 | 3 |
| WAW | John C Coughenour (Sr. District Judge) | MDL -2485 | IN RE: New Cingular Wireless PCS, LLC, Data Services Sales Tax Refund Litigation | 17 | 17 |
| WIE | Lynn S Adelman (U.S. District Judge) | MDL -2439 | IN RE: Subway Footlong Sandwich Marketing and Sales Practices Litigation | 9 | 9 |
| WVN | Irene M Keeley (U.S. District Judge) | MDL -2493 | IN RE: Monitronics International, Inc., Telephone Consumer Protection Act (TCPA) Litigation | 18 | 20 |
| WVS | Joseph R Goodwin (U.S. District Judge) | MDL -2187 | IN RE: C.R. Bard, Inc., Pelvic Repair System Products Liability Litigation | 10,348 | 10,642 |
| | Joseph R Goodwin (U.S. District Judge) | MDL -2325 | IN RE: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation | 19,159 | 19,512 |
| | Joseph R Goodwin (U.S. District Judge) | MDL -2326 | IN RE: Boston Scientific Corp. Pelvic Repair System Products Liability Litigation | 15,278 | 15,541 |
| | Joseph R Goodwin (U.S. District Judge) | MDL -2327 | IN RE: Ethicon, Inc., Pelvic Repair System Products Liability Litigation | 23,523 | 24,156 |
| | Joseph R Goodwin (U.S. District Judge) | MDL -2387 | IN RE: Coloplast Corp. Pelvic Support Systems Products Liability Litigation | 1,830 | 1,969 |
| | Joseph R Goodwin (U.S. District Judge) | MDL -2440 | IN RE: Cook Medical, Inc., Pelvic Repair System Products Liability Litigation | 289 | 528 |
| | Joseph R Goodwin (U.S. District Judge) | MDL -2511 | IN RE: Neomedic Pelvic Repair System Products Liability Litigation | 83 | 101 |

**Report Totals:**      290      129,026      405,823

Total Number of MDL Dockets: 290

Total Number of Transferee Districts: 59

Total Number of Transferee Judges: 219
17 Chief Judge, USDC
60 Sr. District Judge
142 U.S. District Judge

**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

IN RE: LENOVO ADWARE LITIGATION   /   MDL DOCKET NO._____

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TRANSFER
OF ACTIONS TO THE EASTERN DISTRICT COURT OF NORTH CAROLINA
PURSUANT TO 28 U.S.C. SECTION 1407 FOR CONSOLIDATED OR COORDINATED
PRETRIAL PROCEEDINGS**

Plaintiff Lukas Pick ("Plaintiff"), as putative class representative in the action styled *Pick
v. Lenovo (United States) Inc. and Superfish Inc.*, Case No. 5:15-cv-00068-D (E.D.N.C.) ("the
*Pick* action"), pending in the United States District Court for the Eastern District of North
Carolina against defendants Lenovo (United States) Inc. ("Lenovo") and Superfish Inc.
("Superfish") (collectively, "Defendants"), respectfully submits this memorandum of law in
support of his request that the Judicial Panel on Multidistrict Litigation ("Panel") enter an order
pursuant to 28 U.S.C. §1407 ("§1407") transferring and consolidating the related actions listed in
the Schedule of Actions (hereinafter the "Actions").

**I.    INTRODUCTION**

The *Pick* action and all of the other Actions detailed below bring claims against Lenovo
and Superfish arising from the intentional and covert installation of adware on Lenovo's

consumer computers. These Actions include the following, which were filed in various federal jurisdictions:

(a)    *Bennett v. Lenovo (United States), Inc., et al.*, No. 3:15-CV-00368-CAB-RBB (S.D. Cal. filed Feb. 19, 2015);

(b)    *Hunter v. Lenovo (United States), Inc., et al.*, No. 5:15-cv-00819 (N.D. Cal. filed Feb. 23, 2015); and

(c)    *Sterling International Consulting Group v. Lenovo (United States) Inc. et al.*, No. 5:15-cv-00807-RMW (N.D. Cal. filed Feb. 23, 2015).

Plaintiff requests that the Panel transfer and consolidate the *Pick* action and the other Actions to a single district, the Eastern District of North Carolina, for coordinated and/or consolidated pre-trial proceedings, and that such proceedings, and any and all additional related actions that may be brought to the attention of the Panel against Defendants, be assigned to the same court. Plaintiff further requests that the federal judge presently presiding over the *Pick* action, the Honorable James C. Dever III, be designated as the presiding Multi-District Litigation ("MDL") judge. The reasons for selecting the Eastern District of North Carolina are the most compelling because:

(a)    Lenovo's corporate headquarters is located in the District;

(b)    Lenovo has a laptop manufacturing facility located in North Carolina,

(c)    the decisions concerning the installation of the adware were made in this District;

(d)    witnesses who designed the affected computers and made software decisions on the computers at issue are located in North Carolina;

(e) the Eastern District of North Carolina is under-utilized and has not one pending MDL case, whereas the Northern District of California, where two of the other Actions currently sit, is burdened with seventeen MDL cases and the Southern District of California, where one of the other Actions is currently pending, has seven pending MDL cases. *See* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-17-.pdf at p. 1 (last visited Feb. 24, 2015) a copy of which is attached hereto as Exhibit 1;

(f) the Eastern District of North Carolina has the resources and requisite experience to handle MDL and is a highly efficient jurisdiction; and

(g) the Eastern District of North Carolina is convenient to all parties and witnesses for travel purposes.[1]

## II.    FACTS

All of the Actions are against Lenovo and Superfish for the intentional installation of dangerous and malicious software known as Superfish Visual Discovery ("Superfish Adware") on Lenovo's consumer computers. Defendants release of the Superfish Adware, which was secretly loaded onto Lenovo computers without the consent of purchasing consumers (the "Class"), was intended to intercept Internet communications so that Superfish could create customized advertisements and both Defendants could secure a profit. The adware intercepted web sessions and scanned websites that users viewed, later injecting unwanted advertisements in web pages based on the information that was intercepted. It also installed a self-signed root certificate, thereby granting Superfish Adware the same internal security clearance as the software in the computer's operating system and allowing the interception and decryption of

---

[1]    Another consideration when determining the MDL is to consider which action is more procedurally advanced than the other Actions, but here, all of the actions are at the same stage of litigation.

secure requests from websites, thereby negating the security features of many banking, remote desktop, tax-filing, and government websites such as the IRS. Simply put, the Superfish Adware intercepted both secured and unsecured electronic communications sent or received by the Lenovo computers, thereby hijacking web sessions, invading the privacy of the Class, and exposing them to security risks.

Lenovo confessed to the intentional use of Superfish Adware to inject advertisements into Internet traffic on February 19, 2015, and Lenovo Chief Technological Officer Peter Hortensius admitted, "We messed up badly here." He also admitted, in an interview with *The Wall Street Journal*, that it was obvious that Lenovo did not do their due diligence by using Superfish Adwares.

## III.    ARGUMENT

### A.    Centralization Will Promote §1407's Goals of Insuring the Just and Efficient Conduct of the Actions and Avoiding Inconsistent or Conflicting Determinations

28 U.S.C. §1407(a) provides, in relevant part:

When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on the Multi District litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

The transfer of actions to a single forum under §1407 is appropriate where, as here, it will prevent duplication of discovery and eliminate the possibility of overlapping or inconsistent pleading determinations by courts of coordinate jurisdictions. *In re Litig. Arising from Termination of Ret. Plan for Emps. of Fireman's Fund Ins. Co.*, 422 F. Supp. 287, 290 (J.P.M.L. 1976); *In re LTV Corp. Sec. Litig.*, 470 F. Supp. 859, 862 (J.P.M.L. 1979).

The litmus test of transferability and coordination under §1407 is the presence of common questions of fact. *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979). Common questions are presumed "when two or more complaints assert comparable allegations against identical defendants based upon similar transactions and events." *In re Air W. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974); *see also In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 654-655 (J.P.M.L. 1981).

The Actions should be coordinated and consolidated with the *Pick* action pursuant to 28 U.S.C. §1407. These actions are especially amenable for MDL treatment because of the substantial commonality of factual and legal questions presented in the individual cases at issue and the strong potential for the preservation of judicial resources that MDL treatment will afford. *In re S. Pac. Transp. Co. Emp't Practices Litig.*, 429 F. Supp. 529, 531 (J.P.M.L. 1977).

The *Pick* action and all of the other Actions assert claims against the same defendants, Lenovo and Superfish, and are all founded on the intentional and secret installation of Superfish Adware on Lenovo's consumer computers which intercepted electronic communications sent or received by the computers. The plaintiffs and proposed classes in these cases overlap and all assert violations of the Federal Wiretap Act, 18 U.S.C. §2511, *et seq.*, and other related statutes and common law causes of action arising from the same conduct. In addition, centralization is necessary to prevent the duplication of discovery and inconsistent pre-trial rulings. *In re Ryder Truck Lines, Inc. Emp. Practices Litig.*, 405 F. Supp. 308, 309 (J.P.M.L. 1975).

**B.     The Eastern District of North Carolina is the Most Appropriate Forum**

Under §1407(a), the Panel may transfer actions to "any district" and has wide discretion to choose the transferee court. *See, e.g., In re New York City Mun. Sec. Litig.*, 572 F.2d 49, 51 (2d Cir. 1978); Alba Conte & Herbert Newberg, *Newberg on Class Actions*, §9:16 (4th ed.). The

Panel considers a variety of factors in selecting the transferee court, including but not limited to the following: (1) the procedural advancement of an action; (2) the familiarity of a judge with the proceedings; (3) the efficiency of a court's civil docket; and (4) a central location for national litigation. *Id.*

### 1. The Eastern District of North Carolina's Docket Is Highly-Efficient and Under-Utilized in MDL Proceedings

Additional §1407 factors for the selection of the transferee court include the backlog or efficiency of the district's docket,[2] as well as its suitability as a trial venue.[3] These §1407 factors further support the selection of the Eastern District of North Carolina as the transferee court. As demonstrated by the attached caseload statistics, the Eastern District of North Carolina has a well-managed docket capable of ensuring timely and expeditious resolution of these consolidated actions. *See* Eastern District of North Carolina's Federal Court Caseload Statistics attached hereto as Exhibit 2. Moreover, the court is under-utilized as a transferee court for MDL litigation. There are no MDL proceedings currently assigned to the Eastern District of North Carolina. In contrast, there are seventeen MDL proceedings assigned to the Northern District of California, where two of the Actions currently sit and seven MDL proceedings assigned to the Southern District of California where one of the other Actions is currently pending. *See* Exhibit 1. This under-utilization, in relative and absolute terms, justifies the transfer of MDL proceedings to the Eastern District of North Carolina. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1380 (J.P.M.L. 2001). ("[C]entralization to this district permits the Panel to effect the §1407 assignment to a major metropolitan court that (i) is not

---

[2]     *See e.g., In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980).

[3]     *See In re Yarn Processing Patent Validity Litig.*, 341 F. Supp. 376, 381-82 (J.P.M.L. 1972).

currently overtaxed with other multidistrict dockets, and (ii) possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.") Further, the Eastern District of North Carolina possesses the requisite resources and capacity to manage this MDL proceeding. *See In re Peanut Crop Ins. Litig.*, 342 F. Supp. 2d 1353, (J.P.M.L. 2004). (Finding that the Eastern District of North Carolina is "well equipped with the resources" to manage the MDL proceeding.).

In addition, Plaintiff submits that the Panel should designate the Honorable Judge Dever of the Eastern District of North Carolina because he is the Chief Judge in the District, he possesses significant experience handling complex litigation, is well qualified to handle this complex litigation, and is not presently assigned to any MDL proceedings. *See In re Air Crash at Tegucigalpa, Honduras, on May 30, 2008*, 598 F. Supp. 2d 1368, 1369 (J.P.M.L. 2009) ("Centralization in this district permits the Panel to effect the Section 1407 assignment to an experienced transferee judge who is not currently presiding over another multidistrict litigation docket and who has a caseload relatively favorable to accepting this assignment.").

### 2. The Eastern District of North Carolina is a Convenient and Central Location for National Litigation

The Eastern District of North Carolina is the proper forum as Lenovo's corporate headquarters is located in the District, Lenovo has a laptop manufacturing facility located in North Carolina, the decisions concerning the installation of the adware were made in this District, and witnesses who designed the affected computers and made software decisions are located in North Carolina. Further, the Eastern District of North Carolina is easily accessible to all parties because of the proximity to Raleigh Durham International Airport, which is served by twelve different airline carriers with non-stop service from cities in California and the rest of the country. Raleigh is a major metropolitan center providing ample hotel and office

accommodations, and a well-developed support system for legal services, all of which will facilitate this litigation. *Accord In re WorldCom, Inc. Sec. & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) ("[A] litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services.").

WHEREFORE, Plaintiff respectfully requests that the Panel enter an Order pursuant to 28 U.S.C. §1407 consolidating or coordinating for pretrial proceedings the putative class actions set forth in the accompanying Schedule of Actions to the Eastern District of North Carolina, as well as any other related actions that are subsequently-filed.

DATED:  February 25, 2015

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
MARK DEARMAN
HOLLY W. KIMMEL
ALEX D. KRUZYK

*s/ Mark Dearman*
MARK DEARMAN

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
hkimmel@rgrdlaw.com
akruzyk@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

BLUE STEPHENS & FELLERS LLP
DHAMIAN A. BLUE
DANIEL T. BLUE, JR.
DANIEL T. BLUE, III
205 Fayetteville Street, Suite 300
Raleigh, NC 27601
Telephone: 919/833-1931
919/833-8009 (fax)
dab@bluestephens.com

Attorneys for Plaintiff

# EXHIBIT 1

# MDL Statistics Report - Distribution of Pending MDL Dockets by District

MDL Filters:
Status: Transferred
Limited to Active Litigations

| District | Judge (Title) | Docket No. | Litigation | Actions Now Pending | Total Actions (Historical) |
|---|---|---|---|---|---|
| ALN | Karon O. Bowdre (Chief Judge, USDC) | MDL-2595 | IN RE: Community Health Systems, Inc., Customer Data Security Breach Litigation | 5 | 5 |
| ARE | R. David Proctor (U.S. District Judge) | MDL-2406 | IN RE: Blue Cross Blue Shield Antitrust Litigation | 28 | 51 |
| | Billy Roy Wilson (Sr. District Judge) | MDL-1507 | IN RE: Prempro Products Liability Litigation | 5 | 9,761 |
| AZ | James A Teilborg (Sr. District Judge) | MDL-2119 | IN RE: Mortgage Electronic Registration Systems (MERS) Litigation | 50 | 94 |
| CAC | David O Carter (U.S. District Judge) | MDL-2145 | IN RE: Medical Capital Securities Litigation | 1 | 18 |
| | Dale S Fischer (U.S. District Judge) | MDL-2274 | IN RE: CitiMortgage, Inc., Home Affordable Modification Program (HAMP) Contract Litigation | 12 | 13 |
| | Dale S Fischer (U.S. District Judge) | MDL-2404 | IN RE: Nexium (Esomeprazole) Products Liability Litigation | 22 | 55 |
| | Andrew J. Guilford (U.S. District Judge) | MDL-2461 | IN RE: MyKey Technology Inc. Patent Litigation | 6 | 6 |
| | Philip S Gutierrez (U.S. District Judge) | MDL-2074 | IN RE: WellPoint, Inc. Out-of-Network "UCR" Rates Litigation | 1 | 13 |
| | Philip S Gutierrez (U.S. District Judge) | MDL-2438 | IN RE: 5-Hour Energy Marketing and Sales Practices Litigation | 0 | 16 |
| | Margaret M Morrow (U.S. District Judge) | MDL-2291 | IN RE: Wesson Oil Marketing and Sales Practices Litigation | 7 | 7 |
| | Mariana R Pfaelzer (Sr. District Judge) | MDL-2265 | IN RE: Countrywide Financial Corp. Mortgage-Backed Securities Litigation | 13 | 47 |
| | Dean D Pregerson (U.S. District Judge) | MDL-2199 | IN RE: POM Wonderful LLC Marketing and Sales Practices Litigation | 16 | 23 |
| | James V Selna (U.S. District Judge) | MDL-2151 | IN RE: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation | 90 | 436 |
| | Christina A Snyder (U.S. District Judge) | MDL-2317 | IN RE: Oreck Corporation Halo Vacuum and Air Purifiers Marketing and Sales Practices Litigation | 6 | 6 |
| | George H Wu (U.S. District Judge) | MDL-2153 | IN RE: United Parcel Service "Air-in-Ground" Marketing and Sales Practices Litigation | 0 | 5 |
| | George H Wu (U.S. District Judge) | MDL-2424 | IN RE: Hyundai and Kia Fuel Economy Litigation | 55 | 56 |
| | George H Wu (U.S. District Judge) | MDL-2531 | IN RE: Michaels Stores, Inc., Wage and Hour Employment Practices Litigation | 6 | 7 |
| CAN | Charles R Breyer (Sr. District Judge) | MDL-1913 | IN RE: Transpacific Passenger Air Transportation Antitrust Litigation | 26 | 26 |
| | Charles R Breyer (Sr. District Judge) | MDL-2159 | IN RE: AutoZone, Inc. Wage and Hour Employment Practices Litigation | 5 | 7 |
| | Charles R Breyer (Sr. District Judge) | MDL-2184 | IN RE: Google Inc. Street View Electronic Communications Litigation | 21 | 21 |
| | Edward M. Chen (U.S. District Judge) | MDL-2330 | IN RE: Carrier IQ, Inc., Consumer Privacy Litigation | 68 | 70 |
| | Maxine M Chesney (Sr. District Judge) | MDL-2532 | IN RE: Yosemite National Park Hantavirus Litigation | 10 | 10 |
| | Samuel Conti (Sr. District Judge) | MDL-1917 | IN RE: Cathode Ray Tube (CRT) Antitrust Litigation | 69 | 73 |
| | Edward J. Davila (U.S. District Judge) | MDL-2314 | IN RE: Facebook Internet Tracking Litigation | 22 | 30 |
| | James Donato (U.S. District Judge) | MDL-2600 | IN RE: Protegrity Corporation and Protegrity USA, Inc., Patent Litigation | 17 | 17 |
| | Susan Yvonne Illston (Sr. District Judge) | MDL-1827 | IN RE: TFT-LCD (Flat Panel) Antitrust Litigation | 12 | 177 |
| | Susan Yvonne Illston (Sr. District Judge) | MDL-2124 | IN RE: Conseco Life Insurance Co. Lifetrend Insurance Marketing and Sales Practices Litigation | 3 | 6 |
| | William H Orrick, III (U.S. District Judge) | MDL-2521 | IN RE: Lidoderm Antitrust Litigation | 23 | 24 |
| | Yvonne Gonzalez Rogers (U.S. District Judge) | MDL-2420 | IN RE: Lithium Ion Batteries Antitrust Litigation | 29 | 79 |
| | Yvonne Gonzalez Rogers (U.S. District Judge) | MDL-2497 | IN RE: Air Crash at San Francisco, California, on July 6, 2013 | 9 | 35 |
| | Richard Seeborg (U.S. District Judge) | MDL-2015 | IN RE: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation | 0 | 13 |
| | Richard Seeborg (U.S. District Judge) | MDL-2143 | IN RE: Optical Disk Drive Products Antitrust Litigation | 45 | 45 |
| | Jeffrey S White (U.S. District Judge) | MDL-2555 | IN RE: Coca-Cola Products Marketing and Sales Practices Litigation (No. II) | 8 | 8 |
| CAS | Claudia Wilken (Chief Judge, USDC) | MDL-2541 | IN RE: National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation | 7 | 8 |
| | Michael M. Anello (U.S. District Judge) | MDL-2286 | IN RE: Midland Credit Management, Inc., Telephone Consumer Protection Act (TCPA) Litigation | 129 | 134 |
| | Anthony J Battaglia (U.S. District Judge) | MDL-2258 | IN RE: Sony Gaming Networks and Customer Data Security Breach Litigation | 65 | 65 |
| | Anthony J. Battaglia (U.S. District Judge) | MDL-2452 | IN RE: Incretin-Based Therapies Products Liability Litigation | 607 | 614 |
| | Roger T Benitez (U.S. District Judge) | MDL-1889 | IN RE: Peregrine Systems, Inc., Securities Litigation | 0 | 35 |
| | Larry Alan Burns (U.S. District Judge) | MDL-2121 | IN RE: Musical Instruments and Equipment Antitrust Litigation | 34 | 38 |
| | John A Houston (U.S. District Judge) | MDL-2295 | IN RE: Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act (TCPA) Litigation | 61 | 65 |
| | Barry Ted Moskowitz (Chief Judge, USDC) | MDL-2087 | IN RE: Hydroxycut Marketing and Sales Practices Litigation | 120 | 129 |
| CO | John I. Kane, Jr (Sr. District Judge) | MDL-2063 | IN RE: Oppenheimer Rochester Funds Group Securities Litigation | 4 | 30 |
| CT | Vanessa Lynee Bryant (U.S. District Judge) | MDL-2407 | IN RE: Higher One OneAccount Marketing and Sales Practices Litigation | 6 | 6 |
| | Alvin W Thompson (U.S. District Judge) | MDL-2478 | IN RE: Convergent Telephone Consumer Protection Act (TCPA) Litigation | 20 | 22 |
| | Stefan R Underhill (U.S. District Judge) | MDL-2516 | IN RE: Aggrenox Antitrust Litigation | 23 | 23 |
| DC | Rosemary M Collyer (U.S. District Judge) | MDL-1880 | IN RE: Papst Licensing Digital Camera Patent Litigation | 0 | 15 |
| | Paul L Friedman (Sr. District Judge) | MDL-1869 | IN RE: Rail Freight Fuel Surcharge Antitrust Litigation | 7 | 18 |
| | Richard J Leon (U.S. District Judge) | MDL-1668 | IN RE: Federal National Mortgage Association Securities, Derivative & "ERISA" Litigation | 1 | 18 |
| | Emmet G Sullivan (U.S. District Judge) | MDL-2165 | IN RE: Endangered Species Act Section 4 Deadline Litigation | 4 | 24 |

| District | Judge | MDL No. | Caption | | | |
|---|---|---|---|---|---|---|
| DE | Reggie B Walton (U.S. District Judge) | MDL -2524 | IN RE: Health Management Associates, Inc., Qui Tam Litigation (No. II) | 9 | 9 | 9 |
| | Sue L Robinson (U.S. District Judge) | MDL -2429 | IN RE: Automated Transactions LLC Patent Litigation | 17 | 28 | 28 |
| | Gregory M Sleet (U.S. District Judge) | MDL -2344 | IN RE: Bear Creek Technologies, Inc., ('722) Patent Litigation | 15 | 15 | 15 |
| | Leonard P Stark (Chief Judge, USDC) | MDL -1717 | IN RE: Intel Corp. Microprocessor Antitrust Litigation | 56 | 82 | 82 |
| FLM | James S Moody, Jr (Sr. District Judge) | MDL -1626 | IN RE: Accutane (Isotretinoin) Products Liability Litigation | 2 | 123 | 123 |
| | Gregory A Presnell (U.S. District Judge) | MDL -2557 | IN RE: Auto Body Shop Antitrust Litigation | 23 | 23 | 23 |
| FLS | Cecilia M Altonaga (U.S. District Judge) | MDL -2051 | IN RE: Denture Cream Products Liability Litigation | 75 | 223 | 223 |
| | James Lawrence King (Sr. District Judge) | MDL -2036 | IN RE: Checking Account Overdraft Litigation | 11 | 100 | 100 |
| | Joan A Lenard (U.S. District Judge) | MDL -2324 | IN RE: Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practices Litigation | 7 | 7 | 7 |
| | Kenneth A Marra (U.S. District Judge) | MDL -1916 | IN RE: Chiquita Brands International, Inc., Alien Tort Statute and Shareholders Derivative Litigation | 13 | 18 | 18 |
| | Kenneth A Marra (U.S. District Judge) | MDL -2246 | IN RE: Air Crash Near Rio Grande, Puerto Rico, on December 3, 2008 | 5 | 7 | 7 |
| | Donald M Middlebrooks (U.S. District Judge) | MDL -1928 | IN RE: Trasylol Products Liability Litigation | 3 | 1,834 | 1,834 |
| | Federico A Moreno (U.S. District Judge) | MDL -2599 | IN RE: Takata Airbag Products Liability Litigation | 21 | 21 | 21 |
| | Patricia A Seitz (U.S. District Judge) | MDL -2183 | IN RE: Brican America LLC Equipment Lease Litigation | 2 | 6 | 6 |
| GAM | Clay D Land (Chief Judge, USDC) | MDL -2004 | IN RE: Mentor Corp. ObTape Transobturator Sling Products Liability Litigation | 454 | 758 | 758 |
| GAN | Timothy C Batten, Sr (U.S. District Judge) | MDL -2089 | IN RE: Delta/AirTran Baggage Fee Antitrust Litigation | 1 | 14 | 14 |
| | William S Duffey, Jr (U.S. District Judge) | MDL -2329 | IN RE: Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation | 396 | 404 | 404 |
| | Thomas W Thrash, Jr (Chief Judge, USDC) | MDL -1845 | IN RE: ConAgra Peanut Butter Products Liability Litigation | 1 | 588 | 588 |
| | Thomas W Thrash, Jr (Chief Judge, USDC) | MDL -2084 | IN RE: AndroGel Antitrust Litigation (No. II) | 10 | 14 | 14 |
| | Thomas W Thrash, Jr (Chief Judge, USDC) | MDL -2218 | IN RE: Camp Lejeune, North Carolina, Water Contamination Litigation | 13 | 14 | 14 |
| | Thomas W Thrash, Jr (Chief Judge, USDC) | MDL -2495 | IN RE: Atlas Roofing Corporation Chalet Shingle Products Liability Litigation | 10 | 12 | 12 |
| | Thomas W Thrash, Jr (Chief Judge, USDC) | MDL -2583 | IN RE: The Home Depot, Inc., Customer Data Security Breach Litigation | 36 | 36 | 36 |
| ID | B Lynn Winmill (Chief Judge, USDC) | MDL -2186 | IN RE: Fresh and Process Potatoes Antitrust Litigation | 7 | 7 | 7 |
| ILC | Harold A Baker (Sr. District Judge) | MDL -2104 | IN RE: IKO Roofing Shingle Products Liability Litigation | 12 | 16 | 16 |
| ILN | Marvin E Aspen (Sr. District Judge) | MDL -1715 | IN RE: Ameriquest Mortgage Co. Mortgage Lending Practices Litigation | 19 | 523 | 523 |
| | Robert M Dow, Jr (U.S. District Judge) | MDL -2031 | IN RE: Dairy Farmers of America, Inc., Cheese Antitrust Litigation | 10 | 10 | 10 |
| | Robert M Dow, Jr (U.S. District Judge) | MDL -2575 | IN RE: Fluidmaster, Inc., Water Connector Components Products Liability Litigation | 7 | 7 | 7 |
| | Robert W Gettleman (Sr. District Judge) | MDL -2519 | IN RE: AIG Workers Compensation Insurance Policyholder Litigation | 7 | 7 | 7 |
| | Joan B Gottschall (Sr. District Judge) | MDL -2334 | IN RE: Liberty Refund Anticipation Loan Litigation | 10 | 10 | 10 |
| | Joan B Gottschall (Sr. District Judge) | MDL -2590 | IN RE: Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation | 21 | 21 | 21 |
| | James F Holderman, Jr (U.S. District Judge) | MDL -2303 | IN RE: Innovatio IP Ventures, LLC, Patent Litigation | 24 | 24 | 24 |
| | James F Holderman, Jr (U.S. District Judge) | MDL -2416 | IN RE: Capital One Telephone Consumer Protection Act (TCPA) Litigation | 30 | 81 | 81 |
| | Matthew F Kennelly (U.S. District Judge) | MDL -1997 | IN RE: Text Messaging Antitrust Litigation | 3 | 38 | 38 |
| | Matthew F Kennelly (U.S. District Judge) | MDL -2545 | IN RE: Testosterone Replacement Therapy Products Liability Litigation | 1,017 | 1,019 | 1,019 |
| | John Z Lee (U.S. District Judge) | MDL -2492 | IN RE: National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation | 14 | 14 | 14 |
| | Joan Humphrey Lefkow (Sr. District Judge) | MDL -2371 | IN RE: Unified Messaging Solutions LLC Patent Litigation | 0 | 72 | 72 |
| | Harry D Leinenweber (Sr. District Judge) | MDL -2580 | IN RE: Opana ER Antitrust Litigation | 10 | 10 | 10 |
| | Charles R Norgle, Sr (U.S. District Judge) | MDL -1604 | IN RE: Ocwen Federal Bank FSB Mortgage Servicing Litigation | 0 | 93 | 93 |
| | Rebecca R Pallmeyer (U.S. District Judge) | MDL -2272 | IN RE: Zimmer NexGen Knee Implant Products Liability Litigation | 1,343 | 1,559 | 1,559 |
| | Milton I Shadur (Sr. District Judge) | MDL -2455 | IN RE: Stericycle, Inc., Steri-Safe Contract Litigation | 10 | 10 | 10 |
| | Amy J St. Eve (U.S. District Judge) | MDL -2602 | IN RE: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation | 5 | 5 | 5 |
| ILS | David R Herndon (Chief Judge, USDC) | MDL -2100 | IN RE: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation | 3,643 | 11,785 | 11,785 |
| | David R Herndon (Chief Judge, USDC) | MDL -2385 | IN RE: Pradaxa (Dabigatran Etexilate) Products Liability Litigation | 1,848 | 2,592 | 2,592 |
| INN | Robert L Miller, Jr (U.S. District Judge) | MDL -2391 | IN RE: Biomet M2a Magnum Hip Implant Products Liability Litigation | 1,963 | 2,451 | 2,451 |
| INS | Larry J McKinney (Sr. District Judge) | MDL -2181 | IN RE: Method of Processing Ethanol Byproducts and Related Subsystems ('858) Patent Litigation | 22 | 22 | 22 |
| | Richard L Young (Chief Judge, USDC) | MDL -2570 | IN RE: Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Products Liability Litigation | 59 | 59 | 59 |
| KS | John W Lungstrum (Sr. District Judge) | MDL -1616 | IN RE: Urethane Antitrust Litigation | 0 | 33 | 33 |
| | John W Lungstrum (Sr. District Judge) | MDL -2591 | IN RE: Syngenta AG MIR162 Corn Litigation | 533 | 533 | 533 |
| | Kathryn H Vratil (Sr. District Judge) | MDL -1840 | IN RE: Motor Fuel Temperature Sales Practices Litigation | 31 | 54 | 54 |
| | Kathryn H Vratil (Sr. District Judge) | MDL -2473 | IN RE: Monsanto Company Genetically-Engineered Wheat Litigation | 8 | 18 | 18 |
| KYE | Joseph M Hood (Sr. District Judge) | MDL -1877 | IN RE: ClassicStar Mare Lease Litigation | 11 | 30 | 30 |
| KYW | Danny C Reeves (U.S. District Judge) | MDL -2226 | IN RE: Darvocet, Darvon and Propoxyphene Products Liability Litigation | 3 | 253 | 253 |
| | John G Heyburn II (Sr. District Judge) | MDL -2515 | IN RE: Pilot Flying J Fuel Rebate Contract Litigation | 5 | 8 | 8 |
| | John G Heyburn II (Sr. District Judge) | MDL -2504 | IN RE: Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) and Wage and Hour Litigation | 12 | 12 | 12 |
| | Thomas B Russell (Sr. District Judge) | MDL -2308 | IN RE: Skechers Toning Shoe Products Liability Litigation | 1,016 | 1,089 | 1,089 |
| LAE | Carl J Barbier (U.S. District Judge) | MDL -2179 | IN RE: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | 2,941 | 3,083 | 3,083 |
| | Kurt D Engelhardt (U.S. District Judge) | MDL -1873 | IN RE: FEMA Trailer Formaldehyde Products Liability Litigation | | 4,828 | 4,828 |
| | Kurt D Engelhardt (U.S. District Judge) | MDL -2454 | IN RE: Franck's Lab, Inc., Products Liability Litigation | 34 | 34 | 34 |
| | Eldon E Fallon (U.S. District Judge) | MDL -1657 | IN RE: Vioxx Marketing, Sales Practices and Products Liability Litigation | 114 | 10,319 | 10,319 |
| | Eldon E Fallon (U.S. District Judge) | MDL -2047 | IN RE: Chinese-Manufactured Drywall Products Liability Litigation | 293 | 363 | 363 |
| | Eldon E Fallon (U.S. District Judge) | MDL -2592 | IN RE: Xarelto (Rivaroxaban) Products Liability Litigation | 220 | 220 | 220 |

| State | Judge | MDL | | Litigation | | |
|---|---|---|---|---|---|---|
| LAW | Sarah S Vance (Chief Judge, USDC) | MDL -2328 | IN RE: Pool Products Distribution Market Antitrust Litigation | 32 | 35 |
| MA | Rebecca F Doherty (U.S. District Judge) | MDL -2299 | IN RE: Actos (Pioglitazone) Products Liability Litigation | 4,033 | 4,186 |
| | Denise J. Casper (U.S. District Judge) | MDL -2503 | IN RE: Solodyn (Minocycline Hydrochloride) Antitrust Litigation | 15 | 15 |
| | Nathaniel M Gorton (U.S. District Judge) | MDL -2067 | IN RE: Celexa and Lexapro Marketing and Sales Practices Litigation | 5 | 13 |
| | Timothy S Hillman (U.S. District Judge) | MDL -2556 | IN RE: TelexFree Securities Litigation | 7 | 9 |
| | Michael A Ponsor (Sr. District Judge) | MDL -2208 | IN RE: Prudential Insurance Company of America SGLI/VGLI Contract Litigation | 9 | 9 |
| | F. Dennis Saylor (U.S. District Judge) | MDL -2375 | IN RE: Body Science LLC Patent Litigation | 4 | 4 |
| | Richard G Stearns (U.S. District Judge) | MDL -2432 | IN RE: Neurografix ('360) Patent Litigation | 6 | 6 |
| | Richard G Stearns (U.S. District Judge) | MDL -2513 | IN RE: Colitech, Inc., Telephone Consumer Protection Act (TCPA) Litigation | 10 | 10 |
| | Douglas P Woodlock (U.S. District Judge) | MDL -2428 | IN RE: Fresenius GranuFlo/NaturaLyte Dialysate Products Liability Litigation | 2,686 | 2,687 |
| | William G Young (U.S. District Judge) | MDL -2409 | IN RE: Nexium (Esomeprazole) Antitrust Litigation | 20 | 20 |
| | Rya W Zobel (U.S. District Judge) | MDL -2193 | IN RE: Bank of America Home Affordable Modification Program (HAMP) Contract Litigation | 31 | 32 |
| | Rya W Zobel (U.S. District Judge) | MDL -2242 | IN RE: Prograf Antitrust Litigation | 8 | 8 |
| | Rya W Zobel (U.S. District Judge) | MDL -2419 | IN RE: New England Compounding Pharmacy, Inc., Products Liability Litigation | 699 | 702 |
| MD | Catherine C Blake (U.S. District Judge) | MDL -2294 | IN RE: Webvention LLC ('294) Patent Litigation | 12 | 22 |
| | Marvin J Garbis (Sr. District Judge) | MDL -1961 | IN RE: Municipal Mortgage & Equity, LLC, Securities and Derivative Litigation | 12 | 14 |
| | Marvin J Garbis (Sr. District Judge) | MDL -2581 | IN RE: CTP Innovations, LLC, Patent Litigation | 9 | 9 |
| | J. Frederick Motz (Sr. District Judge) | MDL -2491 | IN RE: GNC Corp. TriFlex Products Marketing and Sales Practices Litigation (No. II) | 4 | 10 |
| | J. Frederick Motz (Sr. District Judge) | MDL -2498 | IN RE: Nutramax Cosamin Marketing and Sales Practices Litigation | 4 | 4 |
| | J. Frederick Motz (Sr. District Judge) | MDL -2528 | IN RE: Natrol, Inc., Glucosamine/Chondroitin Marketing and Sales Practices Litigation | 4 | 4 |
| | Roger W Titus (Sr. District Judge) | MDL -2083 | IN RE: KBR, Inc., Burn Pit Litigation | 1 | 58 |
| ME | D. Brock Hornby (Sr. District Judge) | MDL -2426 | IN RE: TRS Recovery Services, Inc., and TeleCheck Services, Inc., Fair Debt Collection Practices Act (FDCPA) Litigation | 5 | 5 |
| MIE | Marianne O Battani (Sr. District Judge) | MDL -2311 | IN RE: Automotive Parts Antitrust Litigation | 160 | 180 |
| | Paul D Borman (U.S. District Judge) | MDL -1952 | IN RE: Packaged Ice Antitrust Litigation | 96 | 100 |
| MIW | Sean F Cox (U.S. District Judge) | MDL -2042 | IN RE: Refrigerant Compressors Antitrust Litigation | 38 | 51 |
| | Robert Holmes Bell (U.S. District Judge) | MDL -1846 | IN RE: Trade Partners, Inc., Investors Litigation | 6 | 7 |
| MN | Michael James Davis (Chief Judge, USDC) | MDL -1431 | IN RE: Baycol Products Liability Litigation | 1 | 9,107 |
| | Michael James Davis (Chief Judge, USDC) | MDL -1836 | IN RE: Mirapex Products Liability Litigation | 3 | 440 |
| | Michael James Davis (Chief Judge, USDC) | MDL -2359 | IN RE: HardiePlank Fiber Cement Siding Litigation | 13 | 13 |
| | Joan N Erickson (U.S. District Judge) | MDL -2564 | IN RE: Life Time Fitness, Inc., Telephone Consumer Protection Act (TCPA) Litigation | 4 | 4 |
| | Donovan W Frank (U.S. District Judge) | MDL -2441 | IN RE: Stryker Rejuvenate and ABG II Hip Implant Products Liability Litigation | 2,297 | 2,352 |
| | Paul A Magnuson (Sr. District Judge) | MDL -2522 | IN RE: Target Corporation Customer Data Security Breach Litigation | 109 | 112 |
| | Ann D Montgomery (U.S. District Judge) | MDL -2090 | IN RE: Wholesale Grocery Products Antitrust Litigation | 0 | 4 |
| | Ann D Montgomery (U.S. District Judge) | MDL -2586 | IN RE: Supervalu, Inc., Customer Data Security Breach Litigation | 4 | 4 |
| | Susan Richard Nelson (U.S. District Judge) | MDL -2551 | IN RE: National Hockey League Players' Concussion Injury Litigation | 9 | 9 |
| | John R Tunheim (U.S. District Judge) | MDL -1943 | IN RE: Levaquin Products Liability Litigation | 178 | 2,048 |
| MOE | Henry Edward Autrey (U.S. District Judge) | MDL -1672 | IN RE: Express Scripts, Inc., Pharmacy Benefits Management Litigation | 1 | 22 |
| | Henry Edward Autrey (U.S. District Judge) | MDL -2382 | IN RE: Emerson Electric Co. Wet/Dry Vac Marketing and Sales Practices Litigation | 8 | 8 |
| | Catherine D Perry (Chief Judge, USDC) | MDL -1811 | IN RE: Genetically Modified Rice Litigation | 8 | 412 |
| | John A. Ross (U.S. District Judge) | MDL -2470 | IN RE: Schnuck Markets, Inc., Customer Data Security Breach Litigation | 5 | 5 |
| | Rodney W Sippel (U.S. District Judge) | MDL -1964 | IN RE: NuvaRing Products Liability Litigation | 1,762 | 1,862 |
| | Rodney W Sippel (U.S. District Judge) | MDL -2562 | IN RE: Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation | 10 | 10 |
| MOW | Gary A Fenner (U.S. District Judge) | MDL -2567 | IN RE: Pre-Filled Propane Tank Antitrust Litigation | 37 | 37 |
| | Fernando J Gaitan, Jr (Sr. District Judge) | MDL -2361 | IN RE: Simply Orange Orange Juice Marketing and Sales Practices Litigation | 12 | 14 |
| | Fernando J Gaitan, Jr (Sr. District Judge) | MDL -2474 | IN RE: H&R Block IRS Form 8863 Litigation | 14 | 14 |
| NCW | Graham C Mullen (Sr. District Judge) | MDL -1932 | IN RE: Family Dollar Stores, Inc., Wage and Hour Employment Practices Litigation | 2 | 29 |
| | Graham C Mullen (Sr. District Judge) | MDL -2384 | IN RE: Swisher Hygiene, Inc., Securities and Derivative Litigation | 9 | 9 |
| NH | Paul J Barbadoro (U.S. District Judge) | MDL -2320 | IN RE: Colgate-Palmolive Softsoap Antibacterial Hand Soap Marketing and Sales Practices Litigation | 5 | 5 |
| | Steven J McAuliffe (Sr. District Judge) | MDL -2263 | IN RE: Dial Complete Marketing and Sales Practices Litigation | 11 | 17 |
| NJ | Madeline C. Arleo (U.S. District Judge) | MDL -2506 | IN RE: AZEK Building Products, Inc., Marketing and Sales Practices Litigation | 3 | 4 |
| | Claire C. Cecchi (U.S. District Judge) | MDL -1663 | IN RE: Insurance Brokerage Antitrust Litigation | 13 | 51 |
| | Stanley R Chesler (U.S. District Judge) | MDL -1419 | IN RE: K-Dur Antitrust Litigation | 13 | 45 |
| | Stanley R Chesler (U.S. District Judge) | MDL -1658 | IN RE: Merck & Co., Inc., Securities, Derivative & "ERISA" Litigation | 5 | 47 |
| | Katharine S Hayden (Sr. District Judge) | MDL -2020 | IN RE: Aetna, Inc., Out-of-Network "UCR" Rates Litigation | 8 | 13 |
| | Jose L Linares (U.S. District Judge) | MDL -2577 | IN RE: GAF Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation | 12 | 12 |
| | William J Martini (U.S. District Judge) | MDL -2280 | IN RE: Morgan Stanley Smith Barney LLC Wage and Hour Employment Practices Litigation | 6 | 10 |
| | William J Martini (U.S. District Judge) | MDL -2355 | IN RE: Tropicana Orange Juice Marketing and Sales Practices Litigation | 13 | 15 |
| | William J Martini (U.S. District Judge) | MDL -2415 | IN RE: L'Oreal Wrinkle Cream Marketing and Sales Practices Litigation | 9 | 9 |
| | Joel A Pisano (U.S. District Judge) | MDL -2243 | IN RE: Fosamax (Alendronate Sodium) Products Liability Litigation (No. II) | 516 | 1,177 |
| | Esther Salas (U.S. District Judge) | MDL -2471 | IN RE: Vehicle Carrier Services Antitrust Litigation | 29 | 29 |
| | Peter G Sheridan (U.S. District Judge) | MDL -2332 | IN RE: Lipitor Antitrust Litigation | 30 | 31 |

| State | Judge | MDL | Case | | |
|---|---|---|---|---|---|
| | Peter G Sheridan (U.S. District Judge) | MDL-2396 | IN RE: TR Labs Patent Litigation | 6 | 9 |
| | Jerome B Simandle (Chief Judge, USDC) | MDL-2540 | IN RE: Caterpillar, Inc., C13 and C15 Engine Products Liability Litigation | 16 | 16 |
| | Susan D Wigenton (U.S. District Judge) | MDL-2158 | IN RE: Zimmer Durom Hip Cup Products Liability Litigation | 392 | 544 |
| | Freda L Wolfson (U.S. District Judge) | MDL-2418 | IN RE: Plavix Marketing, Sales Practices and Products Liability Litigation (No. II) | 33 | 93 |
| NV | Kent J Dawson (Sr. District Judge) | MDL-2527 | IN RE: First National Collection Bureau, Inc., Telephone Consumer Protection Act (TCPA) Litigation | 4 | 4 |
| | Robert Clive Jones (U.S. District Judge) | MDL-2357 | IN RE: Zappos.com, Inc., Customer Data Security Breach Litigation | 11 | 11 |
| NYE | Margo K Brodie (U.S. District Judge) | MDL-1720 | IN RE: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation | 92 | 94 |
| | Brian M Cogan (U.S. District Judge) | MDL-1758 | IN RE: Vitamin C Antitrust Litigation | 4 | 10 |
| | Nicholas G Garaufis (Sr. District Judge) | MDL-2221 | IN RE: American Express Anti-Steering Rules Antitrust Litigation (No. II) | 13 | 13 |
| | John Gleeson (U.S. District Judge) | MDL-1775 | IN RE: Air Cargo Shipping Services Antitrust Litigation | 102 | 110 |
| | John Gleeson (U.S. District Judge) | MDL-2331 | IN RE: Propecia (Finasteride) Products Liability Litigation | 743 | 746 |
| | Dora Lizette Irizarry (U.S. District Judge) | MDL-2215 | IN RE: Glaceau Vitaminwater Marketing and Sales Practice Litigation (No. II) | 2 | 6 |
| | Roslynn R Mauskopf (U.S. District Judge) | MDL-2413 | IN RE: Frito-Lay North America, Inc., "All Natural" Litigation | 13 | 13 |
| | Allyne R Ross (U.S. District Judge) | MDL-2395 | IN RE: Air Crash at Georgetown, Guyana, on July 30, 2011 | 15 | 22 |
| | Arthur D Spatt (Sr. District Judge) | MDL-2451 | IN RE: HSBC Bank USA, N.A., Debit Card Overdraft Fee Litigation | 3 | 15 |
| NYS | Vernon S Broderick (U.S. District Judge) | MDL-2542 | IN RE: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation | 26 | 26 |
| | Naomi Reice Buchwald (Sr. District Judge) | MDL-2262 | IN RE: Libor-Based Financial Instruments Antitrust Litigation | 51 | 51 |
| | Valerie E. Caproni (U.S. District Judge) | MDL-2548 | IN RE: Commodity Exchange, Inc., Gold Futures and Options Trading Litigation | 27 | 27 |
| | Valerie E. Caproni (U.S. District Judge) | MDL-2573 | IN RE: London Silver Fixing, Ltd., Antitrust Litigation | 8 | 8 |
| | Andrew L. Carter, Jr (U.S. District Judge) | MDL-2475 | IN RE: North Sea Brent Crude Oil Futures Litigation | 10 | 11 |
| | P. Kevin Castel (U.S. District Judge) | MDL-1995 | IN RE: Time Warner Inc. Set-Top Cable Television Box Antitrust Litigation | 0 | 7 |
| | P. Kevin Castel (U.S. District Judge) | MDL-2058 | IN RE: Bank of America Corp. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation | 16 | 52 |
| | Miriam Goldman Cedarbaum (Sr. District Judge) | MDL-2072 | IN RE: Federal Home Loan Mortgage Corp. (Freddie Mac) Securities Litigation | 1 | 33 |
| | Denise L. Cote (Sr. District Judge) | MDL-2293 | IN RE: Electronic Books Antitrust Litigation | 30 | 32 |
| | Denise L. Cote (Sr. District Judge) | MDL-2472 | IN RE: Credit Default Swaps Antitrust Litigation | 2 | 24 |
| | Paul A Crotty (U.S. District Judge) | MDL-2013 | IN RE: Fannie Mae Securities and Employee Retirement Income Security Act (ERISA) Litigation | 1 | 28 |
| | George B Daniels (U.S. District Judge) | MDL-1570 | IN RE: Terrorist Attacks on September 11, 2001 | 23 | 75 |
| | Katherine B. Forrest (U.S. District Judge) | MDL-2481 | IN RE: Aluminum Warehousing Antitrust Litigation | 167 | 168 |
| | Jesse M Furman (U.S. District Judge) | MDL-1529 | IN RE: Adelphia Communications Corp. Securities & Derivative Litigation | 5 | 5 |
| | Jesse M Furman (U.S. District Judge) | MDL-2543 | IN RE: General Motors LLC Ignition Switch Litigation (No. II) | 5 | 40 |
| | Jesse M Furman (U.S. District Judge) | MDL-2589 | IN RE: Barclays Liquidity Cross and High Frequency Trading Litigation | 1 | 5 |
| | Paul G Gardephe (U.S. District Judge) | MDL-2011 | IN RE: The Reserve Fund Securities and Derivative Litigation | 9 | 31 |
| | Paul G Gardephe (U.S. District Judge) | MDL-2157 | IN RE: JPMorgan Auction Rate Securities (ARS) Marketing Litigation | 2 | 9 |
| | Thomas P Griesa (Sr. District Judge) | MDL-2052 | IN RE: Tremont Group Holdings, Inc., Securities Litigation | 5 | 6 |
| | Thomas P Griesa (Sr. District Judge) | MDL-2075 | IN RE: Austin Capital Management, Ltd., Securities and Employee Retirement Income Security Act (ERISA) Litigation | 5 | 5 |
| | Thomas P Griesa (Sr. District Judge) | MDL-2017 | IN RE: Lehman Brothers Holdings, Inc., Securities & Employee Retirement Income Security Act (ERISA) Litigation | 29 | 55 |
| | Lewis A Kaplan (Sr. District Judge) | MDL-2335 | IN RE: Bank of New York Mellon Corp. Foreign Exchange Transactions Litigation | 8 | 8 |
| | Lewis A Kaplan (Sr. District Judge) | MDL-2450 | IN RE: Ford Fusion and C-Max Fuel Economy Litigation | 12 | 17 |
| | Kenneth M Karas (U.S. District Judge) | MDL-1789 | IN RE: Fosamax Products Liability Litigation | 902 | 1,138 |
| | John F Keenan (Sr. District Judge) | MDL-1950 | IN RE: Municipal Derivatives Antitrust Litigation | 1 | 36 |
| | Victor Marrero (Sr. District Judge) | MDL-2088 | IN RE: Fairfield Greenwich Group Securities Litigation | 1 | 63 |
| | Victor Marrero (Sr. District Judge) | MDL-2338 | IN RE: MF Global Holdings Ltd. Investment Litigation | 0 | 25 |
| | Victor Marrero (Sr. District Judge) | MDL-2213 | IN RE: Commodity Exchange, Inc., Silver Futures and Options Trading Litigation | 0 | 43 |
| | Robert P Patterson, Jr (Sr. District Judge) | MDL-1409 | IN RE: Currency Conversion Fee Antitrust Litigation | 1,178 | 1,209 |
| | William H Pauley, III (U.S. District Judge) | MDL-1358 | IN RE: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | 20 | 189 |
| | Shira Ann Scheindlin (Sr. District Judge) | MDL-1499 | IN RE: South African Apartheid Litigation | 3 | 103 |
| | Shira Ann Scheindlin (Sr. District Judge) | MDL-2434 | IN RE: Mirena IUD Products Liability Litigation | 1 | 14 |
| | Cathy Seibel (U.S. District Judge) | MDL-1603 | IN RE: OxyContin Antitrust Litigation | 3 | 13 |
| | Sidney H Stein (Sr. District Judge) | MDL-2070 | IN RE: Citigroup Inc. Securities Litigation | 0 | 24 |
| | Sidney H Stein (Sr. District Judge) | MDL-2296 | IN RE: Tribune Company Fraudulent Conveyance Litigation | 72 | 30 |
| | Richard J Sullivan (U.S. District Judge) | MDL-1963 | IN RE: The Bear Stearns Companies Inc. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation | 4 | 30 |
| | Robert W Sweet (Sr. District Judge) | MDL-2352 | IN RE: Century 21 Department Stores, LLC, Fair and Accurate Credit Transactions Act (FACTA) Litigation | 5 | 5 |
| | Robert W Sweet (Sr. District Judge) | MDL-2001 | IN RE: Facebook, Inc., IPO Securities and Derivative Litigation | 43 | 57 |
| | Robert W Sweet (Sr. District Judge) | MDL-1955 | IN RE: Whirlpool Corp. Front-Loading Washer Products Liability Litigation | 10 | 11 |
| OHN | Christopher A Boyko (U.S. District Judge) | MDL-2044 | IN RE: Heparin Products Liability Litigation | 8 | 10 |
| | James G Carr (Sr. District Judge) | MDL-1955 | IN RE: Mirena IUD Products Liability Litigation | 1 | 14 |
| | Patricia A Gaughan (U.S. District Judge) | MDL-2197 | IN RE: Vertrue Inc. Marketing and Sales Practices Litigation | 3 | 13 |
| | David A Katz (Sr. District Judge) | MDL-2220 | IN RE: DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation | 7,116 | 9,362 |
| | Donald C Nugent (U.S. District Judge) | MDL-2316 | IN RE: KABA Simplex Locks Marketing and Sales Practices Litigation | 9 | 20 |
| | Benita Y. Pearson (U.S. District Judge) | MDL-1909 | IN RE: Ford Motor Co. Spark Plug and 3-Valve Engine Products Liability Litigation | 5 | 5 |
| | Dan A Polster (U.S. District Judge) | MDL-1909 | IN RE: Gadolinium Contrast Dyes Products Liability Litigation | 2 | 729 |

| | | | | |
|---|---|---|---|---|
| **OHS** | Jack Zouhary (U.S. District Judge) | IN RE: Polyurethane Foam Antitrust Litigation | MDL -2196 | 62 | 98 |
| **OKW** | Sandra S Beckwith (Sr. District Judge) | IN RE: Bill of Lading Transmission and Processing System Patent Litigation | MDL -2050 | 0 | 14 |
| | Edmund A Sargus, Jr (U.S. District Judge) | IN RE: E. I. du Pont de Nemours and Company C-8 Personal Injury Litigation | MDL -2433 | 1,954 | 1,960 |
| | Robin J Cauthron (U.S. District Judge) | IN RE: Cox Enterprises, Inc., Set-Top Cable Television Box Antitrust Litigation | MDL -2048 | 9 | 27 |
| **PAE** | Robin J Cauthron (U.S. District Judge) | IN RE: Transdata, Inc., Smart Meters Patent Litigation | MDL -2309 | 9 | 9 |
| | Harvey Bartle, III (U.S. District Judge) | IN RE: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation | MDL -1203 | 15 | 20,206 |
| | Michael M Baylson (Sr. District Judge) | IN RE: Domestic Drywall Antitrust Litigation | MDL -2437 | 7 | 27 |
| | Anita B Brody (Sr. District Judge) | IN RE: Comcast Corp. Set-Top Cable Television Box Antitrust Litigation | MDL -2034 | 5 | 24 |
| | Anita B Brody (Sr. District Judge) | IN RE: National Football League Players' Concussion Injury Litigation | MDL -2323 | 329 | 333 |
| | Jan E DuBois (Sr. District Judge) | IN RE: Blood Reagents Antitrust Litigation | MDL -2081 | 32 | 34 |
| | Jan E DuBois (Sr. District Judge) | IN RE: Niaspan Antitrust Litigation | MDL -2460 | 17 | 17 |
| | Mitchell S Goldberg (U.S. District Judge) | IN RE: Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation | MDL -2445 | 12 | 12 |
| | C. Darnell Jones, II (U.S. District Judge) | IN RE: Pharmacy Benefit Managers Antitrust Litigation | MDL -1782 | 6 | 6 |
| | J. Curtis Joyner (Sr. District Judge) | IN RE: Foot Locker, Inc., Fair Labor Standards Act (FLSA) and Wage and Hour Litigation | MDL -2235 | 22 | 32 |
| | Gene E.K. Pratter (U.S. District Judge) | IN RE: Processed Egg Products Antitrust Litigation | MDL -2002 | 15 | 157 |
| | Gene E.K. Pratter (U.S. District Judge) | IN RE: Imprelis Herbicide Marketing, Sales Practices and Products Liability Litigation | MDL -2284 | | |
| | Eduardo C Robreno (Sr. District Judge) | IN RE: Asbestos Products Liability Litigation (No. VI) | MDL -875 | 1,662 | 192,049 |
| | Cynthia M Rufe (U.S. District Judge) | IN RE: Avandia Marketing, Sales Practices and Products Liability Litigation | MDL -1871 | 1,422 | 5,239 |
| | Cynthia M Rufe (U.S. District Judge) | IN RE: Zoloft (Sertraline Hydrochloride) Products Liability Litigation | MDL -2342 | 539 | 660 |
| | Cynthia M Rufe (U.S. District Judge) | IN RE: Effexor (Venlafaxine Hydrochloride) Products Liability Litigation | MDL -2458 | 49 | 74 |
| | Edward G. Smith (U.S. District Judge) | IN RE: Impulse Monitoring, Inc., Aetna Intraoperative Monitoring Services Claims and Employee Retirement Income Security Act (ERISA) Litigation | MDL -2571 | 27 | 33 |
| | Lawrence F Stengel (U.S. District Judge) | IN RE: Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation | MDL -2436 | 186 | 197 |
| **PAM** | Yvette Kane (U.S. District Judge) | IN RE: Shop-Vac Marketing and Sales Practices Litigation | MDL -2380 | 9 | 10 |
| **PAW** | Donetta W Ambrose (Sr. District Judge) | IN RE: Flat Glass Antitrust Litigation (No. II) | MDL -1942 | 1 | 27 |
| | Joy Flowers Conti (Chief Judge, USDC) | IN RE: Maxim Integrated Products, Inc., Patent Litigation | MDL -2354 | 5 | 27 |
| | Arthur J Schwab (U.S. District Judge) | IN RE: Community Bank of Northern Virginia Mortgage Lending Practices Litigation | MDL -1674 | 4 | 8 |
| **RI** | Mary J Lisi (U.S. District Judge) | IN RE: Kugel Mesh Hernia Patch Products Liability Litigation | MDL -1842 | 273 | 2,232 |
| | William E Smith (Chief Judge, USDC) | IN RE: Loestrin 24 Fe Antitrust Litigation | MDL -2472 | 13 | 13 |
| **SC** | Richard M Gergel (U.S. District Judge) | IN RE: Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation (No. II) | MDL -2502 | 1,814 | 1,817 |
| | David C Norton (U.S. District Judge) | IN RE: MI Windows and Doors, Inc., Products Liability Litigation | MDL -2333 | 17 | 18 |
| | David C Norton (U.S. District Judge) | IN RE: Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices and Products Liability Litigation | MDL -2514 | 17 | 20 |
| **TNE** | Curtis Lynn Collier (U.S. District Judge) | IN RE: Skelaxin (Metaxalone) Antitrust Litigation | MDL -2343 | 14 | 17 |
| | Harry S Mattice, Jr (U.S. District Judge) | IN RE: Cast Iron Soil Pipe and Fittings Antitrust Litigation | MDL -2508 | 16 | 18 |
| **TNW** | J. Daniel Breen (Chief Judge, USDC) | IN RE: Reciprocal of America (ROA) Sales Practices Litigation | MDL -1551 | 12 | 19 |
| | Samuel H Mays, Jr (U.S. District Judge) | IN RE: Regions Morgan Keegan Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation | MDL -2009 | 7 | 9 |
| **TXE** | Leonard E Davis (Chief Judge, USDC) | IN RE: Parallel Networks, LLC, ('111) Patent Litigation | MDL -2355 | 29 | 33 |
| **TXN** | Jane J Boyle (U.S. District Judge) | IN RE: On-Line Travel Company (OTC)/Hotel Booking Antitrust Litigation | MDL -2405 | 65 | 65 |
| | Sidney A. Fitzwater (U.S. District Judge) | IN RE: IntraMTA Switched Access Charges Litigation | MDL -2587 | 88 | 134 |
| | David C Godbey (U.S. District Judge) | IN RE: Stanford Entities Securities Litigation | MDL -2099 | | |
| **TXS** | James Edgar Kinkeade (U.S. District Judge) | IN RE: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation | MDL -2244 | 7,045 | 7,133 |
| | Keith P Ellison (U.S. District Judge) | IN RE: BP p.l.c. Securities Litigation | MDL -2185 | 32 | 50 |
| | Melinda Harmon (U.S. District Judge) | IN RE: Enron Corp. Securities, Derivative & "ERISA" Litigation | MDL -1446 | 5 | 199 |
| | Gray H. Miller (U.S. District Judge) | IN RE: Wells Fargo Wage and Hour Employment Practices Litigation (No. III) | MDL -2266 | 0 | 6 |
| | Lee H Rosenthal (U.S. District Judge) | IN RE: Heartland Payment Systems, Inc., Customer Data Security Breach Litigation | MDL -2046 | 0 | 35 |
| **TXW** | Sam Sparks (U.S. District Judge) | IN RE: Whole Foods Market, Inc., Greek Yogurt Marketing and Sales Practices Litigation | MDL -2588 | 0 | 10 |
| **UT** | Robert J. Shelby (U.S. District Judge) | IN RE: BRCA1- and BRCA2-based Hereditary Cancer Test Patent Litigation | MDL -2510 | 1 | 10 |
| **WAE** | Lonny R Suko (Sr. District Judge) | IN RE: Columbia and Snake River Dams Clean Water Act Litigation | MDL -2494 | 0 | 3 |
| **WAW** | John C Coughenour (Sr. District Judge) | IN RE: New Cingular Wireless PCS, LLC, Data Services Sales Tax Refund Litigation | MDL -2485 | 17 | 17 |
| | James L Robart (U.S. District Judge) | IN RE: Subway Footlong Sandwich Marketing and Sales Practices Litigation | MDL -2439 | 9 | 9 |
| **WIE** | Irene M Keeley (U.S. District Judge) | IN RE: Monitronics International, Inc., Telephone Consumer Protection Act (TCPA) Litigation | MDL -2493 | 18 | 20 |
| **WVN** | Joseph R Goodwin (U.S. District Judge) | IN RE: C.R. Bard, Inc., Pelvic Repair System Products Liability Litigation | MDL -2187 | 10,348 | 10,642 |
| **WVS** | Joseph R Goodwin (U.S. District Judge) | IN RE: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation | MDL -2325 | 19,159 | 19,512 |
| | Joseph R Goodwin (U.S. District Judge) | IN RE: Boston Scientific Corp. Pelvic Repair System Products Liability Litigation | MDL -2326 | 15,278 | 15,541 |
| | Joseph R Goodwin (U.S. District Judge) | IN RE: Ethicon, Inc., Pelvic Repair System Products Liability Litigation | MDL -2327 | 23,523 | 24,156 |
| | Joseph R Goodwin (U.S. District Judge) | IN RE: Coloplast Corp. Pelvic Support Systems Products Liability Litigation | MDL -2387 | 1,830 | 1,969 |
| | Joseph R Goodwin (U.S. District Judge) | IN RE: Cook Medical, Inc., Pelvic Repair System Products Liability Litigation | MDL -2440 | 289 | 328 |
| | Joseph R Goodwin (U.S. District Judge) | IN RE: Neomedic Pelvic Repair System Products Liability Litigation | MDL -2511 | 83 | 101 |

**Report Totals:** 129,026 | 465,833

**Total Number of MDL Dockets:** 290

290

Total Number of Transferee Districts: 59

Total Number of Transferee Judges: 219
   17  Chief Judge, USDC
   60  Sr. District Judge
 142  U.S. District Judge

# EXHIBIT 2

## Federal Court Caseload Statistics[†]

| Year | Starting case load | Cases filed | Total cases | Cases terminated | Remaining cases | Median time (criminal)[††] | Median time (civil)[††] | 3 Year civil cases[#] | Vacant posts[**] | Trial/Post |
|------|------|------|------|------|------|------|------|------|------|------|
| 2013 | 3077 | 2966 | 6043 | 3117 | 2926 | 9.4 | 8.4 | 298 (13.8%) | 12 | 50 |
| 2012 | 2729 | 3163 | 5892 | 2806 | 3086 | 9 | 8.9 | 257 (11.7%) | 12 | 59 |
| 2011 | 2706 | 2674 | 5380 | 2582 | 2798 | 8.3 | 8.6 | 237 (12.6%) | 12 | 31 |
| 2010 | 2392 | 2536 | 4928 | 2200 | 2728 | 8.3 | 8.6 | 154 (8.7%) | 12 | 29 |
| 2009 | 2113 | 2352 | 4465 | 2072 | 2393 | 8 | 8.7 | 95 (6%) | 12 | 40 |
| 2008 | 1970 | 2229 | 4199 | 2074 | 2125 | 8 | 8.8 | 88 (6.1%) | 12 | 31 |
| 2007 | 1836 | 2194 | 4030 | 2212 | 1818 | 8.6 | 10.3 | 83 (6.7%) | 12 | 26 |

[†]All statistics are taken from the Official Federal Courts' Website ௹ and reflect the calendar year through September.   [††]Time in months from filing to completion.

[#]This statistic includes cases which have been appealed in higher courts.   [**]This is the total number of months that any judicial posts had spent vacant that year.

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: LENOVO ADWARE LITIGATION ___ / MDL DOCKET NO. _____

**SCHEDULE OF ACTIONS**

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiff:**<br>Jessica N. Bennett<br>**Defendants:**<br>Lenovo (United States), Inc.<br>and Superfish, Inc. | S.D. California | 3:15cv368 | Cathy Ann Bencivengo |
| **Plaintiff:**<br>Sterling International Consulting Group<br>**Defendants:**<br>Lenovo (United States) Inc.<br>Lenovo Group Limited<br>and Superfish, Inc. | N.D. California | 5:15cv807 | Ronald M. Whyte |
| **Plaintiff:**<br>David Hunter<br>**Defendants:**<br>Lenovo (United States) Inc.<br>and Superfish, Inc. | N.D. California | 5:15-cv-00819 | Magistrate Judge Nathanael M. Cousins |
| **Plaintiff:**<br>Lukas Pick<br>**Defendants:**<br>Lenovo (United States) Inc.<br>and Superfish Inc. | E.D. North Carolina | 5:15-cv-00068-D | James Dever |

# EXHIBIT 1

# US District Court Civil Docket

## U.S. District - California Southern
## (San Diego)

## 3:15cv368

## Bennett v. Lenovo (United States), Inc. et al

### This case was retrieved from the court on Tuesday, February 24, 2015

---

**Date Filed:** 02/19/2015
**Assigned To:** Judge Cathy Ann Bencivengo
**Referred To:** Magistrate Judge Ruben B. Brooks
**Nature of suit:** Other Statutory Actions (890)
**Cause:** Personal Injury
**Lead Docket:** None
**Other Docket:** None
**Jurisdiction:** Federal Question

**Class Code:** OPEN
**Closed:**
**Statute:** 28:1391
**Jury Demand:** Plaintiff
**Demand Amount:** $0
**NOS Description:** Other Statutory Actions

---

| Litigants | Attorneys |
|---|---|
| Jessica N. Bennett<br>individually and on behalf of all others similarly situated<br>Plaintiff | Natasha A Naraghi<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Law Offices of Alexander M. Schack<br>16870 West Bernardo Drive Suite 400<br>San Diego , CA  92127<br>USA<br>(858) 485-6535<br>Fax: (858) 485-0608<br>Email:Natashanaraghi@amslawoffice.Com |
| Lenovo (United States), Inc.<br>Defendant | |
| Superfish, Inc.<br>Defendant | |

| Date | # | Proceeding Text | Source |
|---|---|---|---|
| 02/19/2015 | 1 | COMPLAINT With Jury Demand Against Lenovo (United States), Inc., Superfish, Inc. (Filing fee $ 400 receipt number 0974-7823419.), filed by Jessica N. Bennett. (Attachments: # 1 Cover Sheet)The new case number is 3:15-cv-00368-CAB-RBB. Judge Cathy Ann Bencivengo and Magistrate Judge Ruben B. Brooks are assigned to the case. (Naraghi, Natasha)(acc) (jrd) (Entered: 02/20/2015) | |
| 02/20/2015 | 2 | Summons Issued. Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1. (acc)(jrd) (Entered: 02/20/2015) | |
| 02/23/2015 | 3 | SUMMONS Returned Executed by Jessica N. Bennett. Lenovo (United States), Inc. served. (Naraghi, Natasha) (cxl). (Entered: 02/23/2015) | |
| 02/23/2015 | 4 | SUMMONS Returned Executed by Jessica N. Bennett. Superfish, Inc. served. (Naraghi, Natasha) (cxl) (Entered: 02/23/2015) | |

---

Order documents from our nationwide document retrieval service.
- OR - Call **1.866.540.8818.**

Copyright © 2015 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

1  Alexander M. Schack, Esq., Bar No. 99126
2  Natasha A. Naraghi, Esq., Bar No. 284711
   LAW OFFICES OF ALEXANDER M. SCHACK
3  16870 West Bernardo Drive, Suite 400
4  San Diego, CA  92127
   Tel: (858) 485-6535 Fax: (858) 485-0608
5  alexschack@amslawoffice.com
6  natashanaraghi@amslawoffice.com

7  Geoffrey J. Spreter, Esq., Bar No 257707
8  SPRETER LEGAL SERVICES, APC
   601 3rd Street
9  Coronado, CA 92118
10 Telephone: 619-865-7986
   spreterlegalservices@gmail.com
11
12 E. Elliot Adler, Esq., Bar No. 229030
   ADLER LAW GROUP, APLC
13 402 W. Broadway, Suite 860
14 San Diego, CA 92101
   Tel:  (619) 531-8700 Fax:  (619) 342-9600
15 elliotadler@gmail.com
16
17 Attorneys for Plaintiff, individually and on behalf of all others similarly situated

18          UNITED STATES DISTRICT COURT

19     FOR THE DISTRICT OF SOUTHERN CALIFORNIA

20
21 | JESSICA N. BENNETT, | Case No. **'15CV0368 CAB RBB** |
22 | individually and on behalf of all others similarly situated, | |
   | | **CLASS ACTION** |
23 | Plaintiff, | |
   | | COMPLAINT FOR: |
24 | | 1)  VIOLATION OF CALIFORNIA |
25 | v. | PENAL CODE §§631 and 637.2 |
   | | 2)  VIOLATION OF FEDERAL |
26 | LENOVO (UNITED STATES), | WIRETAP ACT TITLE I OF THE |
   | INC., and SUPERFISH, INC., | ECPA (18 U.S.C. §2510, *et seq.*) |
27 | | 3)  TRESSPASS TO PERSONAL |
28

                      - 1 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Defendants.

PROPERTY/CHATTELS-
CALIFORNIA COMMON LAW
4)   VIOLATIONS OF
CALIFORNIA'S UNFAIR
COMPETITION LAW (Cal. Bus.
& Prof. Code §§17200, *et seq.)*

DEMAND FOR JURY TRIAL

Plaintiff, Jessica N. Bennett, individually, and on behalf of all persons similarly situated ("Class Members"), by and through her attorneys, for her complaint against Defendants Lenovo, Inc. and Superfish, Inc. ("Defendants"), states and alleges as follows:

## INTRODUCTION

1.      Defendants have unlawfully used and damaged Plaintiff's computer to make money for themselves, while willfully disregarding Plaintiff's rights to use and enjoy her personal property.

2.      Defendants sold new computers with harmful and offensive spyware and/or malware (hereinafter referred to singularly as "Spyware"). The Spyware tracked Plaintiff's Internet use, invaded her privacy, and damaged her computer. Relying on Spyware as the key to getting inside Plaintiff's computer and learning her Internet browsing habits, Defendants invaded Plaintiff's privacy and interfered with Plaintiff's right to use and enjoy her computer. Defendants' misconduct also

- 2 -

substantially diminished the value of her property.  The putative classes in this case have been violated and damaged in the same ways.

## PARTIES

3.     Plaintiff Jessica N. Bennett is a California citizen who resides in San Diego County, California.

4.     Defendant Lenovo (United States), Inc., ("Lenovo") is a Delaware Corporation with its headquarters and principal place of business in Morrisville, North Carolina.  Lenovo is the United States operating subsidiary of Lenovo Group Limited, a Hong Kong corporation with its principal place of business in Beijing, China.  Lenovo Group Limited is a multinational computer technology company, which, through its subsidiaries including Lenovo, designs, develops, manufacturers and sells personal computers, tablet computers, smartphones, workstations, servers, electronic storage devices and smart televisions.  Lenovo collected more than $38.7 billion in revenue for its most recent fiscal year; Lenovo's laptop business accounts for approximately half of Lenovo's overall revenue.

5.     Defendant Superfish, Inc. ("Superfish") is a Delaware Corporation with its principal place of business in Palo Alto, California.

6.     Plaintiff is informed and believes and based thereon alleges that at all relevant times each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, joint venturer, and/or other

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

representative of each of the remaining Defendants and was acting in such capacity in doing the things herein alleged.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act, 28 USC § 1332(d)(2), the amount in controversy exceeds $5 million, and the proposed class includes in excess of 100 members.

8.     This Court also has subject matter jurisdiction over the federal claims in this action pursuant to 28 USC § 1331.

9.     This Court also has subject matter jurisdiction over the state law claims in this action pursuant to 28 USC § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

10.     Additionally, Defendants purposefully avail themselves of the jurisdiction of this Court, through their promotion, marketing, and sale of their products in the State of California, and through significant and pervasive contacts with the State of California sufficient to render the exercise of jurisdiction by this Court in a manner that appropriately applies traditional notions of fair play and substantial justice.

- 4 -

11.   Venue is proper in this District under 28 U.S.C. § 1391 because Defendants conduct business in this District.   Furthermore, a substantial portion of the events giving rise to Plaintiff's claims arose here.

## FACTUAL BACKGROUND

12.   Plaintiff purchased a Lenovo Yoga 2 laptop for use in her business as a blog writer in late 2014. Plaintiff used the laptop to correspond with clients.

13.   Shortly after purchase, Plaintiff Bennett noticed pop ups on her computer. Plaintiff was writing a blog post for a client when she noticed spam advertisements involving scantily clad women appearing on her client's website. Plaintiff looked at a couple of other sites and did not see any advertisements, so she assumed the client's website was the problem. She sent an email to her client suggesting that their site had been hacked.

14.   A few hours later, Plaintiff was doing research for a different client when she saw the same block of advertisements intruding on a different, very well-known site. It was then that Plaintiff knew that her computer was infected with Spyware. Plaintiff became extremely distressed that her new laptop contained Spyware and thought that it may have been hacked.

15.   Plaintiff searched web forums for help on removing the malicious Spyware on her computer and learned that numerous other consumers were experiencing similar problems with the Superfish product on their recently purchased

- 5 -

Lenovo laptop.  It was only after further research did Plaintiff learn that the Lenovo laptops came preinstalled with the Superfish Spyware.

16.    One Lenovo user, for example, posted on the Lenovo message board ( http://forums.lenovo.com/t5/Yoga-Flex-Laptops-and/Pre-installed-Superfish-Visual-Discovery-on-Lenovo-Flex-2-15/td-p/1896989:

> "While setting up a Lenovo Flex 2-15 and uninstalling some of the unwanted software, I came across the Superfish Visual Discovery software.
>
> After doing some research into Superfish Visual Discovery, I consider this software to be quite invasive.  It sits between you and whatever sites you visit to monitor your sessions and extract information (it says photos) to serve you advertisements for similar products you may be looking for.  What's even more concerning is that it does this for HTTPS connections that the user would expect to be private between themselves and the server they *believe* they are securely connecting to.
>
> I "uninstalled" it via the "Programs and Features" in Windows 8.1, however I noticed that there are still remnants of the Superfish software left behind.
>
> - There are Superfish root certificates left behind.
> - There are Superfish registry entries left behind, some of them relating to SuperfishIEAddon.dll (which there appears to be no add-ons for Superfish in IE for me, but I would like to be sure), and other related registry entries.
> - Possibly other remnants of the software I have not seen?
>
> I have spoken on two separate occasions with Lenovo phone support, both times they insisted that this Superfish software was not installed by Lenovo and that it is malicious and should be removed, at which time they offered to charge me either a one-time fee of $120, or sell me a monthly software support subscription.  I insisted that this Superfish software came pre-installed from the factory, citing where it said "Install Date" in the "Programs and Features" (which was the same install date as the rest of the Lenovo software), as well as the registry entry where Superfish is listed under the "MFGApps" string value.  Also, I told them about the folder "Program Files\Lenovo\VisualDiscovery" (if I remember the path name correctly) which used to exist, but I was told this

- 6 -

was the virus trying to implant itself somewhere.

I find it surprising that the Lenovo software support reps were not aware that Lenovo included Superfish with their laptops.

I and most likely others would appreciate that Lenovo provide a removal tool to *COMPLETELY* remove this Superfish software (and any remnants that remain for those who have already uninstalled it, like myself) i.e. ALL of it's associated files, registry entries, ie add-ons, firefox extensions, chrome extensions, etc. , and provide any other direction as necessary."

17.    On February 19, 2015, Reuters published an article addressing Lenovo's installation of the Superfish Spyware on its computers (http://finance.Defendants. com /news /lenovo-stop-pre-installing-controversial-152140699.html).

18.    In the article, several security experts are quoted concerning the potential security threats that users of Lenovo computers incurred and will continue to incur:

"Robert Graham, CEO of U.S.-based security research firm Errata Security, said Superfish was malicious software that hijacks and throws open encrypted connections, paving the way for hackers to also commandeer these connections and eavesdrop, in what is known as a man-in-the-middle attack."

"Graham and other experts said Lenovo was negligent, and that computers could still be vulnerable even after uninstalling Superfish. The software throws open encryptions by giving itself authority to take over connections and declare them as trusted and secure, even when they are not."

"The way the Superfish functionality appears to work means that they must be intercepting traffic in order to insert the ads," said Eric Rand, a researcher at Brown Hat Security. "This amounts to a wiretap."

19.    In a blog post by Marc Rogers, a security expert with extensive knowledge of computer security features, Mr. Rogers discusses how the Superfish

- 7 -

compromises a consumers' personal information and security.

(http://marcrogers.org/2015/02/19/lenovo-installs-adware-on-customer-laptops-and-compromises-all-ssl/:)

"Superfish Features:

- Hijacks legitimate connections.
- Monitors user activity.
- Collects personal information and uploads it to its servers
- Injects advertising in legitimate pages.
- Displays popups with advertising software
- Uses man-in-the-middle attack techniques to crack open secure connections.
- Presents users with its own fake certificate instead of the legitimate site's certificate.

This presents a security nightmare for affected consumers.

1. Superfish replaces legitimate site certificates with its own in order to compromise the connections so it can inject its adverts. This means that anyone affected by this adware cannot trust any secure connections they make

2. Users will not be notified if the legitimate site's certificate has been tampered with, has expired or is bogus. In fact, they now have to rely on Superfish to perform that check for them. Which it does not appear to do.

3. Because Superfish uses the same certificate for every site it would be easy for another hostile actor to leverage this and further compromise the user's connections.

4. Superfish uses a deprecated SHA1 certificate. SHA1 has been replaced by SHA-256 because attacks against SHA1 are now feasible with ordinary computing hardware. This is insult on top of injury. Not only are they compromising people's SSL connections but they are doing it in the most cavalier, insecure way possible.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

5.   Even worse, they use crackable 1024-bit RSA!

6.   The user has to trust that this software which has compromised their secure connections is not tampering with the content, or stealing sensitive data such as usernames and passwords.

7.   If this software or any of its control infrastructure is compromised, an attacker would have complete and unrestricted access to affected customers banking sites, personal data and private messages."

20.   Mr. Rogers goes on to demonstrate how the Superfish Spyware creates fake security certificates for websites, which would compromise the security of the computer.

21.   Defendants' Spyware causes computers to slow down, takes up bandwidth over an Internet connection, uses up memory on a computer, causes the loss of data, compromises computer security features and frustrates computer users. Defendants' Spyware and popup advertisements decrease productivity by requiring that hours be spent figuring out how to get them off of a computer, closing advertising windows, and waiting for a slower machine to operate. Furthermore, computer users are forced to keep their computers running longer (due to the slowed performance) which utilizes more electricity, decreases the useful life of a computer, and causes increased Internet access charges. The cumulative impact of not only multiple ads, but also the threat of future ads and monitoring, impedes computer usage.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

22.     As detailed herein, Defendants' installation of Superfish on Plaintiff's computer and the interception of confidential information violated several federal and state laws concerning computer privacy.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action, individually and on behalf all others similarly situated pursuant to Federal Rule of Civil Procedure 23, and seeks certification for the following National Class and California Subclass (collectively, "Class")

National Class: All purchasers of a Lenovo computer in the United States who purchased a computer with the Superfish program preinstalled on it during the period January 1, 2012 to the present.

California Sub-Class: All purchasers of a Lenovo computer in the State of California who purchased a computer with the Superfish program preinstalled on it during the period January 1, 2012 to the present.

24.     Excluded from the proposed Class are Lenovo (United States), Inc., its parents, subsidiaries, affiliates and controlled persons, as well as the officers and directors (and their immediate family) of Lenovo (United States), Inc., its parents, subsidiaries, affiliates and controlled persons. Also excluded from the proposed Class are Superfish, Inc., its parents, subsidiaries, affiliates and controlled persons, as well as the officers and directors (and their immediate family) of Superfish, Inc., its

- 10 -

parents, subsidiaries, affiliates and controlled persons. Also excluded is any judicial officer assigned to this case.

25.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23:

Numerosity. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are in excess of one million members of the Class located throughout the United States. It would be impracticable to join the Class Members individually.

Existence and predominance of common questions of law. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the many questions of law and fact common to the Class are:

a)     Whether Defendants' conduct violates the California Invasion of Privacy Act.

b)     Whether Defendants' conduct violates the Electronic Communications Privacy Act.

c) Whether Plaintiff and the Class Members are entitled to statutory damages under the California Invasion of Privacy Act and the Electronic Communications Privacy Act.

d) Whether Defendants committed a trespass to chattels.

e) Whether Defendants' conduct violates California's Unfair Competition law.

Typicality. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been harmed by Defendants' unlawful activities alleged herein and are entitled to identical statutory damages.

Adequacy. Plaintiff will adequately represent the proposed Class Members. They have retained counsel competent and experienced in class actions to pursue this action vigorously. Plaintiff has no interests contrary to or in conflict with the interests of Class Members.

Superiority. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT ONE
## VIOLATION OF CALIFORNIA PENAL CODE §§ 631 and 637.2
## CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")
### (Against All Defendants)

26.    Plaintiff incorporates each and every allegation above as if fully set forth herein.

27.    California Penal Code § 631(a) makes it unlawful, by means of any machine, instrument or contrivance, to purposefully intercept the content of a communication over any "telegraph or telephone wire, line, cable or instrument," or to read or attempt to read or learn the content of any such communications without the consent of all parties to the communication.

28.    Plaintiff's internet searches and communications with websites and third parties are communications within the meaning of Section 631.

29.    Defendants intercepted the communications to and from Class Members using Spyware and servers that qualify as machines, instruments or contrivances as defined by the CIPA.

30.    Plaintiff and Class Members did not consent to Defendants' interception of their internet searches and private communications.

31.    Defendants are not a party to the communications with Plaintiff and Class Members.

32.    Defendants are "persons" within the meaning of the CIPA. Plaintiff and Class Members were and are injured by Defendants' unlawful interception of their internet searches and communications.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

33.     Defendants knowingly and willfully intercepted Plaintiff's and Class Members' internet communications while they were "in transit."

34.     Defendants' conduct in violation of the CIPA occurred in the State of California because those acts resulted from business decisions, practices and operating policies that Defendants developed, implemented and/or utilized in California which are unlawful and constitute criminal conduct in Defendant Superfish's state of residence and principal place of business. Defendants also profited from their conduct in the State of California.

35.     As a result of Defendants' violations of Section 631, Plaintiff and Class Members are entitled to relief under Section 637.2, including:

(i)     Appropriate declaratory relief;

(ii)    Statutory damages of $5,000 per class member; and

(iii)   Reasonable attorneys' fees.

**COUNT TWO**
**VIOLATION OF THE FEDERAL WIRETAP ACT**
**TITLE I OF THE ECPA (18 U.S.C. § 2510 *et seq.*)**
**(Against All Defendants)**

36.     Plaintiff incorporates each and every allegation above as if fully set forth herein.

37.     The ECPA provides a private right of action against one who "intentionally intercepts, endeavors to intercept, or procures any other person to

- 14 -

intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C.A. § 2511 and 2520.

38.    Defendants intentionally and without consent intercepted Plaintiff's and Class Members' communications with Internet sites and search engines for tortious purposes, specifically to spy on their private Internet browsing use and to trespass on their computer. At this time, Defendants intentionally accessed the Spyware that it had placed on these computers. Defendants also intentionally used its Spyware to intercept communications by Plaintiff and Class Members to Internet sites.

39.    Defendants further disclosed to others the content of electronic communications knowing that the communications were unlawfully obtained.

40.    Defendants collected Plaintiff's personal information and the personal information of Class Members without consent or compensation, and to misappropriate personality, thereby obtaining detailed, free market research and consumer analysis rather than paying for it.

41.    Pursuant to 18 U.S.C. § 2520(a), Plaintiff and Class Members are entitled to:

    (i)    statutory damages of $100 per day per violation per class member, up to $10,000 per class member;

    (ii)    costs; and

    (iii)    reasonable attorneys' fees.

- 15 -

## COUNT THREE
## TRESSPASS TO PERSONAL PROPERTY/CHATTELS-CALIFORNIA COMMON LAW
### (Against All Defendants)

42.     At all times relevant hereto, Plaintiff and Class Members were the owners of computers on which Defendants installed and operated malicious Spyware.

43.     At all relevant times, Defendants and/or their agents intentionally and without consent, used Plaintiff's computer and the computers of the Class Members, gained access to their computers, monitored their Internet usage, sent advertisements to these infected computers, accessed various components and systems within these computers, obtained access to information about Plaintiff and Class Members and their computers, took up space on these computers, and/or dispossessed Plaintiff and Class Members of access to their computers.

44.     The installation and operation of the spyware on Plaintiff's and Class Members' computers impairs the condition and the value of Plaintiff and Class Members' computers

45.     In doing so, Defendants intentionally intermeddled with, damaged, and deprived Plaintiff and Class Members of their computers' full use and benefits.

46.     As a proximate result of Defendants' installation and operation of the Spyware on computers of Plaintiff and Class Members, Plaintiff and the Class Members suffered harm.

- 16 -

**COUNT FOUR**
**Violations Of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code §§ 17200 et seq.)**
**(Against All Defendants)**
**(Brought On Behalf Of The California Subclass)**

47.     Plaintiff adopts and incorporates each and every allegation of this complaint as if stated fully herein.

48.     The California Business and Professions Code § 17200 et seq., the Unfair Competition Law ("UCL") defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.  Unlawful, unfair, or fraudulent business acts are those which are in violation of federal, state, county, or municipal statutes, as well as regulations.  The UCL provides for injunctive relief and restitution for violations.  Cal. Bus. & Prof. Code § 17203.

49.     Defendants' conduct as alleged herein constitutes unlawful, unfair, and fraudulent business acts and practices. As a proximate result of Defendants' unlawful installation and operation of the spyware on the computers of Plaintiff and the Class Members, Plaintiff and Class Members suffered harm and lost money and/or property.

50.     By engaging in the above described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of the UCL.

51.     Defendants' business practices and acts are "fraudulent" because they are likely to deceive, and did deceive Plaintiff and members of the consuming public.

- 17 -

Specifically, Defendants intentionally and misleadingly sold new computers with preinstalled Spyware.

52.    Defendants' conduct as alleged herein constitutes unfair and unlawful business acts or practices as proscribed by Section 17200, et seq., of the California Business & Professions Code ("UCL").

53.    Defendants' conduct – the installation and operation of Spyware on Plaintiff's and Class Members' computers and/or the unauthorized access of Plaintiff's and Class Members' computers resulting in damages and loss to Plaintiff and Class Members – constitutes "unlawful" business acts or practices by virtue of Defendants' violation of the 18 U.S.C.A. 2511, California Business and Professions Code Sections 22947.2, 22947.3, 22947.4, and California Penal Code §502.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

(a)    That the Court enter an order certifying the class, appointing Plaintiff as representative of the class, and appointing Plaintiff's counsel as class counsel;

(b)    That the Court enter judgment against Defendants for the causes of action alleged against it;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

(c)    That Plaintiff be awarded statutory damages as provided by California and federal law, plus interest, as well as litigation costs reasonably incurred and attorneys' fees;

(d)    That the Court order the disgorgement of all revenues unjustly earned by Defendants for selling new computers with preinstalled Spyware;

## JURY DEMAND

Plaintiff, individually and for the Class she seeks to represent, demand trial by jury on each and every triable issue.

Date: February 19, 2015          Respectfully submitted,

/s/ Natasha A. Naraghi
Natasha A. Naraghi, Esq.
LAW OFFICES OF ALEXANDER M. SCHACK
16870 W. Bernardo Drive, #400
San Diego, CA 92128
(858) 485-6535  (858) 485-0608 fax
natashanaraghi@amslawoffice.com

/s/ Geoffrey J. Spreter
Geoffrey J. Spreter, Esq.
SPRETER LEGAL SERVICES, APC
601 3rd Street
Coronado, CA 92118
Telephone: 619-865-7986
spreterlegalservices@gmail.com

- 19 -

# US District Court Civil Docket

## U.S. District – California Northern
## (San Jose)

## 5:15cv807

# Sterling International Consulting Group v. Lenovo (United States) Inc. et al

This case was retrieved from the court on Tuesday, February 24, 2015

---

**Date Filed: 02/23/2015**
**Assigned To:** Honorable Ronald M. Whyte
**Referred To:** Magistrate Judge Paul Singh Grewal
**Nature of suit:** Other Statutory Actions (890)
**Cause:** Fed. Question
**Lead Docket:** None
**Other Docket:** None
**Jurisdiction:** Federal Question

**Class Code: OPEN**
**Closed:**
**Statute:** 28:1331
**Jury Demand:** Plaintiff
**Demand Amount:** $0
**NOS Description:** Other Statutory Actions

---

| Litigants | Attorneys |
|---|---|
| Sterling International Consulting Group<br>Plaintiff | Elizabeth Cheryl Pritzker<br>ATTORNEY TO BE NOTICED<br>Pritzker Levine LLP<br>180 Grand Avenue Suite 1390<br>Oakland , CA  94612<br>USA<br>415-692-0772<br>Fax: 415-366-6110<br>Email:Ecp@pritzkerlevine.Com |

Lenovo (United States) Inc.
Defendant

Lenovo Group Limited
Defendant

Superfish, Inc.
Defendant

---

| Date | # | Proceeding Text | Source |
|---|---|---|---|
| 02/23/2015 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400, receipt number 0971-9308163.). Filed bySterling International Consulting Group. (Attachments: # 1 Civil Cover Sheet)(Pritzker, Elizabeth) (Filed on 2/23/2015) (Entered: 02/23/2015) | |
| 02/23/2015 | 2 | Proposed Summons. (Pritzker, Elizabeth) (Filed on 2/23/2015) (Entered: 02/23/2015) | |
| 02/23/2015 | 3 | Case assigned to Magistrate Judge Paul Singh Grewal. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit E-Filing A New Civil Case at http://cand.uscourts.gov/ecf/caseopening.Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. (sv, COURT STAFF) (Filed on 2/23/2015) (Entered: 02/23/2015) | |
| 02/23/2015 | 7 | Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 6/2/2015. Case Management Conference set for 6/9/2015 10:00 AM in Courtroom 5, 4th Floor, San Jose. (cv, COURT STAFF) (Filed on 2/23/2015) (Entered: 02/24/2015) | |

| 02/24/2015 | 4 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Sterling International Consulting Group.. (Pritzker, Elizabeth) (Filed on 2/24/2015) (Entered: 02/24/2015) |
|---|---|---|
| 02/24/2015 | 5 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned. ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED. This is a text only docket entry; there is no document associated with this notice. (ofr, COURT STAFF) (Filed on 2/24/2015) (Entered: 02/24/2015) |
| 02/24/2015 | 6 | ORDER REASSIGNING CASE. Case reassigned to Hon. Ronald M. Whyte for all further proceedings. Magistrate Judge Paul Singh Grewal remains as the referral judge assigned to the case. Reassignment Order signed by Executive Committee on 2/24/2015. (bwS, COURT STAFF) (Filed on 2/24/2015) (Entered: 02/24/2015) |
| 02/24/2015 | 8 | Summons Issued as to Superfish, Inc.. (cv, COURT STAFF) (Filed on 2/24/2015) (Entered: 02/24/2015) |
| 02/24/2015 | 9 | Summons Issued as to Lenovo Group Limited. (cv, COURT STAFF) (Filed on 2/24/2015) (Entered: 02/24/2015) |
| 02/24/2015 | 10 | Summons Issued as to Lenovo (United States) Inc.. (cv, COURT STAFF) (Filed on 2/24/2015) (Entered: 02/24/2015) |

Order documents from our nationwide document retrieval service.
- OR - Call **1.866.540.8818.**

Copyright © 2015 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

JONATHAN K. LEVINE (SBN: 220289)
ELIZABETH C. PRITZKER (SBN: 146267)
SHIHO YAMAMOTO (SBN: 264741)
**PRITZKER LEVINE LLP**
180 Grand Avenue, Suite 1390
Oakland, California 94612
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
Email: jkl@pritzkerlevine.com;
      ecp@pritzkerlevine.com;
      sy@pritzkerlevine.com

JOHN A. KEHOE
**PRITZKER LEVINE LLP**
41 Madison Avenue, 31st Floor
New York, New York 10010
Telephone: (917) 525-2190
Facsimile: (917) 525-2184
Email: jak@pritzkerlevine.com

Attorneys for Plaintiff Sterling International Consulting Group

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STERLING INTERNATIONAL CONSULTING GROUP, on behalf of itself and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>LENOVO (UNITED STATES) INC., LENOVO GROUP LIMITED, and SUPERFISH INC.,<br><br>          Defendants. | Case No:<br><br>**<u>CLASS ACTION</u>**<br><br>COMPLAINT FOR:<br>1) VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030, *et seq.*);<br>2) VIOLATION OF FEDERAL WIRETAP ACT (18 U.S.C. § 2510, *et seq.*);<br>3) VIOLATION OF THE STORED COMMUNICATIONS ACT (18 U.S.C. § 2701, *et seq.*);<br>4) VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT, PENAL CODE §§ 631, 637.2;<br>5) VIOLATION OF CALIFORNIA BUS. & PROF. CODE § 17200, *et seq.*;<br>6) TRESPASS TO CHATTELS;<br>7) COMMON LAW FRAUD; and<br>8) NEGLIGENT MISREPRESENTATION<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Sterling International Consulting Group ("Plaintiff"), by and through its undersigned attorneys, hereby complains against defendants Lenovo (United States) Inc. and Lenovo Group Limited (collectively, "Lenovo") and Superfish Inc. (collectively, "Defendants"), on behalf of itself and all others similarly situated, as follows. Plaintiff's allegations are based upon information and belief, except as to its own actions, which are based on knowledge. Plaintiff's information and belief is based on the investigation of its undersigned counsel, and the facts that are a matter of public record, as follows:

## NATURE OF THE CASE

1.     Lenovo is a $39 billion global Fortune 500 company and the world's largest seller of Windows-based personal computers, with a 20 percent market share. In the fourth quarter of 2014 (September through December 2014), Lenovo sold 16 million personal computers.

2.     In August or September 2014, Lenovo began preinstalling a software program called Superfish Visual Discovery on at least 43 different Windows-based Lenovo notebook computer models sold to consumers. Notably, Lenovo did not preinstall the Superfish program on any of its computer models that were marketed to businesses or more sophisticated computer users. The Superfish program was developed, sold and maintained by defendant Superfish Inc., a non-public software company headquartered in Palo Alto, California.

3.     The Superfish program is spyware that allowed Lenovo and Superfish Inc. to access and then inject advertising into otherwise secure HTTPS pages that a consumer using one of the affected Lenovo notebook computers was viewing on the internet. The Superfish program does this by performing what is known as a "man-in-the-middle attack" that essentially hijacks the consumer's viewing session by breaking Windows' encrypted web connections, bypassing the secure root certificates in the computer's root store or root directory, and replacing them with a single common self-signed Superfish root certificate. All of this occurs without the user's knowledge.

4.     Lenovo never disclosed that it was preinstalling the Superfish program

on millions of notebook computers it was selling to consumers. Rather, the Superfish program was buried deep within the operating system at a root level that would generally avoid disclosure, operate without the knowledge of the computer user, and not be identified as spyware, malware or adware by any of the common computer security programs sold or provided for free with new personal computers by Microsoft, McAfee or Symantec.

5.     Lenovo never disclosed the Superfish program and took affirmative steps to conceal it from consumers because the program is generally considered to be spyware, adware or malware and, aside from the fact that it allows companies to spy on user's every move online, the program also creates serious security issues for any consumer accessing the internet with a Lenovo notebook computer on which the Superfish program has been installed. By using a single self-signed root certificate on all of the affected Lenovo notebook computers, the Superfish program intentionally creates a large hole in each computer's browser security that would easily allow Lenovo and Superfish or anyone on the same wireless network (such as an airport or café) to hijack that browser and silently collect any bank credentials, confidential communications, passwords and any other information of value that might be there.

6.     Additionally, the large security hole created by the Superfish program can easily be breached, because the security key for the single self-signed root certificate used by the Superfish program has been broken and published on the internet. It took one computer security researcher less than 15 seconds on-line to obtain the security key for the Superfish root certificate. The Electronic Frontier Foundation and other computer security companies have reported that the security problems associated with the Superfish program infect not only consumers using the Internet Explorer web browser on their Lenovo notebook computers, but also Google Chrome, Firefox, Opera and Safari for Windows.

7.     Lenovo now admits that the Superfish program creates a "high" security risk for any notebook computer on which it was preinstalled and the U.S. Department of

Homeland Security has taken the extraordinary step of issuing an alert advising consumers with an affected Lenovo notebook computer to remove the program immediately because it makes the computer vulnerable to cyberattacks, even if it is running anti-virus and firewall protection programs. As one computer expert noted last week after the full story was revealed, it's "quite possibly the single worst thing I have seen a manufacturer do to its customer base . . . I cannot overstate how evil this is." Another commentator stated that "[w]hen Lenovo preinstalled Superfish adware on its laptops, it betrayed its customers and sold out their security."

8.      Lenovo has since acknowledged that because of consumer complaints, in January 2015 it stopped preinstalling the Superfish program on newly manufactured notebook computers and shut down the server connections with Superfish Inc that enabled the program to operate. But Lenovo did not disclosed this information to the consumers who already had purchased any of the affected Lenovo notebook computers and is reported to have continued to ship already manufactured Lenovo notebook computers through early February with the program still installed.

9.      In fact, when Lenovo did speak about the program on its user forums, it continued to claim that it was beneficial to consumers and did not warn them of the high security risk. For example, on January 23, 2015, a Lenovo administrator responded on a Lenovo users forum to consumer complaints about the program as follows: "Superfish comes with Lenovo consumer products only and is a technology that helps users find and discovery products visually. The technology instantly analyzes images on the web and presents identical and similar product offers that may have lower prices, helping users search for images without knowing exactly what an item is called or how to describe it in a typical text-based search engine."

10.     The truth finally came out on February 20, 2015, when a Google programmer purchased a Lenovo notebook computer with the Superfish program installed and then wrote about his experience, which quickly went viral. Lenovo at first downplayed the scope of the problem. It claimed that the Superfish program was only

installed on some consumer notebook computers shipped in a short window between October and December 2014. But, it has subsequently admitted that the Superfish program actually was installed on at least 43 different notebook computer models shipped from September 2014 through February 2015, including some of Lenovo's most popular notebook computer models.

11. Lenovo now claims that the Superfish program has only recently been disabled and poses no threat to consumers who have it installed on their Lenovo notebook computers. But, even if the Superfish program is disabled, or even uninstalled, this does not by itself remove the self-signed root certificate that creates the high security issues that are so problematic. And Lenovo executives continue to assert that the security issues that have been raised are only "theoretical concerns."

12. Even though many computer security experts are recommending that any Lenovo notebook computer that has the Superfish program preinstalled be completely wiped clean and that a new Windows operating system be installed, all that Lenovo has done to date is to post on its website lengthy instructions on how a consumer can uninstall the program and the root certificate, and a program that will do that for the consumer.

13. And, while Lenovo's Chief Technology Officer, Peter Hortensius, has now admitted that "we messed up badly" and that "we just flat-out missed it on this one, and did not appreciate the problem it was going to create," Lenovo has not: (a) attempted to affirmatively notify all consumers who own the affected notebook computers that their computers are not secure; (b) offered to provide any reimbursement or compensation for any damages the Superfish program may have caused; (c) offered to provide technical assistance to consumers who may not have the skill to remove the Superfish program and certificate from their computer; (d) offered any type of credit monitoring to consumers whose personal information may have been compromised; (e) offered to assist consumers who may want their computer wiped clean and have a new operating system installed; or (f) offered any refunds to any consumers who no longer feel safe using their Lenovo

1 notebook computers.

2       14.     Superfish Inc., for its part, continues to claim that the Superfish program

3 does not present any security risks, and that any problems with the single self-signed root

4 certificate used by its program are the fault of a third-party developer that created the

5 certificate for Superfish.

6 **JURISDICTION AND VENUE**

7       15.     This Court has jurisdiction over this matter pursuant to 18 U.S.C. §

8 1030(g) and 28 U.S.C. §§ 1331.

9       16.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c). A

10 substantial portion of the events and conduct giving rise to the violations of law occurred

11 in this District, defendant Superfish Inc. is headquartered in this District, and Lenovo

12 conducts business with and sold affected Lenovo notebook computers directly to

13 consumers in this District.

14 **PARTIES**

15      17.     Plaintiff Sterling International Consulting Group purchased a new Lenovo

16 notebook computer on which the Superfish program was preinstalled. Plaintiff is a

17 Delaware corporation with its principal place of business in Statesville, North Carolina.

18      18.     Defendant Lenovo (United States) Inc. is a Delaware corporation with its

19 principal place of business located in Morrisville, North Carolina. Lenovo (United States)

20 Inc. is a wholly-owned subsidiary of defendant Lenovo Group Limited.

21      19.     Defendant Lenovo Group Limited is a Hong Kong corporation with its

22 principal place of business located in Beijing, China. Lenovo Group Limited is the

23 parent of defendant Lenovo (United States) Inc.

24      20.     Defendant Superfish Inc. is a Delaware corporation with its principal place

25 of business in Palo Alto, California.

26 //

27 //

28 //

**FACTUAL ALLEGATIONS**

21.     Lenovo was founded in Beijing, China in 1984 and grew to become China's leading personal computer company. Lenovo's business went global in 2005 when it acquired IBM Corporation's personal computer business. As a result of that acquisition, Lenovo became the world's third largest personal computer company. Since then, it has risen to become the world's largest personal computer company.

22.     Lenovo publicly touts the "Lenovo Way," which it claims means "We Do What We Say. We Own What We Do." Lenovo claims that it "builds the world's leading technology" into all of its products and that it is "committed to ensuring that our products are safe." Lenovo also represents that it's "products comply with the laws and regulations into each country we ship. Lenovo products are designed, tested and approved to meet worldwide standards for Product Safety, Electromagnetic Compatibility, Ergonomics and other regulatory compulsory requirements, when used for their intended purpose."

23.     Superfish Inc. was founded in 2006 by its CEO, Adi Pinhas, who has a long history working in industrial and military surveillance in the United States and Israel. The company, based in Palo Alto, California, is not public and has been financed to date by five venture capital firms, including two firms based in Palo Alto and three based in Israel. It had $38 million in revenue in 2014. Superfish calls itself a visual search company.

24.     According to David Auerbach, a technology writer and software engineer, Superfish "has a long history of disseminating adware, spyware, malware, and crapware." Computer security researcher Robert Graham, who was able to obtain and break the security of the Superfish root certificate in only a few minutes, is even more critical of the company:

> The company claims it's providing a useful service, helping users do price comparisons. This is false. It's really adware. They don't even offer the software for download from their own website. It's hard Googling for the software if you want a copy because your search results will be filled with

help on removing it.  The majority of companies that track adware label this as adware.

Their business comes from earning money from those ads, and it pays companies (like Lenovo) to bundle the software against a user's will. They rely upon the fact that unsophisticated users don't know how to get rid of it, and will therefore endure the ads.

25.     In approximately August or September 2014 or earlier, Lenovo began preinstalling the Superfish Visual Discovery software program on at least 43 different Windows-based Lenovo notebook computer models.  All 43 models (listed below) were marketed and sold primarily to consumers.  Lenovo did not preinstall the Superfish program on any of its computer models that were marketed and sold primarily to businesses or more sophisticated computer users.

26.     The Lenovo notebook computer models on which the Superfish program was installed include the following:

| | |
|---|---|
| G Series: | G410, G510, G710, G40-70, G50-70, G40-30, G50-30, G40-45, G50-45 |
| U Series: | U330P, U430P, U330Touch, U430Touch, U530Touch |
| Y Series: | Y430P, Y40-70, Y50-70 |
| Z Series: | Z40-75, Z50-75, Z40-70, Z50-70 |
| S Series: | S310, S410, S40-70, S415, S415Touch, S20-30, S20-30Touch |
| Flex Series: | Flex2 14D, Flex2 15D, Flex2 14, Flex2 15, Flex2 14(BTM), Flex2 15(BTM), Flex 10 |
| MIIX Series: | MIIX2-8, MIIX2-10, MIIX2-11 |
| YOGA Series: | YOGA2Pro-13, YOGA2-13, YOGA2-11BTM, YOGA2-11HSW |
| E Series: | E10-20 |

27.     The  purpose  of  the  Superfish  Visual  Discovery  program  was  to  allow

Lenovo and Superfish to access and then inject advertising into otherwise secure HTTPS pages on the internet that a consumer using one of the affected Lenovo notebook computers was viewing. Put more simply, without any disclosure to the user, the Superfish program altered the user's internet search results to display different ads than the user would otherwise see. According to the New York Times, the program "could track customers' every online move, intercept secure web sessions and render their computers vulnerable to hackers."

28.     Any web browser that uses HTTPS correctly needs a way to verify the certificates that link sites' domain names to the cryptographic public keys they use. This is accomplished by having a list of the root certificate authorities maintained in the operating system in a root store or root directory that can sign certificates that the browser will trust. The Superfish program breaks this secure encryption method by bypassing the legitimate and secure root certificates and replacing them with Superfish's version. This is known as a "man-in-the-middle attack" and it is not visible to the computer user.

29.     Neither Lenovo nor Superfish ever disclosed that Lenovo was preinstalling the Superfish program on millions of notebook computers it was selling to consumers. In fact, the Superfish program was buried deep within the operating system at a level that would generally avoid disclosure, operate without the knowledge of the computer user, and not be identified as spyware, malware or adware by any of the common computer security programs sold or provided for free with new personal computers. As CNET magazine noted in a recent critical article about Lenovo and the Superfish program, "[a]nother reason why Superfish is unusually dangerous is that it's not an app like Adobe Photoshop or Microsoft Word, but rather code hidden from everyday users."

30.     As the New York Times reported:  "The company [Lenovo] buried its software in the lowest level of a PC's operating system, precisely where customers and antivirus products would never detect it, and had been siphoning data back to servers belonging to Superfish, an Israeli software company with headquarters in Silicon Valley

that markets itself as a visual search company."

31.     Lenovo never disclosed the Superfish program and took affirmative steps to hide it from consumers because the program is generally considered to be spyware, adware or malware and it creates serious security issues for any consumer accessing the internet with a Lenovo notebook computer on which the Superfish program has been installed.  It is no coincidence that Lenovo only preinstalled the program on computer models being marketed and sold to consumers and not on its models that were directly marketed and sold to business and professionals.

32.     By using a single self-signed root certificate on all of the affected Lenovo notebook computers, the Superfish program intentionally creates a hole in each computer's browser security that would easily allow Lenovo and Superfish, or anyone on the same wireless network, to hijack that browser and, without the knowledge of the user, collect whatever information is being transmitted, including personal financial information such as credit card numbers or bank credentials, passwords, or any confidential personal or business information.

33.     The security hole created by the Superfish program can easily be breached because the security key for the Superfish root certificate has been repeatedly broken and is now widely available on the internet.  Computer security companies have reported that the security problems associated with the Superfish program potentially impact consumers using all of the major web browsers, including Internet Explorer, Google Chrome, Firefox, Opera and Safari for Windows.

34.     Lenovo now acknowledges that the Superfish program creates a "high" security risk for any notebook computer on which it was preinstalled.  And the U.S. Department of Homeland Security has issued an alert advising consumers with an affected Lenovo notebook computer to remove the program immediately because it makes the computer vulnerable to cyberattacks, even if it is running anti-virus and firewall protection programs.

35.     Noted computer security researcher Marc Rogers wrote that it's "quite

possibly the single worst thing I have seen a manufacturer do to its customer base . . . I cannot overstate how evil this is." Another commentator stated that "[w]hen Lenovo preinstalled Superfish adware on its laptops, it betrayed its customers and sold out their security." And the Electronic Frontier Foundation, writing about the actions of Lenovo and Superfish, stated that "[u]sing a MITM [man-in-the-middle] certificate to inject ads was an amateurish design choice by Superfish. Lenovo's decision to ship this software was catastrophically irresponsible and an utter abuse of the trust their customers placed in them." The New York Times is equally critical of Lenovo and Superfish: "What makes the latest discovery so disconcerting is that if a government or company can plant spyware in the lowest level of a machine, it can steal your passwords, serve up any web page, steal your encryption keys and control your entire digital experience, undetected."

36.     Lenovo has since acknowledged that at some point in January 2015, customer complaints caused it to stop preinstalling the Superfish program on newly manufactured notebook computers and to shut down the server connections with Superfish that enabled the program to operate. However, Lenovo made no effort to inform consumers who already had purchased any of the affected Lenovo notebook computers and the company is reported to have continued to ship already manufactured notebook computers through early February with the program still installed, even if it was no longer operational.

37.     In fact, at the same time that Lenovo internally had decided to shut down the program because of customer complaints, it publicly still was claiming that the Superfish program was beneficial to consumers. For example, on January 23, 2015, a Lenovo administrator responded on a Lenovo users forum to consumer complaints about the program as follows: "Superfish comes with Lenovo consumer products only and is a technology that helps users find and discover products visually. The technology instantly analyzes images on the web and presents identical and similar product offers that may have lower prices, helping users search for images without knowing exactly what an item is called or how to describe it in a typical text-based search engine."

38.     On February 20, 2015, Lenovo's surreptitious installation and use of the Superfish program became national news after a Google programmer purchased a Lenovo notebook computer with the Superfish program installed and then went public with his experience. At first, Lenovo downplayed the scope of the problem, claiming that the Superfish program was installed only on some consumer notebook computers shipped in a short window between October and December 2014.   But when Lenovo was confronted with customer complaints going back as far as September 2014, it subsequently admitted that the Superfish program actually was installed on at least 43 different notebook computer models shipped at least from September 2014 through February 2015.   The 43 models including some of Lenovo's most popular notebook computers.

39.     Lenovo has now taken the position that the security issues caused by the Superfish program are only "theoretical concerns" and that, because the program has been disabled, it poses no threat to consumers who have it installed on their Lenovo notebook computers. But, even if the Superfish program is disabled, or even uninstalled, this does not by itself remove the self-signed root certificate that creates the high security issues that are so problematic.

40.     Many computer security experts who have looked at the Superfish program and its security issues are recommending that any Lenovo notebook computer that has the program preinstalled be completely wiped clean and that a new Windows operating system be installed.   But, all that Lenovo has done to date is to post on its website lengthy instructions on how a consumer can uninstall the program and the root certificate, and a program that will do that for the consumer.   Superfish has done nothing other than to continue to claim that its software is somehow beneficial to consumers and to blame a third party developer it hired for any security issues arising from the root certificate used by the Superfish program.

41.     Faced with mounting industry reports and criticism on how the Superfish program compromises basic computer security, Peter Hortensius, Lenovo's Chief

Technology Officer, only recently has publicly acknowledged that "we messed up badly" and that "we just flat-out missed it on this one, and did not appreciate the problem it was going to create."

42.     While Lenovo now admits that the Superfish program creates a severe security risk for its customers who purchased notebook computers with the program preinstalled, Lenovo has not attempted to directly notify those customers to inform them that their computers are not secure, has not offered to provide any reimbursement or compensation for any damages the Superfish program may have caused, has not offered to provide technical assistance to consumers who may not have the skill to remove the Superfish program and certificate from their computer, has not offered any type of credit monitoring or other protection to consumers whose personal or financial information may have been compromised, has not offered to assist consumers who may want their computer hard drive erased and a new operating system installed, has not pulled affected computers from store shelves, and has not offered any refunds to any consumers who no longer feel safe using their Lenovo notebook computers.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of itself and the following Class:

> All natural persons or entities in the United States who purchased or otherwise acquired a Lenovo notebook computer on which the Superfish Visual Discovery software program was preinstalled.

Excluded from the Class set forth above are defendants and their employees, officers and directors, and the judge assigned to this action.

44.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time prior to discovery, plaintiff believes that there hundreds of thousands of Class members.

45.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and other Class members sustained damages and injury arising out of

defendants' common course of conduct in violation of law as complained herein. The injuries and damages of each member of the Class were directly caused by defendants' wrongful conduct as alleged herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in complex class action litigation.

47.     Common questions of law and fact exist as to all members of the Class, and these common questions predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are whether:

a.     Defendants failed to disclose, inadequately disclosed, and/or concealed the pre-installation of the Superfish Visual Discovery program on certain Lenovo notebook computers;

b.     Defendants had a duty to disclose (a) above;

c.     Defendants violated the Computer Fraud and Abuse Act, as alleged;

d.     Defendants violated the Federal Wiretap Act, as alleged;

e.     Defendants violated the Stored Communications Act, as alleged;

f.     Defendants violated the California Invasion of Privacy Act, as alleged;

g.     Defendants engaged in unfair competition violating Section 17200 of the California Business and Professions Code, as alleged;

h.     Defendants violated the common law for trespass to chattels, as alleged;

i. Defendants committed the common law tort of fraud, as alleged;

j. Defendants committed the common law tort of negligent misrepresentation, as alleged; and

k. Plaintiff and other members of the Class are entitled to statutory and compensatory damages, restitution, declaratory and injunctive relief, reasonable attorneys' fees and costs.

48. Defendants have acted in a manner applicable to the Class, thereby making final injunctive relief appropriate for the Class as a whole.

49. Plaintiff's claims are typical of those of members of the Class because plaintiff purchased a Lenovo notebook computer on which the Superfish Visual Discovery program was preinstalled.

50. Plaintiff is an adequate representative of the Class and will protect the claims and interests of the Class. Plaintiff does not have interests that conflict with those of the Class. Plaintiff will vigorously prosecute the claims alleged herein and has retained competent counsel with complex class action litigation experience.

51. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

52. The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high

degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The amount at stake for each Class member is not great enough individually to enable Class members to maintain separate suits against defendants. Plaintiff does not anticipate any difficulty in the management of this action as a class action.

## . COUNT ONE

**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.***

53.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim for relief against all defendants.

54.     This claim is brought under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (the "Act"). By virtue of defendants' conduct set forth above, defendants violated Section 1030(a)(5) of the Act, which specifically applies to anyone who:

    a.   Knowingly causes the transmission of a software program, information, code or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

    b.   Intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

    c.   Intentionally accesses a protected computer without authorization, and a result of such conduct, cases damage.

55.     Defendants knowingly caused the installation and operation of the Superfish Visual Discovery program on millions of Lenovo notebook computers sold to consumers in the United States. During both the installation and operation of the Superfish Visual Discovery program, defendants intentionally accessed Class members' computers without authorization and thereby caused damage within the meaning of the Act.

56.     During the installation process and operation of the Superfish Visual Discovery program, defendants accessed, installed, and reconfigured essential operating

components of users' operating systems. Defendants' installation and use of malicious software code on plaintiff's and Class members' Lenovo notebook computers was unauthorized.

57.     Defendants are liable under the Act, because their actions *either*: (1) intentionally caused damage, (Section 1030(a)(5)(i)); (2) recklessly caused damage (Section 1030(a)(5)(ii)); or (3) simply caused damage (Section 1030(a)(5)(iii)).   Under the Act, "damage" is defined to include "any impairment to the integrity of availability of data, a program, a system, or information," that causes "loss to 1 or more persons during any 1-year period . . . aggregating at least $5000 in value . . . ." 18 U.S.C. §§ 1030(e)(8), 1030(a)(5)(B)(i).

58.     As described above, defendants failed to disclose that the Superfish Visual Discovery program makes sweeping, dangerous changes to the operating system.  As a result of these changes, plaintiff and Class members will have to spend time and labor repairing their Lenovo notebook computers.    Additionally, the Superfish Visual Discovery program has consumed the resources and hindered the performance of plaintiff's and Class members' Lenovo notebook computers.   Plaintiff and Class members have also lost personal and business opportunities, data and information and goodwill.  The harm caused by the installation and operation of the Superfish Visual Discovery program on millions of Lenovo notebook computers will produce aggregate damages far exceeding $5,000.

59.     Plaintiff's and Class members' computers are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2)(B).   By accessing the internet, these computers are used in interstate commerce and communication.

60.     As a direct result of the installation of the Superfish Visual Discovery program and intentional access by defendants to plaintiff's and Class members' computers, defendants caused damage to plaintiff's and Class members' computers.

61.     Plaintiff and Class members suffered damages as defined in 18 U.S.C. § 1030(e). As a direct result of defendants' conduct, plaintiff's and Class members'

computers have suffered an impairment to the integrity or availability of data software programs including the operating system. Such impairment has caused and will cause losses aggregating to at least $5,000 in value in any one-year period to plaintiff and Class members.

62.    Because of defendants' violation of the Computer Fraud and Abuse Act and pursuant to 18 U.S.C. § 1030(g), plaintiff seeks recovery of compensatory damages and injunctive relief on behalf of itself and Class members.

## COUNT TWO

### Violation of the Federal Wiretap Act, Title 1 of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*

63.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim for relief against all defendants.

64.    The Federal Wiretap Act provides a private right of action against anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. §§ 2511 and 2520.

65.    Defendants intentionally and without the consent of plaintiff and Class members intercepted communications with internet sites and search engines for tortious purposes.

66.    Defendants also disclosed to others the content of electronic communications knowing that those communications were unlawfully obtained.

67.    Defendants collected plaintiff's and Class members' personal information without consent or compensation.

68.    Because of defendants' violation of the Federal Wiretap Act and pursuant to 18 U.S.C. § 2520(a), plaintiff seeks recovery of statutory damages, costs and reasonable attorneys' fees on behalf of himself and Class members.

## COUNT THREE

### Violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*

69.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim for relief against all defendants.

70.     The Federal Stored Communications Act provides a private right of action against anyone who "intentionally accesses without authorization a facility through which an electronic communication is provided...." 18 U.S.C. § 2701(a).

71.     Defendants intentionally and without the consent of plaintiff and Class members accessed plaintiff's and Class members' Lenovo notebook computers with the intent to find, copy and transmit information on plaintiff's and Class members' computers to servers belonging to Superfish.

72.     During the installation and operation of the Superfish Visual Discovery program as herein alleged, defendants intentionally and without plaintiff's and Class members' consent, accessed, found, copied and transmitted plaintiff's and Class Member's "electronic communications," including Internet browsing habits, email communications or  other personal information to servers belonging to Superfish, in violation of 18 U.S.C. §§ 2701(a), 2711(1).

73.     Plaintiff and Class members have been aggrieved by the intentional and unlawful acts of defendants.  As a direct result of the installation and operation of the Superfish Visual Discovery program and intentional access by defendants to plaintiff's and Class members' computers as hereinabove alleged, defendants caused damage to plaintiff and Class members including, but not limited to, the expenses associated with investigating defendants' violations, cleansing or wiping plaintiff's and Class member's computer hard-drives and installing new operating systems, and the prevention of similar violations in the future.

74.     Because of defendants' violations of the Stored Communications Act and pursuant to 18 U.S.C. § 2707(b)-(c), plaintiff seeks statutory damages, costs and reasonable attorneys' fees on behalf of itself and Class members.

## COUNT FOUR

**Violation of the California Invasion of Privacy Act, Penal Code §§ 631 and 637.2**

75.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.  Plaintiff brings this claim for relief against all defendants.

76.     The California Invasion of Privacy Act makes it unlawful, by means of any machine, instrument or contrivance, to purposefully intercept the content of a communication over any "telegraph or telephone wire, line, cable or instrument," or to read, or attempt to read or learn the content of any such communications without the consent of all parties to the communication.  California Penal Code § 631(a).

77.     Plaintiff's and Class members' internet searches and communications with websites and third parties are communications with the meaning of the Act.

78.     Defendants knowingly and willfully intercepted those communications while they were "in transit" using the Superfish Visual Display program and servers that qualify as machines, instruments or contrivances as defined by the Act.

79.     Plaintiff and Class members did not consent to and were unaware of defendants' interception of their internet searches and communications, and were injured thereby.

80.     Defendants are persons within the meaning of the Act and were not parties to those communications.

81.     Defendants' conduct in violation of the Act occurred in California because those acts resulted from business decisions, practices and operating policies that defendants developed, implemented and utilized in California which are unlawful and constitute criminal conduct in defendant Superfish's state of residence and principal place of business and where defendant Lenovo regularly conducts business.

82.     As a result of defendants' violations of Section 631 of the California Penal Code, plaintiff and Class members are entitled to relief under Section 637.2 of the California Penal Code, including statutory damages, appropriate declaratory relief and reasonable attorneys' fees.

**COUNT FIVE**

**Violation of the California Bus. & Prof. Code § 17200, *et seq.***

83.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim for relief against all defendants.

84.    California's Unfair Competition Law (the "UCL") is embodied in California Business and Professions Code § 17200, *et seq*. The UCL defines unfair competition to include any unlawful, unfair or fraudulent business acts or practices. Unlawful acts and practices are those which are in violation of federal, state, county or municipal statutes and regulations.

85.    Defendants' conduct as alleged herein constitutes unlawful, unfair and fraudulent business acts and practices, and as a proximate result of those business acts and practices, plaintiff and Class members have suffered harm and lost money and/or property.

86.    By engaging in the business acts and practices described herein, defendants have committed one or more acts of unfair competition within the meaning of the UCL.

87.    Defendants' business acts and practices are "fraudulent" within the meaning of the Act because they are likely to and did deceive plaintiff and Class members into purchasing and using Lenovo notebook computers preinstalled with the Superfish Visual Display program, resulting in damages and loss to plaintiff and Class members.

88.    Defendants' business acts and practices are "unfair" and "unlawful" within the meaning of the Act because those business acts and practices violate the Computer Fraud and Abuse Act, the Federal Wiretap Act, the Stored Communications Act, and the California Invasion of Privacy Act. Plaintiff and Class members were damaged and lost money and/or property as a result.

89.    By virtue of the foregoing, and under Cal. Bus. & Prof. Code § 17203, plaintiff and Class members seek injunctive relief and restitution from defendants.

## COUNT SIX

### Trespass to Chattels

90.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim for relief against all defendants.

91.     The common law prohibits the intentional intermeddling with a chattel or impairment of the condition, quality or usefulness of the chattel.

92.     By engaging in the acts described above without the authorization of plaintiff and Class members. Defendants dispossessed plaintiff and Class members from use and/or access to their computers, or parts of them. Further, these acts impaired the use, value and quality of plaintiff's and Class members' computers. Defendants' acts constituted an intentional interference with the use and enjoyment of the computers that were subject to the Superfish Visual Discovery program. By the acts described above, defendants have repeatedly and persistently engaged in trespass to chattels in violation of the common law.

93.     Plaintiff and Class members are entitled to damages in an amount to be determined at trial.

## COUNT SEVEN

### Common Law Fraud

94.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim for relief against all defendants.

95.     Defendants have knowingly and/or recklessly engaged in the deceptive practices, uniform misrepresentations and material omissions complained of herein in order to induce plaintiffs and Class members to purchase and use Lenovo notebook computers preinstalled with the Superfish Visual Discovery program that damaged software on those computers and the computers themselves without their knowledge.

96.     Plaintiff and Class members had no knowledge of the falsity and/or incompleteness of defendants' misrepresentations when they bought and used their Lenovo notebook computers installed with the Superfish Visual Discovery program.

Plaintiff and Class members relied on defendants' deceptive practices, uniform misrepresentations and omissions to their detriment.

97.     Plaintiff and Class members have been damaged as a result of the conduct complained of herein, and the harm or risk of harm is ongoing.

98.     Defendants are liable for actual damages to plaintiff and Class members, and their ongoing fraudulent and deceptive conduct should be enjoined.

99.     Defendants' conduct in perpetuating the fraud and deceptive practices described above was malicious, willful, wanton and oppressive, or in reckless disregard of the rights of plaintiff and Class members, thereby warranting the imposition of punitive damages against defendants.

## COUNT EIGHT

### Negligent Misrepresentation

100.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim for relief against all defendants.

101.     Defendants had a duty to customers who purchased and used Lenovo notebook computers with the Superfish Visual Display program preinstalled to exercise reasonable care in the design, installation, testing, marketing and sale of those computers.

102.     By virtue of the foregoing, defendants breached that duty. As a direct and proximate result of defendants' breach of duty, the Lenovo notebook computers with the Superfish Visual Display program preinstalled performed defectively, as described above.

103.     Plaintiff and Class members had no knowledge of the falsity and/or incompleteness of defendants' misrepresentations and/or defects in the Superfish Visual Display program when they purchased and used their Lenovo notebook computers with the Superfish Visual Display program preinstalled. Plaintiff and Class members relied on defendants' deceptive practices, uniform misrepresentations and omissions to their detriment.

104.     Plaintiff and Class members have been damaged as a result of the conduct

complained of herein.

105.    Defendants are liable for actual damages to plaintiff and Class members.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and the members of the Class request judgment against defendants as follows:

A.    An order certifying the Class, directing that this case proceed as a class action, and appoint plaintiff and its counsel to represented plaintiff and the Class;

B.    Judgment in favor of plaintiff and Class members in an amount of actual damages, statutory damages or restitution to be determined at trial;

C.    An order enjoining defendants from the further activation or use of the Superfish Visual Discovery program in any Lenovo notebook computers:

D.    An order granting reasonable attorneys' fees and costs, as well as pre-and post-judgment interest at the maximum legal rate; and

E.    Such other and further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff on behalf of itself and all others similarly situated hereby requests a jury trial on any and all claims so triable.

DATED: February 23, 2015                Respectfully submitted,

**PRITZKER LEVINE LLP**


By:  _/s/ Jonathan K. Levine_
     Jonathan K. Levine (SBN: 220289)

Elizabeth C. Pritzker (SBN: 146267)
Shiho Yamamoto (SBN: 264741)
180 Grand Avenue, Suite 1390
Oakland, California 94612
Telephone:  (415) 692-0772
Facsimile:  (415) 366-6110
Email:  jkl@pritzkerlevine.com;
        ecp@pritzkerlevine.com
        sy@pritzkerlevine.com

1

2

John A. Kehoe
41 Madison Avenue, 31st Floor
New York, New York 10010
Telephone: (917) 525-2190
Facsimile:  (917) 525-2184
Email:  jak@pritzkerlevine.com

3

4

5

Attorneys for Plaintiff Sterling International
Consulting Group

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# US District Court Civil Docket

## U.S. District -- California Northern
## (San Jose)

## 5:15cv819

## Hunter v. Lenovo (United States) Inc. et al

### This case was retrieved from the court on Tuesday, February 24, 2015

---

**Date Filed: 02/23/2015**
**Assigned To: Magistrate Judge Nathanael M. Cousins**
**Referred To:**
**Nature of suit: Other Statutory Actions (890)**
**Cause: Fed. Question**
**Lead Docket: None**
**Other Docket: None**
**Jurisdiction: Federal Question**

**Class Code: OPEN**
**Closed:**
**Statute: 28:1331**
**Jury Demand: Plaintiff**
**Demand Amount: $5,000,000**
**NOS Description: Other Statutory Actions**

---

| Litigants | Attorneys |
|---|---|
| David Hunter<br>Plaintiff | Samuel Lasser<br>ATTORNEY TO BE NOTICED<br>Law Office of Samuel Lasser<br>1934 Divisadero Street<br>San Francisco , CA  94115<br>USA<br>415-994-9930<br>Fax: 415-776-8047<br>Email:Samlasser@hotmail.Com |
| Lenovo (United States) Inc.<br>Defendant | |
| Superfish, Inc.<br>Defendant | |

---

| Date | # | Proceeding Text | Source |
|---|---|---|---|
| 02/23/2015 | 1 | COMPLAINT against Lenovo (United States) Inc., Superfish, Inc. ( Filing fee $ 400, receipt number 0971-9309902.). Filed byDavid Hunter. (Attachments: # 1 Civil Cover Sheet)(Lasser, Samuel) (Filed on 2/23/2015) (Entered: 02/23/2015) | |
| 02/23/2015 | 2 | Proposed Summons. (Lasser, Samuel) (Filed on 2/23/2015) (Entered: 02/23/2015) | |
| 02/24/2015 | 3 | Case assigned to Magistrate Judge Nathanael M. Cousins. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit E-Filing A New Civil Case at http://cand.uscourts.gov/ecf/caseopening.Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. (as, COURT STAFF) (Filed on 2/24/2015) (Entered: 02/24/2015) | |

---

Order documents from our nationwide document retrieval service.
- OR - Call **1.866.540.8818.**

Copyright © 2015 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

1  Samuel M. Lasser (SBN – 252754)
   slasser@edelson.com
2  EDELSON PC
   1934 Divisadero Street
3  San Francisco, California 94115
   Tel: 415.994.9930
4  Fax: 415.776.8047

5  Rafey S. Balabanian*
   rbalabanian@edelson.com
6  Benjamin H. Richman*
   brichman@edelson.com
7  J. Dominick Larry*
   nlarry@edelson.com
8  Amir C. Missaghi*
   amissaghi@edelson.com
9  EDELSON PC
   350 North LaSalle Street, Suite 1300
10 Chicago, Illinois 60654
   Tel: 312.589.6370
11 Fax: 312.589.6378

12 *Pro hac vice admission to be sought.

13 Attorneys for Plaintiff and the Putative Class

14              **IN THE UNITED STATES DISTRICT COURT**

15          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16                    **SAN JOSE DIVISION**

17 DAVID HUNTER, individually, and on behalf          Case No.
   of all others similarly situated,
18                                                     **CLASS ACTION COMPLAINT FOR:**
                        *Plaintiff,*
19                                                     1. **Violations of the Stored**
                                                          **Communications Act, 18 U.S.C. §§**
20         *v.*                                           **2701,** *et seq.***;**
                                                        2. **Violations of the Electronic**
21 LENOVO (UNITED STATES), INC., a                       **Communications Privacy Act, 18**
   Delaware corporation, and SUPERFISH, INC.,           **U.S.C. § 2510–2522; and**
22 a Delaware corporation,                            3. **Unjust Enrichment**

23                      *Defendants.*                   **DEMAND FOR JURY TRIAL**

24

25

26

27

28

Plaintiff David Hunter brings this Class Action Complaint ("Complaint") against Defendants Lenovo (United States), Inc. ("Lenovo") and Superfish, Inc., ("Superfish") (collectively, "Defendants") for their unauthorized infiltration and surveillance of millions of unsuspecting consumers' personal computers. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1.      Each year, millions of consumers buy computers from Lenovo, trusting the company to provide reliable, secure computers. Unfortunately, in September 2014, Lenovo betrayed that trust by partnering with Superfish—an aspiring leader in the "visual search engine" market—to install a monitoring application (the "Superfish Surveillance Software") on Lenovo computers sold to consumers.

2.      The privacy implications of Defendants' Superfish Surveillance Software cannot be overstated. As an initial matter, Defendants install "root certificates"[1] on the affected computers to ensure unimpeded access to consumers' internet traffic. Defendants' root certificates were so poorly implemented, though, that they effectively bar consumers from securing *any* internet transaction—even after Defendants' software is removed.

3.      Once Defendants have placed their root certificate on the computers, their Superfish Surveillance Software installs a program that reroutes consumers' internet traffic. A consumer's request to visit a website, for example, no longer heads straight to its destination; instead, Defendants' Superfish Surveillance Software intercepts the request, performs searches and analysis, endeavors to modify the contents, and then re-sends the request to the original destination.

4.      Then, when the consumer's computer receives a response from a website's servers, Defendants' Superfish Surveillance Software intercepts that as well. Once intercepted, the Software forever alters the contents by injecting custom computer code into the response in an effort to display advertisements.

---

[1]      "Root certificates" are more fully explained in ¶¶ 17-24 of this Complaint.

5.     By installing and operating their Superfish Surveillance Software without consent, Defendants have violated the privacy rights of millions of individuals. In addition, the manner in which Defendants' Superfish Surveillance Software operates violates several federal laws that aim to protect consumers against such unauthorized access to their communications and computers.

6.     Accordingly, Plaintiff Hunter, on his own behalf and on behalf of a Class of similarly situated individuals, brings this lawsuit seeking to compel Defendants to remove their Superfish Surveillance Software and root certificates from Plaintiff's and the Class's computers, as well as recover statutory and actual damages, costs, and attorneys' fees.

## PARTIES

7.     Plaintiff David Hunter is a natural person and citizen of the State of North Carolina.

8.     Defendant Lenovo (United States), Inc., is a corporation existing under the laws of the State of Delaware with its principal place of business located at 1009 Think Place, Morrisville, North Carolina 27560. Lenovo does business throughout the United States, the State of California, and this District.

9.     Defendant Superfish, Inc., is a corporation existing under the laws of the State of Delaware with its principal place of business located at 2595 East Bayshore Road, Palo Alto, California 94303. Superfish does business throughout the United States, the State of California, and this District.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. This Court has personal jurisdiction over Defendants because they reside in this District,[2] conduct business in this District, and the improper conduct alleged in this

---

[2]     Defendant Lenovo operates a "Research and Product Development Center" within this District, located at 602 Charcot Avenue, San Jose, California 95131, that "function[s] as a developmental lab and corporate office." *Lenovo opens New Office in Silicon Valley News in , -November 06, 2013 - at Lenovo*, http://www.lenovocareers.com/en/news-and-events/career-news-description/lenovo-opens-new-office-in-silicon-valley--412?cntry=united-states (last visited Feb. 23, 2015).

Complaint occurred in or emanated from this District.

11.     The Court has personal jurisdiction over Defendants and venue is proper in this District because the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from California, and because Defendants transact significant amounts of business within this District, enter into consumer and business contracts here, and Defendant Superfish is headquartered in this District.

## INTRADISTRICT ASSIGNMENT

12.     Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose Division.

## FACTUAL BACKGROUND

### I.     Lenovo Partners with Superfish to Surreptitiously Install Surveillance Software on Millions of Computers

13.     Defendant Lenovo is a leading manufacturer and seller of consumer personal computers, selling millions of computers and laptops every year.

14.     Defendant Superfish is a company that envisages itself being the premier provider of image-based search results. Superfish employs dozens of engineers and scientists that work to teach computers how to recognize objects, such as animals, shoes, or smartphones, within images.

15.     In 2014, Defendants partnered to pre-install Superfish's software onto millions of Lenovo computers. Through that partnership, Defendants devised a system whereby they profited by monitoring, intercepting, and monetizing the communications of millions of consumers.[3] Unfortunately, none of the monitored consumers were ever aware of the Superfish Surveillance Software's very existence.

---

[3]     According to Superfish's "Non-exclusive Software Distribution Agreement," Superfish enters into "Revenue Shar[ing]" partnerships with distributors. *Superfish Inc. ("Superfish") Non-Exclusive Software Distribution Agreement*, www.similarproducts.net/ SuperfishWebsiteDistributionAgreementV6US.pdf (last visited Feb. 23, 2015). Ostensibly, Lenovo and Superfish entered into a similar agreement, where Lenovo, acting as the distributor, would receive "50%" of revenue generated "from redirections to alternate sites made by [the Superfish Surveillance Software] during each month." *Id.*

**II.** **Defendants Modify Users' Computers and Reroute Their Internet Traffic Without Their Consent.**

16.     Prior to January 2015, neither Lenovo nor Superfish disclosed to consumers that the Superfish Surveillance Software would modify their computers and monitor their online activities, nor did the Defendants ever seek to (or actually) obtain consumers' consent before doing so. Indeed, immediately after the user completes the initial setup of Windows, Defendants' Superfish Surveillance Software installs a "root certificate" that puts users' private information at risk and a "local proxy," that, as explained in detail below, intercepts users' communications.

**A.** **Defendants Install an Insecure Root Certificate.**

17.     On every Lenovo computer with the Superfish Surveillance Software installed, Defendants also installed a "root certificate" that eviscerates users' abilities to securely communicate over the internet.

18.     In very basic terms, a root certificate is part of an intricate system that helps ensure that websites on the internet are secure. The Windows operating system comes pre-packaged with a store of root certificates issued by trustworthy Certificate Authorities such as VeriSign.[4]

19.     A Certificate Authority, such as VeriSign, distributes certificates to trustworthy companies like Amazon.com. When an individual browses Amazon.com, the user's web browser identifies a certificate that was "signed" by VeriSign, and the individual is given assurance that the website (Amazon.com) is secure. Without this system, it would be extremely difficult, if not impossible, for users to verify which websites were secure and safe for the transmission of sensitive information, such as credit card and bank account numbers.

20.     Certificate Authorities like VeriSign must follow stringent regulations to have their root certificate included in web browsers or operating systems. For example, Microsoft requires entities applying for root certificates to comply with rigorous guidelines delineated by the WebTrust for Certification Authorities program, which is sponsored by the American

---

[4]     VeriSign is a company that specializes in, among other things, online security and digital certificates. To date, VeriSign is the largest provider of digital certificates.

1  Institute for Certified Public Accountants (AICPA).

2      21.    To average users, the significance of a root certificate is most readily

3  manifested by a small image of a padlock in the top left of a web browser that appears when

4  conducting secure transactions over the internet. This image provides the individual with

5  peace of mind that sensitive information can be transmitted to the website without

6  interception by nefarious actors. However, because Defendants install their own root

7  certificate (without following any guidelines), the image of the padlock appears unbroken

8  even while the Superfish Surveillance Software intercepts and captures all secure

9  communications.

10      22.    To install their root certificate (the "Superfish Root Certificate"), Defendants

11  utilize a product called the "Komodia SSL Digestor" that "allows the programmer [*i.e.*,

12  Defendants] a transparent access to decrypted [secure internet traffic] ... without raising an

13  alert from the [user's] browser." Komodia, the seller of the Digestor, states that it is:

> "a modified Man In The Middle attack. what it does is 'talk' with the
> application [*e.g.*, an internet browser] on one side, and talking with the target
> server on the other [*e.g.*, Amazon.com's servers], and the [Digestor] being the
> man in the middle, just as someone who gets a secret whispered in each ear,
> normally the browser/app would raise an alert because of the modified
> certificate, but the [Digestor] installs a root [] certificate in advance which
> means the browser will not send an alert because the certificate created is legit
> from [the application's] point of view."

18      23.    Just as Komodia described, Defendants' Superfish Surveillance Software and

19  their Root Certificate creates a "Man In The Middle Attack," which is a well-known type of

20  attack used by, amongst others, computer hackers,[5] spy agencies,[6] and foreign governments[7]

21  to eavesdrop on private communications and steal confidential information.

22      24.    Worse, Defendants designed their software to leave behind the Superfish Root

---

[5]    *DoubleDirect: Hackers Redirect High-Traffic Sites Via New MITM Attack,*
http://www.tripwire.com/state-of-security/latest-security-news/doubledirect-hackers-redirect-high-traffic-sites-using-new-man-in-the-middle-attack/ (last visited Feb. 23, 2015).
[6]    *NSA disguised itself as Google to spy, say reports – CNET,*
http://www.cnet.com/news/ nsa-disguised-itself-as-google-to-say-reports/ (last visited Feb. 23, 2015).
[7]    *Chinese government launches man-in-middle attack against iCloud [Updated] | Ars Technica,* http://arstechnica.com/security/2014/10/chinese-government-launches-man-in-middle-attack-against-icloud/ (last visited Feb. 23, 2015).

1  Certificate even after a monitored consumer uninstalls the Superfish Surveillance Software.[8]

2  The risks caused by untrusted root certificates are well documented and Defendants' actions

3  pose serious risks to monitored consumers' computer systems.[9]

4      25.    For example, just days after the Superfish Surveillance Software was

5  uncovered, a computer security expert publicly released a tool that "silently intercept[s]

6  [secure] connections made from computers infected with Superfish malware" by exploiting

7  Defendants' insecure root certificate.[10] Anyone using that tool at an airport, coffee shop, or

8  another public place can eavesdrop on the confidential conversations of the potentially

9  millions of consumers with the Superfish Surveillance Software still installed on their

10  computers.

11      **B.    Defendants Install a "Local Proxy" to Reroute Internet Traffic.**

12      26.    After Defendants' Superfish Surveillance Software installs its root certificate,

13  the software causes all of the user's internet traffic to pass through a "local proxy," which is a

14  computer program that changes the destination of all outbound internet traffic and initially

15  receives all in-bound internet traffic. That is, a computer with a local proxy running will have

16  a request to Amazon.com initially pass through the local proxy before it reaches the original

17  _____

18  [8]    After public condemnation, Lenovo released an automated tool that purportedly
removes the Superfish Surveillance Software from infected computers. *Lenovo Newsroom |*
19  *Updated Lenovo Statement on Superfish*, http://news.lenovo.com/article_display.cfm?
article_id=1931&view_id=1431& (last visited Feb. 23, 2015). However, Lenovo's tool does
20  not remove the Superfish Surveillance Software from infected computers' "recovery disk."
The recovery disk is provided by Lenovo to act as a backup of the Windows operating
21  system in case a user suffers a critical failure or seeks to install a fresh installation of
Windows. As a result, should Plaintiff or members of the putative Class actually use the
22  recovery disk, the Superfish Surveillance Software will once again infect their computers.
[9]    Hackers use untrusted root certificates such as Defendants' Superfish Root Certificate
23  to intercept personal data from users without detection. Because the consumer mistakenly
believes that the transaction is secure, he or she assumes that it is safe to input sensitive
24  financial or other information. Armed with the "key" to Defendants' Superfish Root
Certificate, a hacker can create the faux appearance of a secure transaction. Defendants, as
25  the Superfish Root Certificate's authors know the key, but, and perhaps more troubling, the
key Defendants chose was simply the word "komodia." Accordingly, the prospect that
26  Defendants (or anyone else) may attempt to utilize the root certificates they have
intentionally left behind on monitored consumers' computers is a very real threat.
27  [10]    *0xPoly/Superphish · GitHub*, https://github.com/0xPoly/Superphish (last visited Feb.
23, 2015); *see also Errata Security: Exploiting the Superfish certificate*,
28  http://blog.erratasec.com/2015/02/exploiting-superfish-certificate.html#.VOqBqlPF87N (last
visited Feb. 23, 2015).

1    destination of Amazon.com's servers.

2        27.    Defendants' local proxy is their version of a product sold by non-party

3    Komodia, which is marketed as a "redirector product" ("Komodia Redirector"). The

4    Komodia Redirector lets Defendants "redirect [] traffic" away from the user's intended

5    recipient and "to the proxy service."[11] "When a connection is made" by the user, the

6    Komodia Redirector determines whether a specific communication "should be intercepted"

7    and then intercepts and reroutes the communications to the local proxy.[12]

8        28.    Analyzing the Superfish Surveillance Software reveals that Defendants

9    purchased the Komodia Redirector and integrated it into their Superfish Surveillance

10   Software. And because Defendants previously installed the root certificate onto every

11   affected Lenovo laptop, the Superfish Surveillance Software can (and does) read and alter the

12   contents of the intercepted communications.

### III.    Defendants' Superfish Surveillance Software Reads and Alters the Contents of Consumers' Rerouted Internet Traffic.

#### A.    Defendants Acquire the Contents of Consumers' Communications.

15       29.    Defendants' claimed purpose of pre-installing the Superfish Surveillance

16   Software on consumers' computers was to "to assist customers with discovering products

17   similar to what they are viewing."[13] To provide that "assistance," the Superfish Surveillance

18   Software obtains access to consumers' browsing sessions, determines what, if anything, the

19   consumer is viewing, and communicates with Defendants' servers to offer the "similar"

20   products that consumers can "discover."

21       30.    The method by which Superfish Surveillance Software obtains access to

22   consumers browsing sessions is described in <u>Section II</u> above. And once the Superfish

23   Surveillance Software establishes the "man-in-the-middle attack," Defendants are in a

24   position to view a consumer's online browsing and communication activity and to determine

25

---

26   [11]   *Komodia's Redirector – Komodia*, https://web.archive.org/web/20140807112859/
     http://www.komodia.com/wiki/index.php/Komodia%27s_Redirector (last visited Feb. 23,
27   2015).
     [12]   *Id.*
28   [13]   *Superfish Vulnerability - Lenovo Support (US)*, http://support.lenovo.com/us/en/
     product_security/superfish (last visited Feb. 23, 2015).

what product, if any, the consumer is looking at.

31.     Defendant Superfish describes its process for determining what consumers are looking at as first "tak[ing] an image," "convert[ing] it to a model," "filter[ing] billions of images," "retriev[ing] visually similar results," and then presenting the most similar product to the user:



**(Figure 1.)**[14]

The process outlined in Figure 1 occurs, in part, on the user's computer and also on Defendants' servers. The Superfish Surveillance Software continuously communicates with Defendants' servers to, among other things, "filter" and "retrieve visually similar results."

32.     Defendants also use the millions of instances of the Superfish Surveillance Software to collect a vast amount of information about consumers and their internet browsing habits. According to Superfish's public statements, the Superfish Surveillance Software collects "usage data, referring/exit pages and URLs, platform types, number of clicks, etc."[15] Superfish then conducts "data mining"[16] to identify trends, habits, and patterns in consumers' browsing.

33.     According to the terms of Superfish's standard distribution agreement,

---

[14]     *About Us | SimilarProducts - Monetize Visually*, http://www.similarproducts.net/about-us/ (last visited Feb. 23, 2015) (describing Defendant Superfish's functionally equivalent "SimilarProducts" product which may be incorporated in whole or in part in Defendants' Superfish Surveillance Software).
[15]     *Privacy Policy | SimilarProducts - Monetize Visually*, http://www.similarproducts.net/ privacy-policy/ (last visited Feb. 23, 2015).
[16]     *Michael Chertok | ZoomInfo.com*, http://www.zoominfo.com/p/Michael-Chertok/1433596671 (reprinting that Defendant Superfish's Chief Technology Officer, Michael Chertok, has "10 years of experience in building large scale real-time data mining systems.").

1   Defendants developed "an identifying electronic signature that [] contain[s] DLsource and

2   UserID that [] enable[s] Superfish to track installations and un-installations of the App,

3   searches and merchant clicks."[17] The plethora of consumer information collected by the

4   Superfish Surveillance Software and analyzed by Superfish is valuable to Defendants

5   because they can sell or exchange the collected data to or with "interested third parties."[18]

6       **B.    Defendants Alter the Contents of Consumers' Communications.**

7       34.    As described above, Defendants' implementation of the Komodia Redirector

8   decrypts all encrypted data so that the Superfish Surveillance Software can read the contents

9   of the communications. Once the Superfish Surveillance Software has processed the

10  contents, Defendants' Komodia Redirector encrypts the data once again to ensure that the

11  receiving server (the indented recipient of the original communication) receives an encrypted

12  communication as expected. The same decryption-encryption process occurs in reverse when

13  the infected computer receives secure communications.

14      35.    As such, any communication made or received by an infected computer is

15  always altered. Specifically, Defendants' Superfish Surveillance Software replaces a user's

16  default root certificate (that was securely signed by a trusted source) with the Superfish Root

17  Certificate (which, conversely, is completely insecure and untrusted), forever changing all

18  communications originated from users' computers. Moreover, all communication is

19  decrypted before it reaches its intended recipient, another wholesale modification.

20      36.    In addition, Defendants' Superfish Surveillance Software seeks to inject

21  custom computer code into users' browsing sessions to display advertisements. After the

22  Superfish Surveillance Software obtains access to a user's communications and determines

23  what product (if any) a consumer is looking at, it transmits information to Superfish's servers

24  and receives a list of similar products to advertise to the user. The Superfish Surveillance

25  Software then "injects" bespoke computer code to display the advertisements on any website

---

26

27  [17]   *Superfish Inc. ("Superfish") Non-exclusive Software Distribution Agreement*,
    http://www.similarproducts.net/SuperfishWebsiteDistributionAgreementV6US.pdf (last
    visited Feb. 23, 2015).

28  [18]   *Privacy Policy | SimilarProducts - Monetize Visually*, www.similarproducts.net/
    privacy-policy/ (last visited Feb. 23, 2015).

1 viewed by the user.

2     37.     For example, when a website, such as Amazon.com, transmits computer code

3 to a user's computer to facilitate online shopping, the code and accompanying files are

4 temporarily stored before, during, and a short time after the user views and interacts with the

5 site. But in the time before the user views the website, and while the code is temporarily

6 stored, the Superfish Surveillance Software executes its injection function to modify the

7 code.

8     38.     <u>Figure 2</u>, shows a portion of the source code for Amazon.com that facilitates

9 the operation of the website. In this example, the Superfish Surveillance Software has not

10 injected any of Defendants' code.



**(Figure 2.)**

39.     <u>Figure 3</u>, shows the same code from Amazon.com and demonstrates how just

some of Defendants' code is injected, which is highlighted by a red box.



**(Figure 3.)**

40.     The result of the injected computer code is similar to what is shown in <u>Figure</u>

<u>4</u>. In that case, the user is looking at shoes, and the Superfish Surveillance Software's code

causes a "pop-up" "WindowShopper" box to appear showing eight similar shoes available

for purchase online. Per the likely terms of Defendants' agreement, had the consumer purchased one of the recommended similar shoes, each Defendant would profit.



(**Figure 4.**)[19]

## IV. Computer Security Experts and Government Officials Discover Defendants' Superfish Surveillance Software and are Outraged.

41. It was not until January 23, 2015 that Lenovo, after receiving consumer complaints, confirmed that it had installed the Superfish Surveillance Software on certain of its laptops.[20] Lenovo stated at the time:

> "Due to some issues (browser pop up behavior for example), with the Superfish Visual Discovery browser add-on, we have temporarily removed Superfish from our consumer systems until such time as Superfish is able to provide a software build that addresses these issues. As for units already in market, we have requested that Superfish auto-update a fix that addresses these issues."

42. Just weeks later, Lenovo updated its response because the situation apparently "evolved." Lenovo pointed consumers to a "Lenovo Security Advisory" that stated that the "SUPERFISH VULNERABILITY" Defendants had installed on millions of computers was, in truth, a "Man-in-the-Middle Attack" of "High" "Severity."[21]

43. Since then, computer security experts have explained why Defendants' scheme was bad from the start. One stated that:

---

[19] *Visual Search for your Toolbar or Add-on | SimilarProducts - Monetize Visually*, http://www.similarproducts.net/enroll/ (last visited Feb. 23, 2015) (showing the result of injected computer code created by Defendant Superfish's "WindowShopper" program that is functionally equivalent to Defendants' Superfish Surveillance Software.)

[20] *Id.*

[21] *Superfish Vulnerability - Lenovo Support (US)*, http://support.lenovo.com/us/en/product_security/superfish (last visited Feb. 23, 2015).

"Now injecting ads into a browser is bad enough, doing so by running an HTTPS proxy on the machine is a lot worse. HTTPS shouldn't be touched unless it is for a very good reason - inserting ads is never a good reason.

But what makes it still orders of magnitude worse than that, is that their proxy uses the same certificate on all affected (or, perhaps more accurate, infected) PCs. Hence anyone can obtain the private key of the certificate - which, as people have already showed, isn't rocket science - and use this to man-in-the-middle HTTPS traffic without the Lenovo user being aware."[22]

44.    Another expert said:

"The latest Superfish debacle highlights the current strategy for device manufacturers across the electronics ecosystem looking to get their slice of the billion-dollar advertising revenue market that has made Google and others so successful. Unfortunately, like the case with Lenovo and many others, users' privacy and security are compromised - often in secret - leaving them extremely vulnerable to malicious hackers who leverage the this type of tracking technology against them."[23]

45.    Even the United States government has determined that Defendants' Superfish Surveillance Software is a security threat. US-Cert, a website operated by the United States Computer Emergency Readiness Team, a division of the Department of Homeland Security, released an "Alert" on February 20, 2015 and warned:

"Starting in September 2014, Lenovo pre-installed Superfish VisualDiscovery spyware on some of their PCs. However, Superfish was reportedly bundled with other applications as early as 2010. This software intercepts users' web traffic to provide targeted advertisements. In order to intercept encrypted connections (those using HTTPS), the software installs a trusted root CA certificate for Superfish. All browser-based encrypted traffic to the Internet is intercepted, decrypted, and re-encrypted to the user's browser by the application – a classic man-in-the-middle attack. Because the certificates used by Superfish are signed by the CA installed by the software, the browser will not display any warnings that the traffic is being tampered with. Since the private key can easily be recovered from the Superfish software, an attacker can generate a certificate for any website that will be trusted by a system with the Superfish software installed. This means websites, such as banking and email, can be spoofed without a warning from the browser."[24]

46.    Ultimately, Defendants profited for months on the unauthorized acquisition and alteration of consumers' private internet communications. Undeniably, Defendants' methods demonstrate a wholesale disregard for consumer privacy rights and violate numerous federal laws.

---

[22]    *Feedback Friday: Lenovo Preinstalled Superfish Adware on Laptops – Reactions | SecurityWeek.Com*, http://www.securityweek.com/feedback-friday-lenovo-preinstalled-superfish-adware-laptops-%E2%80%93-reactions (last visited Feb. 23, 2015).
[23]    *Id.*
[24]    *Id.*

**FACTS RELATING TO PLAINTIFF HUNTER**

47.     On October 6, 2014, Plaintiff Hunter purchased a Lenovo Y50 laptop from Lenovo.com and paid $1,951.38 after tax. Unknown to Plaintiff at the time he ordered it, his Lenovo Y50 laptop was secretly bundled with Defendants' Superfish Surveillance Software.

48.     As soon as Plaintiff received his laptop in the mail, on or about October 10, 2014, he began using his computer and connected it to a local wireless network and the internet. Plaintiff has since regularly used the laptop to browse the internet, send and receive emails, shop online, and conduct online banking.

49.     On February 20, 2015, Plaintiff Hunter was alerted by news reports stating that the Superfish Surveillance Software was likely installed on his laptop. Once he confirmed that the Superfish Surveillance Software was present on his laptop, Plaintiff searched online on how to remove it and the Superfish Root Certificate and did just that.

50.     Thus, from on or about October 10, 2014 to February 20, 2015, the Superfish Surveillance Software was operating on his computer, intercepting all of his internet traffic, and attempting to inject (and actually injecting) unwanted advertisements into his browsing sessions.

51.     Plaintiff never agreed to any terms or conditions regarding the Superfish Surveillance Software, nor was he aware that the Lenovo laptop he purchased would contain the Superfish Surveillance Software. Accordingly, Plaintiff never consented to Defendants' monitoring of, access to, and/or interception of his internet communications.

**CLASS ALLEGATIONS**

52.     Plaintiff David Hunter brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and the following Class:

> All individuals in the United States who purchased a Lenovo computer with the Superfish Surveillance Software pre-installed on it and who connected the computer to the internet.

53.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the

1  Defendants or their parents have a controlling interest and its current or former employees,

2  officers and directors; (3) persons who properly execute and file a timely request for

3  exclusion from the Class; (4) persons whose claims in this matter have been finally

4  adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants'

5  counsel; and (6) the legal representatives, successors, and assigns of any such excluded

6  persons.

7      54.    **Numerosity:** On information and belief, hundreds of thousands of consumers

8  fall into the definition of the Class. Members of the Class can be identified through

9  Defendants' records, discovery, and other third party sources.

10     55.    **Adequate Representation:**  Plaintiff will fairly and adequately represent and

11 protect the interests of the Class and has retained counsel competent and experienced in

12 complex litigation and class actions. Plaintiff's claims are representative of the claims of the

13 other members of the Class. That is, Plaintiff and each member of the Class purchased

14 laptops that was preinstalled with the Superfish Surveillance Software and had their

15 communications read and altered without consent. Plaintiff also has no interests antagonistic

16 to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his

17 counsel are committed to vigorously prosecuting this action on behalf of the members of the

18 Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any

19 interest adverse to the Class.

20     56.    **Typicality:** Plaintiff's claims are typical of the claims of other members of the

21 Class, in that Plaintiff's and the members of the Class sustained damages arising out of

22 Defendants' wrongful conduct.

23     57.    **Commonality and Predominance:**  There are many questions of law and fact

24 common to Plaintiff's and the Class's claims, and those questions predominate over any

25 questions that may affect individual members of the Class. Common questions for the Class

26 include, but are not necessarily limited to the following:

27          a)      whether Defendants intentionally designed their Superfish

28                  Surveillance Software to reroute and alter consumers' internet traffic;

b)      whether Defendants intentionally installed an insecure root certificate that remains installed even after consumers remove Defendants' software;

c)      whether Defendants' obtained consent before installing and operating their Superfish Surveillance Software;

d)      whether Defendants' conduct described herein violated the Stored Communications Act (18 U.S.C. §§ 2701, *et seq.*);

e)      whether Defendants' conduct described herein violated the Electronic Communications Privacy Act (18 U.S.C. §§ 2510–22.); and

f)      whether Defendants have been unjustly enriched at the expense of Plaintiff and the Class.

58.      Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

## FIRST CAUSE OF ACTION
### Violations of the Electronic Communications Privacy Act
### (18 U.S.C. §§ 2510–22.)
### (On Behalf of Plaintiff and the Class)

59.      Plaintiff incorporates the forgoing allegations as if fully set forth herein.

60.      The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510–22 ("ECPA") broadly defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce. . . ." 18 U.S.C. § 2510(12).

61.      By using the Superfish Surveillance Software to intercept and modify Plaintiff's and the Class's online browsing activity, Defendants endeavored to and did intercept communications between Plaintiff's and the Class's computers on the one hand, and the servers for the websites they browsed on the other.

62.      Thus, Defendants intentionally obtained and/or intercepted, by device or otherwise, these electronic communications, without the knowledge, consent or authorization of Plaintiff or the Class.

63. Accordingly, Defendants' conduct violated 18 U.S.C. § 2511(1)(a) because they intentionally intercepted and endeavored to intercept Plaintiff's and Class members' electronic communications.

64. Defendants likewise violated 18 U.S.C. § 2511(1)(d) by intentionally using the contents of Plaintiff's and the Class's electronic communications (*i.e.*, their online browsing activity) that they intercepted using the Superfish Surveillance Software.

65. Plaintiff and the Class suffered harm as a result of Defendants' violations of the ECPA, and therefore seek (a) preliminary, equitable and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Defendants as a result of their unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

## SECOND CAUSE OF ACTION
### Violations of the Stored Communications Act
### (18 U.S.C. §§ 2701, *et seq.*)
### (In the Alternative to the First Cause of Action)
### (On Behalf of Plaintiff and the Class)

66. Plaintiff incorporates the allegations contained in Paragraphs 1 through 58 as if fully set forth herein.

67. The ECPA broadly defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce. . . ." 18 U.S.C. § 2510(12). The Stored Communications Act incorporates this definition.

68. Pursuant to the ECPA and Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.* ("SCA"), "electronic storage" means any "temporary storage of a wire or electronic communication incidental to the electronic transmission thereof." 18 U.S.C. § 2510(17)(A). This type of electronic storage includes communications in intermediate electronic storage that have not yet been delivered to their intended recipient.

69. The SCA mandates, among other things, that it is unlawful for a person to obtain access to stored communications on another's computer system without authorization.

1   18 U.S.C. § 2701.

2       70.   Congress expressly included provisions in the SCA to address this issue so as

3   to prevent "unauthorized persons deliberately gaining access to, and sometimes tampering

4   with, electronic or wire communications that are not intended to be available to the public."

5   S. Rep. No. 99–541, 35, 1986 U.S.C.C.A.N. 3555, 3589.

6       71.   Defendants accessed facilities through which electronic communications

7   services are provided through their Superfish Surveillance Software. Specifically, Plaintiff's

8   and the Class's computers provide electronic communications services that include operating

9   as printer servers and wireless networking providers (*e.g.*, with Bluetooth or WiFi), amongst

10   others.

11      72.   In addition, Plaintiff's and the Class's computers operated as remote terminals

12   of third-party facilities through which electronic communications are provided. Modern web

13   applications communicate in near real-time over the internet, meaning that when Plaintiff and

14   the Class access such web applications by visiting web pages, their internet browsers act as

15   portals to the facilities that provide electronic communications services, such as electronic

16   bulletin boards, electronic mail servers, and computer server centers.

17      73.   Through the Superfish Surveillance Software, Defendants accessed Plaintiff's

18   and the Class's web browsing communications (*i.e.*, their browsing activity) while those

19   communications were in temporary storage on their laptop computers.

20      74.   Accordingly, Defendants violated 18 U.S.C. § 2701(a)(1) by accessing

21   without authorization facilities through which an electronic communication service is

22   provided (*i.e.*, web services connected to Plaintiff's and the Class's computers), and

23   obtaining and altering their web browsing communications.

24      75.   Further, Defendants violated 18 U.S.C. § 2701(a)(2) by exceeding the scope

25   of any authorization granted to access Plaintiff's computers and thereby obtaining and

26   altering their web browsing communications.

27      76.   Additionally, Defendants have violated 18 U.S.C. § 2701(a)(2) because they

28   intentionally exceeded authorization to access consumers' communications and obtained,

1   altered, or prevented authorized access to a wire or electronic communication while in

2   electronic storage by their continued modification of users' secure internet connections, even

3   after users uninstalled the Superfish Surveillance Software. Defendants had actual knowledge

4   of, and benefited from, this practice.

5       77.     Because Defendants programmed the Superfish Surveillance Software to

6   operate for profit on Plaintiff's and the Class members' computers, they had knowledge of,

7   and benefitted from, their unlawful conduct.

8       78.     As a result of Defendants' conduct described herein and its violation of

9   § 2701, Plaintiff and the Class have suffered injuries to their privacy rights, and economic

10  harm due to Defendants' unjust enrichment at their expense. Plaintiff, on behalf of himself

11  and the Class, seeks an order enjoining Defendants' conduct described herein[25] and awarding

12  them the maximum statutory and punitive damages available under 18 U.S.C. § 2707.

13
                            **THIRD CAUSE OF ACTION**
                                 **Unjust Enrichment**
14                       **(On Behalf of Plaintiff and the Class)**

15      79.     Plaintiff incorporates the allegations set forth in Paragraphs 1 through 65 as if

16  fully set forth herein.

17      80.     Plaintiff and members of the Class conferred a monetary benefit on

18  Defendants. Defendants received and retained money by selling to their customers and

19  business partners data collected from Plaintiff's and the Class members' computers through

20  their Superfish Surveillance Software and/or by selling advertisements that were injected into

21  Plaintiff's and the Class's web browsers. The advertisements were injected and all of the

22  information was collected from Plaintiff and the Class without authorization and through

23  deceptive business practices.

24      81.     Additionally, Plaintiff and the Class members conferred a monetary benefit on

25  Defendant Lenovo through the purchase of their Lenovo computers.

26  ──────────────────────────
    [25]     To date, Plaintiff's recovery hard disk, which he paid for as a part of the purchase
27  price of his Lenovo Y50 laptop, is still infected with the Superfish Surveillance Software and
    cannot be altered by Plaintiff. As such, Plaintiff requires an injunction to compel Defendants
28  to replace his recovery hard disk with a version that does not contain the Superfish
    Surveillance Software.

82. Defendants appreciate or have knowledge of such benefit, as demonstrated by their public representations regarding the monetization of Plaintiff's and the Class members' online consumer activity.

83. Under principles of equity and good conscience, Defendants should not be permitted to retain the money obtained by selling information about or advertisements to Plaintiff and members of the Class, which Defendants have unjustly obtained as a result of their unlawful actions.

84. Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money Defendants have retained as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, pray for the following relief:

A. Certify this case as a class action on behalf of the Class defined above, appoint David Hunter as class representative, and appoint his counsel as class counsel;

B. Declare that Defendants' actions, as described herein, violate the Electronic Communications Privacy Act (18 U.S.C. §§ 2510–22), and the Stored Communications Act (18 U.S.C. §§ 2701, *et seq.*), and constitute unjust enrichment;

C. Award injunctive and other equitable relief as is necessary to protect the interests of the Plaintiff and the Class, including, *inter alia*: (i) an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein; (ii) requiring Defendants to delete their Superfish Root Certificate and Superfish Surveillance Software from infected computers and their recovery disks; and (iii) requiring Defendants to conspicuously and truthfully display the manner in which they collect and share data about monitored consumers.

D. Award damages, including:

      i. the greater of (a) the sum of actual damages suffered plus any profits Defendants earned through their unlawful conduct, and (b) the greater

of $100 per Class Member, per day of Defendant's violations, or

$10,000 per Class Member, pursuant to 18 U.S.C. § 2520(c)(2);

ii.     the greater of (a) the sum of actual damages suffered plus any profits

Defendants earned through their unlawful conduct, and (b) $1,000 per

Class Member; and

iii.    punitive damages where applicable, to Plaintiff and the Class in an

amount to be determined at trial;

E.     Award Plaintiff and the Class their reasonable litigation expenses and

attorneys' fees;

F.     Award Plaintiff and the Class pre- and post-judgment interest, to the extent

allowable; and

G.     Award such other and further relief as equity and justice may require.

### JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: February 23, 2015                    Respectfully Submitted,

**DAVID HUNTER**, individually and on
behalf of a class of similarly situated
individuals,

By: /s/ Samuel M. Lasser
        One of Plaintiff's Attorneys

Samuel M. Lasser (SBN – 252754)
slasser@edelson.com
Edelson PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.994.9930
Fax: 415.776.8047

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
J. Dominick Larry*
nlarry@edelson.com
Amir C. Missaghi*
amissaghi@edelson.com
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

Attorneys for Plaintiff and the Putative Class

Pick v. Lenovo (United States) Inc. et al
Assigned to: Chief Judge James C. Dever, III
Cause: 18:2511 Wiretapping

Date Filed: 02/24/2015
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Lukas Pick**

represented by **Dhamian A. Blue**
Blue Stephens & Fellers LLP
205 Fayetteville St., Suite 300
Raleigh, NC 27601
919-833-1931
Fax: 919-833-8009
Email: dab@bluestephens.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Lenovo (United States) Inc.**

**Defendant**

**Superfish Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 02/24/2015 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0417-3202504.), filed by Lucas Pick. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons, # 3 Proposed Summons) (Blue, Dhamian) (Entered: 02/24/2015) |
| 02/24/2015 | 2 | FINANCIAL DISCLOSURE STATEMENT by Lucas Pick (Blue, Dhamian) (Entered: 02/24/2015) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/25/2015 10:48:23 | | |
| **PACER Login:** | rg5089:4164300:4164056 | **Client Code:** | 000888-00004 |
| **Description:** | Docket Report | **Search Criteria:** | 5:15-cv-00068-D |

| Billable Pages: | 1 | Cost: | 0.10 |
|---|---|---|---|

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
Western Division

No. 5:15-cv-00068

| | |
|---|---|
| LUKAS PICK, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>LENOVO (UNITED STATES) INC. and SUPERFISH INC.,<br><br>    Defendants. | **CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>1) VIOLATION OF THE FEDERAL WIRETAP ACT;<br>2) TRESPASS TO CHATTELS;<br>3) VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT; AND<br>4) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lukas Pick ("Plaintiff"), individually and on behalf of a class of all those similarly situated, upon personal knowledge as to facts pertaining to Plaintiff and upon information and belief as to all other matters, based on the investigation of his counsel, against Lenovo (United States) Inc. ("Lenovo") and Superfish Inc. ("Superfish") (collectively, "Defendants") states as follows:

## I.    NATURE OF THE ACTION

1.    It is a rare thing for a market-leading corporation to engage in a systematic course of conduct described as a "catastrophe,"[1] "[r]eckless, careless, and appalling,"[2] and "astoundingly

---

[1]    Joseph Bonneau *et al.*, *Lenovo Is Breaking HTTPS Security on its Recent Laptops*, ELECTRONIC FRONTIER FOUNDATION (Feb. 19, 2015), https://www.eff.org/deeplinks/2015/02/further-evidence-lenovo-breaking-https-security-its-laptops.
[2]    David Auerback, *You Had One Job, Lenovo*, SLATE (Feb. 20, 2015 8:23 AM), http://www.slate.com/articles/technology/bitwise/2015/02/lenovo_superfish_scandal_why_it_s_one_of_the_worst_consumer_computing_screw.html.

stupid."[3] Rarer still, for a corporation to sink to a level where experts stress, "I cannot understate how evil this is."[4] Defendants shocked the technology world when, on February 18, 2015, it was discovered that Lenovo paired its consumer computers with dangerous and malicious software. Computer Security expert Marc Rogers succinctly summarized Defendants' conduct: "This is unbelievably ignorant and reckless of them. Its [sic] quite possibly the single worst thing I have seen a manufacturer do to its customer base."[5]

2. Defendants intentionally installed "adware" software, known as Superfish Visual Discovery ("Superfish Adware"), on Lenovo computers, thereby intercepting electronic communications sent or received by the computers, from January 1, 2014 through the present, in violation of the Federal Wiretap Act, 18 U.S.C. §2511, *et seq.*, and other related statutes. Lenovo secretly loaded their computers with Superfish Adware, without the consent of purchasing consumers (the "Class"), and subsequently hijacked web sessions, invaded the privacy of the Class, and exposed them to security risks.

3. The Superfish Adware impacted the Class in two significant ways. First, the adware intercepted web sessions and scanned websites that users viewed, later injecting unwanted advertisements in web pages based on the information that was intercepted. Second, and more nefariously, Superfish Adware installed a self-signed root certificate, thereby granting Superfish Adware the same internal security clearance as the software in the computer's operating system. This self-signed root allows Superfish Adware to intercept and decrypt secure requests from HyperText Transfer Protocol Secure ("HTTPS") websites, thereby negating the security features of

---

[3] *Lenovo In Denial: Insists There's No Security Problem With Superfish -- Which Is Very, Very Wrong.*, TECHDIRT (Feb. 19, 2015), https://www.techdirt.com/articles/20150219/10124430071/big-lenono-lenovo-massively-compromises-customers-security-brushes-it-off-as-no-biggie.shtml.
[4] Marc Rogers, *Lenovo installs adware on customer laptops and compromises ALL SSL.*, MARC ROGERS.ORG BLOG (Feb. 19, 2015) http://marcrogers.org/2015/02/19/lenovo-installs-adware-on-customer-laptops-and-compromises-all-ssl/.
[5] *Id.*

many banking, remote desktop, tax-filing, and government websites such as the IRS. Even the filing website for this Court uses this HTTPS protocol to enhance the security and integrity of filing.

4.　These HTTPS websites use special digital certificates to secure the traffic between users and websites. Lenovo allowed Superfish to install adware that would re-issue those certificates locally on the computer and then "spoof" the real certificate, so they can intercept the once-secure website connection. This is known as a "man-in-the-middle" attack and is viewed as a form of malicious cyber-attack. Most egregiously, Superfish Adware used a simplistic password encryption that some computer experts were able to break in mere minutes, enabling them to spy on any other infected user in the same network and steal their most valuable personal information.[6]

5.　Defendants' use of Superfish Adware to inject advertisements in the Internet traffic of the Class has been called "a massive security catastrophe for its users" and "catastrophically irresponsible."[7] Others have noted that "[Superfish Adware] is particularly naughty. People have shown that it can basically intercept everything and it could be really misused."[8] Ken Westin, a senior analyst at cyber security company Tripwire, agreed, adding: "If the findings are true and Lenovo is installing their own self-signed certificates, they have not only betrayed their customers' trust, but also put them at increased risk."[9]

6.　On February 19, 2015, as public uproar grew deafening, Lenovo confessed to their intentional use of Superfish Adware to inject advertisements into Internet traffic, and Lenovo Chief Technological Officer ("CTO") Peter Hortensius ("Hortensius") admitted, "We messed up badly

---

[6]　Robert Graham, *Extracting the SuperFish certificate*, ERRATA SECURITY BLOG (Feb. 19, 2015) http://blog.erratasec.com/2015/02/extracting-superfish-certificate.html#.VOaDPfnF9fy.

[7]　Joseph Bonneau *et al.*, *supra* note 1.

[8]　Jane Wakefield, *Lenovo taken to task over 'malicious' adware*, BCC (Feb. 19, 2015 7:30 ET) http://www.bbc.com/news/technology-31533028.

[9]　*Id.*

here."[10] He also admitted, in an interview with *The Wall Street Journal*, that it was obvious that Lenovo did not do their due diligence by using Superfish Adware.[11]

7. Defendants intentionally released Superfish Adware upon their unsuspecting consumers, trying to make money by intercepting their Internet communication in order to create customized advertisements, but their greedy desire to intercept both secured and unsecured Internet communication triggered public outrage. Defendants forced Class members into an indefensible position: they could no longer trust their secured Internet connections, but, instead, must "trust that this software which has compromised their secure connections is not tampering with the content, or stealing sensitive data such as usernames and passwords," and must further hope that no third party would take advantage of this vulnerability for their own malicious purposes.[12] While operating on Class members' computers, Superfish Adware also slowed down Internet speeds, used limited Internet bandwidth, filled limited hard drive space, and also slowed down system performance by using limited computer resources to process data requests and transfers.

8. As a result of Defendants' unlawful and unfair conduct, Plaintiff, on behalf of himself and members of the Class, brings this action to recover statutory damages, punitive damages, equitable relief, and attorneys' fees and costs under 18 U.S.C. §2511, *et seq.*, Cal. Bus. & Prof. Code §17200, *et seq.*, N.C. Gen. Stat. §75-1.1, *et seq.*, and for Common Law Trespass to Chattels.

---

[10] Jordan Robertson, *Lenovo Apologizes After It 'Messed Up' With Tracking Software*, BLOOMBERG (Feb. 19, 2015 5:03 PM EST) http://www.bloomberg.com/news/articles/2015-02-19/lenovo-says-it-messed-up-by-preloading-web-tracking-software.

[11] Shira Ovide, *Lenovo CTO: We're Working to Wipe Superfish App Off of PCs*, WALL ST. J. L. BLOG (FEB. 19, 2015 3:07 PM ET) http://blogs.wsj.com/digits/2015/02/19/lenovo-cto-were-working-to-wipe-superfish-app-off-of-pcs/.

[12] Graham Cluley, *What You Need to Know About Superfish, The Man-in-the-Middle Adware Installed on Lenovo PCs*, TRIPWIRE (Feb. 19, 2015) http://www.tripwire.com/state-of-security/security-data-protection/superfish-lenovo-adware-faq/.

## II.    JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. §1331 because Plaintiff has alleged the violation of a federal statute, 18 U.S.C. §2511, *et seq*. This Court may also exercise supplemental jurisdiction over the state law claims pled below.

10.    This Court has personal jurisdiction over Defendants because they are authorized to do business and in fact do business in this District, Lenovo has its headquarters in this District, Defendants have sufficient minimum contacts with this District, and each Defendant otherwise intentionally avails itself of the markets in this state through the promotion, marketing, and sale of Lenovo products infected with Superfish Adware in this District, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.    Pursuant to 28 U.S.C. §1391, venue is proper in this District because Lenovo's headquarters is located here, Defendants conduct business in this District, and most events giving rise to Plaintiff's claims arise here.

## III.    PARTIES

### A.    Plaintiff

12.    Plaintiff Lukas Pick is a resident of San Diego County, California. Plaintiff purchased a Lenovo Yoga 2 Pro from Lenovo during the Class Period as defined herein. Plaintiff used the computer for emails, personal Internet browsing, Internet banking, paying bills, social networking, and completing government forms. Plaintiff did not know that Defendants collected or intercepted his data, nor did Plaintiff authorize Defendants to do so.

### B.    Defendants

13.    Defendant Lenovo (United States) Inc. is a Delaware corporation with its headquarters located in Morrisville, North Carolina. Lenovo is the American subsidiary of Lenovo Group Limited, a Chinese corporation. Lenovo researches, manufactures, and sells personal

computers, business computers, smartphones, tablets, servers, computer hardware, IT management software, televisions, and wearable electronic devices. Since acquiring IBM's personal computer business in 2005, Lenovo has grown to be the largest retailer worldwide in both personal and business computers. For its fiscal year 2013/2014, Lenovo had nearly $39 billion in revenue, 79% of which was derived from the sale of laptop and desktop computers.

14.     Defendant Superfish is a Delaware corporation headquartered in Palo Alto, California. Superfish produces both visual search programs and adware. Superfish has produced both software applications that are consensually obtained by consumers, and other adware applications that are surreptitiously downloaded or located within computer hardware. Superfish was founded by its present Chief Executive Officer ("CEO"), Adi Pinhas, a former research analyst at Verint[13] and a co-founder of Vigilant Technologies. Both companies are affiliated closely with military intelligence and surveillance.[14]

## IV.     FACTUAL STATEMENT

### A.     Internet Communication and Encryption

15.     HyperText Transfer Protocol ("HTTP") is the uniform procedure for exchanging information on the Internet, with standardized sets of commands and codes that all websites follow in order to exchange information with each other and with users. HTTP lacks thorough security features, so there is little to stop an interested party from intercepting electronic communications on the Internet.

---

[13]   Verint, founded by ex-intelligence officers, specializes in surveillance and eavesdropping technology. James Bamford, *Shady Companies With Ties to Israel Wiretap the U.S. for the NSA*, WIRED (Apr. 3, 2012 6:30 AM) http://www.wired.com/2012/04/shady-companies-nsa.
[14]   Thomas Fox-Brewster, *Superfish: A History Of Malware Complaints And International Surveillance*, FORBES (Feb. 19, 2015 10:37 AM) http://www.forbes.com/sites/thomasbrewster/2015/02/19/superfish-history-of-malware-and-surveillance/.

16.     In order to combat this interception of information, HTTPS was created. HTTPS built upon HTTP by adding a secure link between a server (such as a website) and a client (such as a typical user on the Internet). This link is encrypted by a special and unique security certificate called an SSL Certificate, akin to a password. Without this certificate, any data that is transferred would appear to be incoherent.

17.     The following is an example of the difference between an unencrypted and an encrypted message:[15]

| | |
|---|---|
| Dear Tim,....pl ease find our r evenues and pro fit statement f or the last bus iness year atta ched. This is c onfidential inf ormation.....Be st regards..█ | OstkgNGafvEYc3V w1JDkv4PVJ+Lk1H FhSmZgQ2hcjtFF1 ZvkoFu+y3fAUd4L N/q6TrR8YSnL81F idsi16CrN7nMAgB 36mBVL2gL4hYYGh C+zO6K+6PJ1WEZX tMONYqZj3PE1whz 8UIZCUsCpnEB |

18.     This exchange of codes and the encryption and decryption of transferred data occurs behind the scenes whenever a user accesses a website that places particular emphasis on security and privacy. Examples of such websites include online banking, government websites, social networking websites, remote work systems, and even the filing website for this Court.

19.     HTTPS provides security sufficient to protect most Internet communication, but it is not invincible. One of the most sophisticated methods to intercept HTTPS is known as a "man-in-the-middle attack," in which a third party attacker forces their way in between the secure connection of the server and the user. If the attacker is able to intercept the secure connection, they are then able to replace the legitimate SSL Certificate with a new, forged SSL Certificate, fooling the user and server into accepting and trusting the connection. With these parties suddenly fooled, their

---

[15]   HTTPS and HTTP Difference, INSTANT SSL, https://www.instantssl.com/https-tutorials/what-is-https.html (last visited Feb. 23, 2015).

communications can be manipulated so that the attacker can view the private data without the aforementioned encryption.[16]



20.     A successful man-in-the-middle attack would enable an attacker to have complete and unrestricted access to an affected user's banking sites, personal data, or private messages.[17]

**B.     The Insidious Effects of Adware**

21.     Internet advertising is a massive industry that continues to rapidly grow, and capitalizing on that opportunity were many companies that used software known as "adware," also commonly described as a type of malware, short for "malicious software."[18] In contrast to standard Internet advertising, adware is distinguished for its negative effect on consumers. Certain types of adware monitor electronic communication on the Internet, reviewing the actions, searches, and preferences of consumers for later use in targeted advertisement. Other adware directly injects advertisements into a user's Internet websites, and more complicated adware performs both functions simultaneously.

---

[16]   Graham Cluley, *supra* note 12.
[17]   Marc Rogers, *supra* note 4.
[18]   *Id.*

22.     Adware and its ilk have not been formally defined by the Federal Trade Commission, but many view the crucial defining characteristics to be the lack of consent and the invasion of privacy that accompany adware. Most users subjected to adware either did not consent to the installation of the program, or the consent was obtained through surreptitious means such as hiding adware within the installation of another computer program. Typical methods of obtaining consent can include mandatory bundling of adware with desired programs, or rearranging the locations of buttons during a program installation to increase the likelihood of accidental acceptance.[19]

23.     Sophisticated adware, once installed, performs a series of actions: the adware intercepts a user's actions on the Internet, monitors that activity, submits that information to an external server, processes that information, and then either uses that information to inject special advertisements into websites or sells that information to yet another company. Even if detected, "[o]ften, Adware programs do not have any uninstall procedures and they can use technologies that are similar to those used by viruses to penetrate your computer and run unnoticed."[20]

24.     In addition to the irritation provided by injected advertisements and the privacy invasion of adware's Internet traffic interception, adware also negatively impacts the performance of computers. Adware occupies storage space in the limited storage space of a computer's hard drive, and uses some of the computer's limited processing power to execute its commands. Finally, when adware contacts outside servers to transfer intercepted data for analysis and processing, this uses some of the limited Internet bandwidth available to consumers. Injecting additional advertisements into websites similarly increases the Internet traffic on a user's computer, thus slowing overall

---

[19]   Barry Leonard, *Spyware Workshop: Monitoring Software on Your Personal Computer: Spyware, Adware, and Other Software: Report of the Federal Trade Commission Staff,* Diane Publishing Co. (Mar. 2005) http://books.google.co.uk/books?id=ookz_2ONmwgC&printsec=frontcover&source=gbs_ge_summary_r&ca d=0#v=onepage&q&f=false.
[20]   Adware, KASPERSKY LAB, http://usa.kaspersky.com/internet-security-center/threats/adware (last visited Feb. 23, 2015).

operation. These actions have the cumulative effect of slowing the computer's operation, depriving its user of the full effective use of the computer.

25.     Superfish has developed and distributed visual search applications since it was founded in 2006 by veterans of the surveillance and eavesdropping industry. However, "Superfish . . . has been criticised by users the world over since its inception in 2006" for its invasive adware and the virus-like characteristics of their adware.[21]   Window Shopper, another adware program developed and distributed by Superfish, has yielded frequent comparisons to viruses, with many users confused by its appearance on their computers and equally dismayed by their difficulty removing Window Shopper.[22]

26.     Consistent with their prior practices, Superfish developed and distributed Superfish Visual Discovery adware. This adware functions by scanning websites viewed by users, searching for images on the website, analyzing the images on an external server, and then returning to the website to inject new advertisements of other products provided by Superfish affiliates.[23] Superfish would be paid by retailers in exchange for these advertisement views, typically on a per-click or per-view basis. This compensation system is typical of Internet advertising and incentivizes adware producers to maximize clicks and views.

27.     To increase user exposure, Superfish made the unprecedented decision to target both HTTP *and* HTTPS communication, both for the purposes of injecting advertisements and for the purposes of data interception and analysis. Superfish Adware accomplished this by using man-in-the-middle attacks to replace SSL certificates with their own version of the Certificates.

28.     Thus, *if nothing goes wrong*, Superfish Adware: a) hijacks legitimate connections; b) monitors user activity; c) collects personal information and uploads it to its servers; d) injects

---

[21]   Thomas Fox-Brewster, *supra* note 14.
[22]   *Id.*
[23]   Jane Wakefield, *supra* note 8.

advertising in legitimate pages; e) displays pop-ups with advertising software; f) uses man-in-the-middle attack techniques to crack open secure connections; and g) presents users with its own fake certificate instead of the legitimate site's certificate.[24]

29.     The following is an example of a "spoofed" SSL Certificate for the Bank of America website, issued by Superfish Adware, proving the use of man-in-the-middle attacks:



**C.     Lenovo Surreptitiously Installed Superfish Adware on Its Computers**

30.     At some point in 2014, Lenovo partnered with Superfish to install the aforementioned Superfish Adware on their consumer computers. Lenovo then began pre-installing Superfish Adware on Lenovo computers before shipping them to consumers. This enabled Defendants to grant Superfish Adware the same security clearance as operating system software without needing to obtain purchaser consent or without needing to coerce or deceptively obtain consent. When Plaintiff and Class members purchased the computers, Superfish Adware was *simply there*, but hidden.

31.     Although the precise date that Defendants started this practice can only be approximated by Plaintiff, complaints against Superfish Adware emerged in September 2014 on

---

[24]     Marc Rogers, *supra* note 4.

Lenovo websites.[25] Even before realizing the full scope of Superfish Adware's danger, Lenovo customers were furious, drawing comparisons to computer viruses and noting that the act of pre-loading adware was unprecedented among computer manufacturers.

32.     Over the next several months, tech-savvy Lenovo customers raised their concerns repeatedly on Lenovo forums, but these complaints were ignored by Defendants.[26] Finally, at least five months after the initial complaints flooded the Lenovo forums, Lenovo responded. A Lenovo forum administrator, Mark Hopkins, stated that "[d]ue to some issues . . . we have temporarily removed Superfish [Adware] from our consumer systems until such time as Superfish [Adware] is able to provide a software build that addresses these issues."[27] He attempted damage control, emphasizing that Superfish Adware was not *too* invasive, and claimed that regardless of the level of invasion, all Lenovo customers consented to the adware infection.[28] This appeared to quell some of the purchaser anger, until Google Chrome security engineer Chris Palmer ("Palmer") discovered the full scope of Superfish Adware's danger, and the scale of Lenovo's betrayal of its customers was revealed.

### D.    Defendants' Practices Prompt Public Outrage

33.     Following Twitter conversation about Defendants' use of Superfish Adware, Palmer purchased a Lenovo Yoga 2 Pro to investigate the Superfish Adware. He quickly discovered that Superfish Adware injected itself in HTTPS connections and replaced SSL Certificates, thus compromising the security and safety of *every single secure website* accessed by Lenovo's infected customers. Superfish Adware was able to use this attack to intercept all private traffic and then use it

---

[25]    Lenovo Community, LENOVO, https://forums.lenovo.com/t5/Lenovo-P-Y-and-Z-series/Lenovo-Pre-instaling-adware-spam-Superfish-powerd-by/td-p/1726839 (last visited Feb. 23, 2015).
[26]    Lenovo Community, LENOVO, https://forums.lenovo.com/t5/Security-Malware/Potentially-Unwanted-Program-Superfish-VisualDiscovery/m-p/1860408/highlight/true#M1697 (last visited Feb. 23, 2015).
[27]    Lenovo Community, LENOVO, https://forums.lenovo.com/t5/Lenovo-P-Y-and-Z-series/Lenovo-Pre-instaling-adware-spam-Superfish-powerd-by/td-p/1726839/page/3 (last visited Feb. 23, 2015).
[28]    *Id.*

to push ads through to these secure websites.  Technology websites, blogs, and cyber security experts immediately began investigating Superfish Adware in greater detail.

34.     Cyber security experts soon came to a startling revelation: ***every single computer infected by Superfish Adware could be compromised by the same password.***  The CEO of security firm Errata Security, Robert Graham, cracked the Superfish Adware password in mere minutes to demonstrate the danger of Superfish Adware's security breach.[29]  Anyone with the password could suddenly wreak havoc on any and all secure information held by Lenovo users on the same network as him.  Because Superfish Adware manipulated the "root" of a computer's security certificates, the single most important computer security feature available to consumers, the intrusive power afforded to Superfish Adware was nearly limitless.  This same power could be wielded by anyone who held the Superfish Adware password and left infected computers at the mercy of chance.  Any competent hacker could obtain all encrypted electronic communication from Lenovo customers, steal passwords, display unwanted web pages, steal encryption keys, and control the user's entire digital experience, all completely undetected.[30]

35.     As Defendants' malicious business practices unraveled, Lenovo released an official statement downplaying security concerns and claiming that Superfish Adware was used "to improve the shopping experience."[31]  Lenovo added that they shut down the servers Superfish used to run Superfish Adware.  Lenovo CTO Hortensius, in an interview with *The Wall Street Journal*, again tried to downplay these risks, vaguely acknowledging a problem and stating "We're not trying to get

---

[29]   Robert Graham, supra note 6.
[30]   Nicole Perlroth, *Lenovo and Superfish Penetrate the Heart of a Computer's Security*, NY TIMES BLOG (FEB. 22, 2015 5:30 AM), http://bits.blogs.nytimes.com/2015/02/22/lenovo-and-superfish-penetrate-the-heart-of-a-computers-security/?_r=0.
[31]   *Lenovo Statement on Superfish*, LENOVO (Feb. 19, 2015) http://news.lenovo.com/article_display.cfm?article_id=1929.

13

into an argument with the security guys. They're dealing with theoretical concerns."[32] When asked by *The Wall Street Journal*, "Do you do due diligence on software you pre-install on Lenovo machines to make sure it's secure?" Hortensius admitted, "Obviously in this case we didn't do enough."[33]

36. After reviewing the seriousness of Superfish Adware's threat to computer security, the United States Department of Homeland Security urged immediate removal of the adware to protect users,[34] and Microsoft acted swiftly to classify Superfish Adware as a virus and delete it from infected computers.[35] In spite of the overwhelming consensus of cyber security experts, technology firms, and government agencies, Superfish continued to blame "misinformation" and point blame towards the media, downplaying the risk facing Lenovo customers.[36]

37. Ultimately, Superfish Adware was revealed to have three glaring problems that invaded the privacy of Class members and eroded the security of their electronic communication: (a) Superfish Adware intercepted Internet traffic surreptitiously, analyzed the data on external servers, and then injected advertisements in ordinary HTTP websites without Class member consent; (b) Superfish Adware intercepted Internet traffic surreptitiously, analyzed the data on external servers, and then injected advertisements into private HTTPS websites without Class member consent; and (c) Superfish Adware exposed Class members' computers to foreign attack, data interception, viruses, and data theft through their use of hacker "man-in-the-middle" attacks to undermine the

---

[32] Shira Ovide, *supra* note 11.

[33] *Id.*

[34] *Komodia Redirector with SSL Digestor fails to properly validate SSL and installs non-unique root CA certificates and private keys*, VULNERABILITY NOTES DATABASE (Revised Feb. 23, 2015) http://www.kb.cert.org/vuls/id/529496.

[35] Brad Chacos, *Bravo! Windows Defender, McAfee updates fully remove Lenovo's dangerous Superfish adware*, PCWORLD (Feb. 20, 2015 5:06 PM), http://www.pcworld.com/article/2886827/bravo-windows-defender-update-fully-removes-lenovos-dangerous-superfish-malware.html.

[36] Dan Goodin, *Superfish doubles down, says HTTPS-busting adware poses no security risk*, ARS TECHNICA (Feb. 20, 2015 4:20 PM), http://arstechnica.com/security/2015/02/superfish-doubles-down-says-https-busting-adware-poses-no-security-risk/.

security systems in Lenovo computers. This was all done with Lenovo's consent, and their callous disregard for their consumers has put the electronic information security of millions of Class members at risk.

## V.    CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this action as a class action pursuant to Rules 23(a) - (b) of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated as members of the proposed National Class, California Sub-Class, and North Carolina Sub-Class (the "Class"), defined as:

> National Class: All persons and entities in the United States that purchased the following Lenovo computers: G410, G510, G710, G40-70, G50-70, G40-30, G50-30, G40-45, G50-45, U330P, U430P, U330Touch, U430Touch, U530Touch, Y430P, Y40-70, Y50-70, Z40-75, Z50-75, Z40-70, Z50-70, S310, S410, S40-70, S415, S415Touch, S20-30, S20-30Touch, Flex2 14D, Flex2 15D, Flex2 14, Flex2 15, Flex2 14(BTM), Flex2 15(BTM), Flex 10, MIIX2-8, MIIX2-10, MIIX2-11, YOGA2Pro-13, YOGA2-13, YOGA2-11BTM, YOGA2-11HSW, and E10-30 from January 1, 2014 through the present, inclusive ("Class Period").

> North Carolina Sub-Class: All persons and entities in North Carolina that purchased the following Lenovo computers: G410, G510, G710, G40-70, G50-70, G40-30, G50-30, G40-45, G50-45, U330P, U430P, U330Touch, U430Touch, U530Touch, Y430P, Y40-70, Y50-70, Z40-75, Z50-75, Z40-70, Z50-70, S310, S410, S40-70, S415, S415Touch, S20-30, S20-30Touch, Flex2 14D, Flex2 15D, Flex2 14, Flex2 15, Flex2 14(BTM), Flex2 15(BTM), Flex 10, MIIX2-8, MIIX2-10, MIIX2-11, YOGA2Pro-13, YOGA2-13, YOGA2-11BTM, YOGA2-11HSW, and E10-30 from January 1, 2014 through the present, inclusive ("Class Period").

> California Sub-Class: All persons and entities in California that purchased the following Lenovo computers: G410, G510, G710, G40-70, G50-70, G40-30, G50-30, G40-45, G50-45, U330P, U430P, U330Touch, U430Touch, U530Touch, Y430P, Y40-70, Y50-70, Z40-75, Z50-75, Z40-70, Z50-70, S310, S410, S40-70, S415, S415Touch, S20-30, S20-30Touch, Flex2 14D, Flex2 15D, Flex2 14, Flex2 15, Flex2 14(BTM), Flex2 15(BTM), Flex 10, MIIX2-8, MIIX2-10, MIIX2-11, YOGA2Pro-13, YOGA2-13, YOGA2-

11BTM, YOGA2-11HSW, and E10-30 from January 1, 2014 through
the present, inclusive ("Class Period").

39.     Excluded from the proposed Class are Defendants, their officers, directors, agents,

trustees, parents, children, corporations, trusts, representatives, employees, principals, servants,

partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or

other persons or entities related to or affiliated with Defendants and/or their officers and/or directors,

or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

40.     Subject to additional information obtained through further investigation and

discovery, the foregoing definitions may be expanded or narrowed by amendment or amended

consolidated complaint.

41.     **Numerosity**. The members of the Class are so numerous that their individual joinder

is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class

contains hundreds of thousands of members, potentially numbering in the millions. The precise

number of Class members is unknown to Plaintiff, but that number is knowable to Defendants, and

that number greatly exceeds the number to make joinder possible.

42.     **Existence and Predominance of Common Questions of Law and Fact**. Common

questions of law and fact exist as to all members of the Class and predominate over any questions

affecting only individual Class members. These common legal and factual questions include, but are

not limited to, the following:

A.      whether Lenovo manufactured, advertised, and/or sold computers that
contained Superfish Adware;

B.      whether Defendants intercepted electronic communication of Class members;

C.      whether Defendants violated 18 U.S.C. §2511, *et seq.* by intentionally
intercepting Class members' electronic communications through the use of Superfish Adware;

D.      whether Defendants engaged in unlawful or unfair practices in violation of N.C. Gen. Stat §75-1.1, *et seq.*;

E.      whether Defendants engaged in unlawful or unfair practices in violation of Cal. Bus. & Prof. Code §17200, *et seq.*;

F.      whether Defendants trespassed upon the property of Class members through the installation of Superfish Adware on Lenovo computers;

G.      Whether Defendants trespassed upon the property of Class members through Superfish Adware's use of man-in-the-middle attacks on the security features of Lenovo computers;

H.      whether Class members are entitled to, and the appropriate amount of, actual damages, statutory damages, punitive damages, and any other monetary relief; and

I.      whether Class members are entitled to, and the appropriate types of equitable or declaratory relief under 18 U.S.C. §2520.

43.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class in that Lenovo manufactured and sold a computer to Plaintiff, like all other members of the Class. Plaintiff and all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the Federal Wiretap Act in that their electronic communications and Internet use was intercepted by Defendants through the Superfish Adware program. Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other Class members.

44.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

45.    **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

46.    The claims asserted herein are applicable to all consumers throughout the United States who purchased Lenovo computers.

47.    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

48.    Adequate notice can be given to Class members directly using information maintained in Defendants' records or through notice by publication.

## VI.   CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### VIOLATION OF 18 U.S.C. SECTION 2511, *ET SEQ.*

#### (On Behalf of Plaintiff and the National Class)

49.     Plaintiff incorporates the previous paragraphs of this Complaint as if fully set forth herein.

50.     Beginning in 2014, Lenovo intentionally intercepted or procured Superfish to intercept electronic communications of members of the National Class in violation of 18 U.S.C. §2511, *et seq.*

51.     The electronic communications intercepted by Defendants were intercepted without the consent of members of the National Class.  Defendants also intercepted Internet traffic that was particularly private and secured by HTTPS encryption.

52.     Defendants used the Superfish Adware program to both surreptitiously intercept electronic communication and to create fake security certificates for the purposes of intercepting encrypted electronic communication.

53.     Pursuant to 18 U.S.C. §2520, Plaintiff and National Class members are each entitled to the following:

A.      statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000 per National Class member;

B.      punitive damages in an amount to be determined by jury;

C.      equitable, declaratory, and/or injunctive relief as is deemed appropriate; and

D.      reasonable attorneys' fees and other costs.

## SECOND CLAIM FOR RELIEF

## TRESPASS TO CHATTELS

### (On Behalf of Plaintiff and the National Class)

54.     Plaintiff incorporates the previous paragraphs of this Complaint as if fully set forth herein.

55.     At all times during the Class Period, Lenovo sold computers to members of the Class surreptitiously infected with Superfish Adware, without the knowledge or consent of Plaintiff or National Class members.

56.     Plaintiff and the National Class maintained actual or constructive possession of their respective computers after they were purchased from Lenovo.

57.     Defendants intentionally interfered with Plaintiff and National Class members' use and enjoyment of their computers by using Superfish Adware to spy on Internet activity, inject advertisements into web sites, use system resources, and manipulate security protocols, ultimately exposing Plaintiff and the National Class to significant risks of data theft and malicious attack.

58.     As a direct result of Defendants' conduct, Plaintiff and the National Class suffered harm and impairment of their property.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF N.C. GEN. STAT. SECTION 75-1.1, *ET SEQ.*

### (On Behalf of Plaintiff and the North Carolina Sub-Class)

59.     Plaintiff incorporates the previous paragraphs of this Complaint as if fully set forth herein.

60.     The conduct of Lenovo, with its headquarters in North Carolina, and Superfish, as set forth in the paragraphs above, constitutes one or more acts of unfair competition or deceptive

practices within the meaning of North Carolina Unfair and Deceptive Trade Practices Act §75-1.1, *et seq.*

61.     Defendants' deceptive and surreptitious installation of Superfish Adware without consent and continued violations of privacy and computer security are in and effect commerce, and are unethical, oppressive, unfair, and injurious to Plaintiff and the North Carolina Sub-Class.

62.     The practices engaged in by Defendants are unlawful because they violate the Federal Wiretap Act and/or because they constitute invasion of North Carolina Sub-Class members' legally protected right to privacy under the North Carolina Constitution and other applicable law.

63.     Plaintiff and the North Carolina Sub-Class have suffered injury in fact and damage to property as a result of the unfair and unlawful business practices.

64.     Pursuant to §75-16 of the North Carolina Unfair and Deceptive Trade Practices Act, judgment shall be treble the amount fixed by verdict.

65.     Pursuant to §75-16.1 of the North Carolina Unfair and Deceptive Trade Practices Act, reasonable attorneys' fee should be awarded as part of the Court costs.

**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF CAL. BUS. & PROF. CODE SECTION 17200, *ET SEQ.***

**(On Behalf of Plaintiff and the California Sub-Class)**

66.     Plaintiff incorporates the previous paragraphs of this Complaint as if fully set forth herein.

67.     Defendants' acts and practices, as alleged in this Complaint, constitute unlawful, unfair, and/or fraudulent business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.*

68.     Defendants' deceptive and surreptitious installation of Superfish Adware without consent and continued violations of privacy and computer security are unethical, unfair, and injurious to Plaintiff and the California Sub-Class.

69.     The practices engaged in by Defendants are unlawful because they violate the Federal Wiretap Act, the Consumer Protection Against Computer Spyware Act, Cal. Bus. & Prof. Code §§22947.2-22947.4, California Penal Code §502, and/or because they constitute invasion of California Sub-Class members' legally protected right to privacy under the California Constitution and other applicable law.

70.     Defendants' surreptitious installation and use of Superfish Adware are fraudulent business practices because they are likely to deceive, and did in fact deceive consumers acting reasonably under the circumstances.

71.     Plaintiff and the California Sub-Class have suffered injury in fact and damage to property as a result of the unfair and unlawful business practices.

72.     Plaintiff and the California Sub-Class are entitled to equitable relief including restitution of money paid, disgorgement of all profits accrued to Defendants because of their unfair, fraudulent, and deceptive practices, attorneys' fees and costs, and declaratory relief.

## VII.    PRAYER FOR RELIEF

WHEREFORE Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendants as follows:

A.      Certification of this action as a class action and appointment of Plaintiff as the Class representative and the undersigned counsel as Class counsel;

B.      An Order declaring that Defendants' conduct has violated 18 U.S.C. §2511, *et seq.*;

C.    An Order awarding Plaintiff and National Class members injunctive relief, declaratory relief, statutory damages, and punitive damages against Defendants as provided in 18 U.S.C. §2520;

D.    An Order declaring the actions complained of herein to be in violation of the North Carolina Unfair and Deceptive Trade Practices Act, §75-1.1, *et seq.*;

E.    An Order declaring the actions complained of herein to be in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.*;

E.    An Order declaring that Defendants trespassed upon the chattels of the Class;

F.    An Order awarding Plaintiff and North Carolina Sub-Class members actual damages, punitive damages, and/or treble damages against Defendants;

G.    An Order awarding Plaintiff and California Sub-Class members restitution and disgorgement of Defendants' profits;

H.    Pre and post-judgment interest;

I.    Reasonable attorneys' fees and costs; and

J.    For such other and further relief as this Court finds just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, hereby demand a jury trial on all issues so triable.

DATED: February 24, 2015                          Respectfully submitted,

By:    */s/ Dhamian A. Blue*
Dhamian A. Blue
Daniel T. Blue, Jr.
Daniel T. Blue, III
Attorneys for Plaintiff
BLUE STEPHENS & FELLERS LLP
205 Fayetteville Street, Suite 300
Raleigh, North Carolina 27601
Telephone:  (919) 833-1931

Fax: (919) 833-8009
E-mail:dab@bluestephens.com
State Bar No. 31405 (DAB)
State Bar No. 5510 (DTB, Jr.)
State Bar No. 27720 (DTB3)

Stuart A. Davidson
Mark J. Dearman
Holly W. Kimmel
Alex D. Kruzyk
ROBBINS GELLER RUDMAN
  & DOWD LLP
120 East Palmetto Park Rd.
  Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3363

Carmen A. Medici
ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

IN RE: LENOVO ADWARE LITIGATION    /    MDL DOCKET NO._____

## PROOF OF SERVICE

I hereby certify than on February 25, 2015, I electronically filed the foregoing:   1)
Motion for Transfer of Actions to the Eastern District of North Carolina Pursuant to 28 U.S.C.
Section 1407 for Consolidated or Coordinated Pretrial Proceedings; 2) Memorandum of Law in
Support of Motion for Transfer of Actions to the Eastern District Court of North Carolina
Pursuant to 28 U.S.C. Section 1407 for Consolidated or Coordinated Pretrial Proceedings; 3)
Schedule of Actions with Exhibit 1, and 4) this Proof of Service with the Clerk of the Court
using the CM/ECF system which will serve notification of such filing to the e-mail of all counsel
of record in this action.  Additionally, a copy of the foregoing will be served by U.S. Mail to the
following:

Clerk, Southern District of California
San Diego, CA

Clerk, Northern District of California
San Jose, CA

Clerk, Eastern District of North Carolina
Raleigh, NC


**Defendant Lenovo (United States) Inc. (All
Actions)**

LENOVO (UNITED STATES) INC.
Registered Agent:
CT Corporation System
150 Fayetteville St., Box 1011
Raleigh, NC 27601-2957

LENOVO (UNITED STATES) INC.
1009 Think Place
Morrisville NC 27560-9002


**Defendant Lenovo Group Limited (Sterling International Action)**

Lenovo Group Limited
1009 Think Place
Morrisville, N.C. 27560


**Defendant Superfish Inc. (All Actions)**

SUPERFISH INC.
Registered Agent:
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Superfish, Inc.
2595 East Bayshore Rd.
Suite #150
Palo Alto, CA 94303


Alexander M. Schack, Esq.,
Natasha A. Naraghi, Esq.,
LAW OFFICES OF ALEXANDER M.
SCHACK
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (858) 485-6535
Fax: (858) 485-0608
alexschack@amslawoffice.com
natashanaraghi@amslawoffice.com


Geoffrey J. Spreter, Esq.,
SPRETER LEGAL SERVICES, APC
601 3rd Street

Coronado, CA 92118
Telephone: (619) 865-7986
spreterlegalservices@gmail.com

E. Elliot Adler, Esq.,
ADLER LAW GROUP, APLC
402 W. Broadway, Suite 860
San Diego, CA 92101
Telelephone: (619) 531-8700
Fax: (619) 342-9600
elliotadler@gmail.com

**Counsel for Plaintiff: Jennifer N. Bennett**
     S.D. California, No. 3:15cv368

Jonathan K. Levine
Elizabeth C. Pritzker
Shiho Yamamoto
PRITZKER LEVINE LLP
180 Grand Avenue, Suite 1390
Oakland, California 94612
Telephone: (415) 692-0772
Fax: (415) 366-6110
jkl@pritzkerlevine.com
ecp@pritzkerlevine.com
sy@pritzkerlevine.com

John A. Kehoe
PRITZKER LEVINE LLP
41 Madison Avenue, 31st Floor
New York, New York 10010
Telephone: (917) 525-2190
Fax: (917) 525-2184
jak@pritzkerlevine.com

**Counsel for Plaintiff: Sterling International**
     **Consulting Group**
     N.D. California, No. 5:15-cv-00807-RMW

Samuel M. Lasser
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Telephone: (415) 994-9930

Fax: (415) 776-8047
slasser@edelson.com

Rafey S. Balabanian
Benjamin H. Richman
J. Dominick Larry
Amir C. Missaghi
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378
rbalabanian@edelson.com
brichman@edelson.com
nlarry@edelson.com
amissaghi@edelson.com

**Counsel for Plaintiff: David Hunter**
N.D. California, No. 5:15-cv-00819


DATED:  February 25, 2015

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
MARK DEARMAN
HOLLY W. KIMMEL
ALEX D. KRUZYK


*s/ Mark Dearman*
MARK DEARMAN

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
hkimmel@rgrdlaw.com
akruzyk@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

BLUE STEPHENS & FELLERS LLP
DHAMIAN A. BLUE
DANIEL T. BLUE, JR.
DANIEL T. BLUE, III
205 Fayetteville Street, Suite 300
Raleigh, North Carolina 27601
Telephone: 919/833-1931
919/833-8009 (fax)
dab@bluestephens.com


*Attorneys for Plaintiff Lukas Pick*