Alexander M. Schack, Esq., Bar No. 99126
Natasha A. Naraghi, Esq., Bar No. 284711
LAW OFFICES OF ALEXANDER M. SCHACK
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Tel: (858) 485-6535 Fax: (858) 485-0608
alexschack@amslawoffice.com
natashanaraghi@amslawoffice.com

Geoffrey J. Spreter, Esq., Bar No 257707
SPRETER LEGAL SERVICES, APC
601 3rd Street
Coronado, CA 92118
Telephone: 619-865-7986
spreterlegalservices@gmail.com

E. Elliot Adler, Esq., Bar No. 229030
ADLER LAW GROUP, APLC
402 W. Broadway, Suite 860
San Diego, CA 92101
Tel: (619) 531-8700 Fax: (619) 342-9600
elliotadler@gmail.com

Attorneys for Plaintiff, individually and on behalf of all others similarly situated

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA N. BENNETT , individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LENOVO, INC. (UNITED STATES), INC., LENOVO GROUP LIMITED and SUPERFISH, INC., | Case No. 3:15-cv-00368-CAB-RBB <br><br> **CLASS ACTION** <br><br> FIRST AMENDED COMPLAINT FOR: <br> 1) VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (Cal. Civ. Code § 1750 et seq.) <br> 2) VIOLATION OF THE FEDERAL |

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

| | | |
|---|---|---|
| | | WIRETAP ACT (18 U.S.C. § 2510 et seq.) |
| Defendants. | 3) | VIOLATION OF THE STORED COMMUNICATIONS ACT (18 U.S.C. § 2701 et seq.) |
| | 4) | VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030) |
| | 5) | TRESPASS TO CHATTELS |
| | 6) | VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200 et seq.) |
| | 7) | VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT (Cal. Penal Code §§631, 637.2) |

DEMAND FOR JURY TRIAL

Plaintiff Jessica N. Bennett ("Plaintiff"), individually and on behalf of all persons similarly situated ("Class Members"), by and through their attorneys, bring this action against Defendants Lenovo (United States), Inc., Lenovo Group Limited, and Superfish, Inc. ("Defendants") and alleges as follows:

## INTRODUCTION

1.    Plaintiff brings this action to remedy violations of law in connection with Defendants' installation and operation of "malware" software, known as Superfish (the "Superfish Malware"), on Lenovo computers.

2.    The Superfish Malware is a form of visual discovery that functions as a type of adware, injecting advertisements into web browsing sessions or other aspects

- 2 -

of a Lenovo owner's computer. In addition, the Superfish Malware conducts a man-in-the-middle attack by installing a self-signed root certificate that intercepts otherwise encrypted connections, communications, and websites. The malware not only intercepts secure web traffic, but also collects data, monitors activity, gathers personal information about Lenovo computer owners, and hijacks secure connections, making it easier for outside attackers to access a Lenovo computer user's confidential information.

3.      Sometime in 2014, and possibly earlier, Defendants began installing the Superfish Malware on various Lenovo computer models that were sold to unsuspecting consumers.

4.      Through their installation and operation of the Superfish Malware on consumer computers, Defendants have intercepted electronic communications in violation of federal and state laws and invaded the privacy rights of numerous individuals.

**PARTIES**

5.      Plaintiff Jessica N. Bennett is a California citizen who resides in San Diego, California. Plaintiff individually purchased for personal and business purposes a Lenovo product that, at the time of purchase and undisclosed to her or other similarly situated consumers, was loaded with the Superfish Malware.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

6.      Defendant Lenovo (United States), Inc. is a Delaware Corporation with its headquarters in Morrisville, North Carolina and a research and product development center in San Jose, California.

7.      Defendant Lenovo Group Limited is a Hong Kong corporation with its principal place of business in Beijing, China. Defendant Lenovo (United States), Inc. is the United States operating subsidiary of Defendant Lenovo Group Limited. Defendants Lenovo (United States), Inc. and Lenovo Group Limited are herein collectively referred to as "Lenovo." Lenovo is a multinational computer technology company, which, through its subsidiaries including Lenovo, designs, develops, manufacturers, and sells personal computers, tablet computers, smartphones, workstations, servers, electronic storage devices and smart televisions.   Lenovo collected more than $38.7 billion in revenue for its most recent fiscal year and its laptop business accounts for approximately half of Lenovo's overall revenue. Lenovo has sold hundreds of thousands of its computers in California and nationwide.

8.      Defendant Superfish, Inc. ("Superfish") is a Delaware corporation with its principal place of business in Palo Alto, California.

9.      Plaintiff is informed and believes and based thereon alleges that at all relevant times each of the Defendants was the agent, representative, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, joint

venturer, co-conspirator and/or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein alleged.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 USC § 1332(d). Plaintiff alleges that the amount in controversy exceeds $5 million among the proposed class, exclusive of interest and costs.  Plaintiff further alleges that members of the proposed class are citizens of states of states different from a defendant, and that the proposed class includes in excess of 100 members.

11.     This Court also has subject matter jurisdiction over the federal claims in this action pursuant to 28 USC § 1331.

12.     This Court also has subject matter jurisdiction over the state law claims in this action pursuant to 28 USC § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

13.     The court has personal jurisdiction over Defendants because they conduct business in this District. Defendant Lenovo conducts business throughout California and has a research and product development center at 602 Charcot

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Avenue, San Jose, California 95131.[1]  Defendant Superfish also conducts business in this District.   As such, Defendants have sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court appropriate under traditional notions of fair play and substantial justice.

14.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this District.  Furthermore, a substantial portion of the events giving rise to Plaintiff's claims arose within this District. Attached to this Complaint as Exhibit A is a Declaration from Plaintiff attesting to facts establishing proper venue in this Court pursuant to California Civil Code §1780.

## FACTUAL BACKGROUND

### A. Lenovo and Superfish Partnered to Install the Superfish Malware on Consumer Computers

15.   Defendant Lenovo is one of the world's largest PC makers, selling approximately $9.2 billion in computers in its third fiscal quarter ending December 31, 2014.[2] Despite the global decline in the PC market, Lenovo has managed to outperform the PC market and the company's shares have responded with record highs.[3]

---

[1] Lenovo opens New Office In Silicon Valley, http://www.lenovocareers.com/en/news-and-events/career-news-description/lenovo-opens-new-office-in-silicon-valley--412?cntry=united-states.
[2] *See* Lenovo Group Limited, *FY2014/15 Third Quarter Results Announcement*, at 2, *available at* http://www.lenovo.com/ww/lenovo/pdf/Lenovo_Q3%20FY15_Results%20Announcement_Eng.pdf.
[3] *See* Lenovo Group Limited, *FY2014/15 Third Quarter Results Announcement*, at 2, *available at* http://www.lenovo.com/ww/lenovo/pdf/Lenovo_Q3%20FY15_Results%20Announcement_Eng.pdf.

- 6 -

16.     As part of its strategy to squeeze every ounce of profit out of an already saturated market, Lenovo accepted compensation to bundle unwanted software (known as 'bloatware') with consumer computers.  Defendant Superfish designed the malware that was installed on these consumer computers.

17.     Sometime in or before 2014, Lenovo made a deal with Defendant Superfish to preinstall Superfish's software on Lenovo computers.

18.     Superfish is a self-proclaimed 'visual search' company, with a background in video surveillance. In 1999, Superfish's founders, Adi Pinhas and Michael Chertok, started Vigilant Technology, a company that created digital video recording for the surveillance market. Before that, Pinhas "worked at Verint, an intelligence company with a tumultuous history, where he carried out "signal processing research" in which he'd recogni[z]e and analy[z]e anything going over a telephone line."[4] Building on this history, they later founded Superfish, which designs visual discovery software and other adware, including the malware in question, which is designed to monitor and analyze consumer behavior.

19.     In order to target consumers, bombard them with advertising, and intercept their online connections and communications, Defendant Superfish paid Lenovo to install the Superfish Malware on Lenovo computers.

---

[4] Thomas Fox-Brewster, *Superfish: A History of Malware Complaints and International Surveillance*, Forbes, Feb. 19, 2015, *available at* http://www.forbes.com/sites/thomasbrewster/2015/02/19/superfish-history-of-malware-and-surveillance/.

- 7 -

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

20.     Soon after the infected Lenovo computers shipped, complaints began surfacing that the computers came with damaging malware, sometimes referred to as Superfish Visual Discovery adware (the "Superfish Malware").   Defendant Lenovo initially mislead consumers by telling them that the Superfish Malware was not installed by Lenovo, but it has since admitted that the company did in fact purposely sell computers with the preinstalled Superfish Malware.

**B. Defendants' Malware Intercepts Electronic Communications and Hijacks Otherwise Secure Connections**

21.     Adware generally refers to software that automatically generates advertising material, which typically appears in a computer user's Internet browser when the user is online.

22.     In comparison to the typical adware, the Superfish Malware installed on Lenovo computers is far more nefarious. Among other things, the software injected advertising into browsing sessions, hijacked secure connections, collected data, monitored activity, gathered personal information and left computer users vulnerable to outside attacks. Particularly damaging is how the software installs a self-signed root certificate that intercepts traffic from otherwise encrypted connections (i.e. those using HTTPS).

23.     Hypertext Transfer Protocol ("HTTP") is an application protocol used to connect to and communicate with Web servers that provides the foundation for data communication on the Internet.   With HTTP, information is transmitted without an

- 8 -

encryption. While unencrypted connections may be appropriate for certain traffic, such as browsing news articles, encrypted connections are needed to prevent the interception of private information, such as with online banking or shopping with credit cards.

24.     Hyper Text Transfer Protocol Secure ("HTTPS") is a protocol for secure communications that was designed to prevent the attacks possible with unsecure HTTP. With secure HTTPS connections, communications between a user's browser and the Web are encrypted.

25.     HTTPS usually uses one of two secure protocols to encrypt communications: (1) Secure Sockets Layer ("SSL"); or (2) Transport Layer Security ("TLS") (collectively "SSL/TLS protocol").

26.     With HTTPS connections using the SSL/TLS protocol, the server sends a certificate to the user's browser through which the user's computer can verify the identity and authenticity of the website (or the operator of the web server). The digital certificates for these HTTPS connections are issued by a handful of trusted certificate authorities ("CA's"). This part of the process is essentially meant to ensure that the website is who it says it is.   In addition to the digital certificate, HTTPS communications are encrypted and each communication session has its own decryption key.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

27.     For users, the secure HTTPS connection is often represented by a small lock symbol that is generally located near the URL or address bar. Thus, when a computer user visits their personal email or bank account online, this signals that the connection is secured with encryption.

28.     For infected Lenovo computers, the Superfish Malware intercepts these secure connections in a way that fools users into thinking their connections are still secure when in fact they are the subject of a man-in-the-middle attack.

29.     In particular, the Superfish Malware overrides the SSL/TLS protocol associated with HTTPS connections by installing a self-signed root certificate that enables it to generate digital certificates for each encrypted connection and intercept traffic from otherwise encrypted connections.[5]

30.     Robert Graham of Errata Security explained the process as follows:

"[S]uperFish installs its own root CA certificate in Windows system. It then generates certificates on the fly for each attempted SSL connection. Thus, when you have a Lenovo computer, it appears as SuperFish is the root CA of all the websites you visit. This allows SuperFish to intercept an encrypted SSL connection, decrypt it, then re-encrypt it again."[6]

31.     The Superfish Malware also uses a uniform decryption key for all HTTPS communications on Lenovo computers. As a result, the software makes it

---

[5] A root certificate is a certificate that identifies the Root Certificate Authority, the trust anchor from which the chain of trust for verifying digital certificates is derived. When a CA issues multiple certificates, a root certificate is the top-most certificate that is used to sign other certificates.

[6] Robert Graham, Errata Security, *Some notes on SuperFish*, *available at* http://blog.erratasec.com/2015/02/some-notes-on-superfish.html#.VPS6sPnF9c8.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

easier for attackers to access consumer information, intercept connections, decrypt otherwise secure connections, and gather private data.

32.    Security analyst, Robert Graham, described it like this:

"It's the same root CA private-key for every computer. This means that hackers at your local cafe WiFi hotspot, or the NSA eavesdropping on the Internet, can use that private-key to likewise intercept all SSL connections from SuperFish users."[7]

33.    The Superfish Malware is so harmful that the United States Department of Homeland Security ("DHS") recently issued a warning concerning Lenovo computers with the Superfish software. In the alert, the United States Computer Emergency Readiness Team, a division of DHS, stated:

"This [Superfish VisualDiscovery spyware] intercepts users' web traffic to provide targeted advertisements. In order to intercept encrypted connections (those using HTTPS), the software installs a trusted root CA certificate for Superfish. All browser-based encrypted traffic to the Internet is intercepted, decrypted, and re-encrypted to the user's browser by the application – a classic man-in-the-middle attack.  Because the certificates used by Superfish are signed by the CA installed by the software, the browser will not display any warnings that the traffic is being tampered with. Since the private key can easily be recovered from the Superfish software, an attacker can generate a certificate for any website that will be trusted by a system with the Superfish software installed. This means websites, such as banking and email, can be spoofed without a warning from the browser."[8]

34.    As indicated in the DHS alert, the effects of the Superfish Malware are astounding. Defendants' software hijacks secure connections, injects advertisements

---

[7] Robert Graham, Errata Security, *Some notes on SuperFish*, *available at* http://blog.erratasec.com/2015/02/some-notes-on-superfish.html#.VPS6sPnF9c8.
[8] US-CERT, *Lenovo Superfish Adware Vulnerable to HTTPS Spoofing*, *available at* https://www.us-cert.gov/ncas/alerts/TA15-051A.

- 11 -

into the user's experience, intercepts electronic communications, monitors user activity and collects personal information and data, which is uploaded to Superfish servers.

35.    Through the software, Defendants hijacked Internet browsing sessions and injected ads, including those from their own advertising partners. Defendant Lenovo used "Superfish to place adverts into Google search results that the laptop manufacturer wants [users] to see[,]" including ads from its own advertising partners.[9]

36.    In order to generate this advertising, Defendants monitored user activity through the Superfish software. Security expert discussed the software's functionality in an article with Reuters, stating:

> "The way the Superfish functionality appears to work means that they must be intercepting traffic in order to insert the ads," said Eric Rand, a researcher at Brown Hat Security. "This amounts to a wiretap."[10]

37.    Defendants' malware also carves a hole in system security, making it easier for other attackers and cyber criminals to also intercept users' secure connections and steal information. Using a malicious self-signed certificate authority, the Superfish Malware makes it possible for hackers to circumvent the protections

---

[9] Thomas Fox-Brewster, *How Lenovo's Superfish 'Malware' Works and What You Can Do To Kill It*, Forbes, Feb. 19, 2015, *available at* http://www.forbes.com/sites/thomasbrewster/2015/02/19/superfish-need-to-know/; Michael Hiltzik, *Has PC maker Lenovo committed the ultimate breach of customer security?*, Los Angeles Times, Feb. 24, 2015, *available at* http://www.latimes.com/business/hiltzik/la-fi-mh-this-big-laptop-maker-20150224-column.html.
[10] Paul Carsten, *Lenovo to stop pre-installing controversial software*, Reuters, Feb. 19, 2015, *available at* http://www.reuters.com/article/2015/02/19/us-lenovo-cybersecurity-idUSKBN0LN0XI20150219.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

provided by HTTPS. In fact, it took Robert Graham of Errata Security just three hours to crack the uniform key that can be used to intercept secure connections.[11]

38.     The software not only subjects users to outside attacks, but also cripples their ability to detect such attacks. Dan Goodin explained this effect in an article for Ars Technica, a leading technology publication:

> Even worse, the private encryption key accompanying the Superfish-signed Transport Layer Security certificate appears to be the same for every Lenovo machine. Attackers may be able to use the key to certify imposter HTTPS websites that masquerade as Bank of America, Google, or any other secure destination on the Internet. Under such a scenario, PCs that have the Superfish root certificate installed will fail to flag the sites as forgeries—a failure that completely undermines the reason HTTPS protections exist in the first place.[12]

39.     Security analyst Marc Rogers summarized the security issues that Superfish causes for consumers with infected an infected computer:

> 1. Superfish replaces legitimate site certificates with its own in order to compromise the connections so it can inject its adverts. This means that anyone affected by the adware cannot trust any secure connections they make.
> 2. Users will not be notified if the legitimate site's certificate has been tampered with, has expired or is bogus. In fact, they now have to rely on Superfish to perform that check for them. Which it does not appear to do.
> 3. Because Superfish uses the same certificate for every site it would be easy for another hostile actor to leverage this and further compromise the user's connections.

---

[11] Dan Goodin, *Lenovo PCs ship with man-in-the-middle adware that breaks HTTPS connections*, Ars Technica, Feb. 19, 2015, *available at* http://arstechnica.com/security/2015/02/lenovo-pcs-ship-with-man-in-the-middle-adware-that-breaks-https-connections/; Robert Graham, *Extracting the SuperFish certificate*, Errata Security, Feb. 19, 2015, *available at* http://blog.erratasec.com/2015/02/extracting-superfish-certificate.html#.VPexKfnF9c8.

[12] Dan Goodin, *Lenovo PCs ship with man-in-the-middle adware that breaks HTTPS connections*, Ars Technica, Feb. 19, 2015, *available at* http://arstechnica.com/security/2015/02/lenovo-pcs-ship-with-man-in-the-middle-adware-that-breaks-https-connections/.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

4. Superfish uses a deprecated SHA1 certificate. SHA1 has been replaced by SHA-256 because attacks against SHA1 are now feasible with ordinary computing hardware. This is insult on top of injury. Not only are they compromising people's SSL connections but they are doing it in the most cavalier, insecure way possible.

5. Even worse, they use crackable 1024-bit RSA!

6. The user has to trust that this software which has compromised their secure connections is not tampering with the content, or stealing sensitive data such as usernames and passwords.

7. If this software or any of its control infrastructure is compromised, an attacker would have complete and unrestricted access to affected customers banking sites, personal data and private messages.[13]

40.    In sum, Defendants' software: (1) hijacks secure connections; (2) injects advertising into users' systems; (3) monitors user activity; (4) collects personal information; (5) installs an illegitimate certificate to intercept electronic communications; (6) leaves consumers vulnerable to additional attacks; and (7) weakens system security measures such that users are unable to detect attacks, among other things.

---

[13] Marc Rogers, *Lenovo installs adware on customer laptops and compromises ALL SSL*, Feb. 19, 2015, *available at* http://marcrogers.org/2015/02/19/lenovo-installs-adware-on-customer-laptops-and-compromises-all-ssl/.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## C. Defendants Have Admitted to Intercepting Electronic Communications and Hijacking Secure Connections

41.     In an interview with the New York Times, Defendant Lenovo's Chief Technology Officer, Peter Hortensius, admitted that the Superfish software was intentionally installed on Lenovo computers that were sold to consumers.[14]

42.     In the interview, Mr. Hortensius also stated that through the software, Superfish would take a signature of everything a computer user looked at online and send the signature to its servers.[15] The purpose of this was to then inject ads and images back into the web pages being viewed by a user. Defendant Lenovo's CTO further admitted that Superfish was pulling the metadata from everything users saw online and hijacking the certificates of websites users accessed.[16]

43.     Lenovo has also admitted that the Superfish Malware may have appeared on 50 Lenovo computer models, although it may be more. These computer models include, but are not limited to: E-Series (E10-30), Flex Series (Flex2 14, Flex2 15, Flex2 14D, Flex2 15D, Flex2 Pro, and Flex 10), G Series (G410, G510, G710, G40-30, G4-45, G40-70, G40-80, G50-50, G50-45, G50-70, G50-80, G50-80Touch), Miix-Series (Miix2 – 8, Miix2 – 10, Miix2 – 11, Miix 3 - 1030), S-Series (S310, S410, S415, S415 Touch, S435, S20-30, S20-30 Touch, S40-70), U Series

---

[14] Nicole Perlroth, *Lenovo's Chief Technology Officer Discusses the Superfish Adware Fiasco*, The New York Times, Feb. 24, 2015, *available at* http://bits.blogs.nytimes.com//2015/02/24/lenovos-chief-technology-officer-discusses-the-superfish-adware-fiasco/.
[15] *Id.*
[16] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

(U330P, U430P, U330 Touch, U430 Touch, U540 Touch), Y-Series (Y430P, Y 40-70, Y40-80, Y50-70, Y70-70), Yoga Series (Yoga2-11, Yoga2-13, Yoga2Pro-13, Yoga3 Pro), Z-Series (Z40-70, Z40-75, Z50-70, Z50-75, Z70-80).

44.    According to Defendant Lenovo's own admissions, Defendants intentionally installed the Superfish Malware on Lenovo computers and then sold those computers to unsuspecting consumers. Through the installation and operation of the Superfish Malware, Defendants: (1) hijacked secure connections; (2) injected advertisements into users' systems; (3) monitored user activity; (4) collected personal information; (5) installed an illegitimate certificate to intercept electronic communications and perform a man-in-the-middle attack; (6) subjected consumers to outside attacks; and (7) weakened system security measures such that consumers were left unable to detect attacks, among other things.

45.    As a direct and proximate result of Defendants' conduct, including the installation and operation of the Superfish Malware, Plaintiff and members of the proposed class have suffered harm.

46.    Defendants' Superfish Malware causes computers to slow down, impairs computer performance, takes up bandwidth over an Internet connection, uses up memory on a computer, causes the loss of data, compromises computer security measures, frustrates computer users and significantly impairs the user's computer experience and ability to use the system. Defendants' Superfish Malware, including

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

the advertisements its generates, decreases productivity by requiring that users spend time closing advertisement windows, determining how to remove them from the computer, and waiting for the machine while it operates at a slower speed. As a result of the impaired performance, users are forced to keep their computers running longer, thereby using additional electricity, and decreasing the useful life of the computer. The cumulative impact of multiple advertisements also impedes computer usage.

47.    Assuming Class Members are able to determine the cause of the system issues created by Defendants' Superfish Malware, the software is also difficult to remove, even for Class Members who are technically savvy. One Lenovo user, for example, posted on the Lenovo message board, describing his experience with the Superfish Malware:

> "While setting up a Lenovo Flex 2-15 and uninstalling some of the unwanted software, I came across the Superfish Visual Discovery software.
>
> After doing some research into Superfish Visual Discovery, I consider this software to be quite invasive.  It sits between you and whatever sites you visit to monitor your sessions and extract information (it says photos) to serve you advertisements for similar products you may be looking for.  What's even more concerning is that it does this for HTTPS connections that the user would expect to be private between themselves and the server they *believe* they are securely connecting to.
>
> I "uninstalled" it via the "Programs and Features" in Windows 8.1, however I noticed that there are still remnants of the Superfish software left behind.
>
> - There are Superfish root certificates left behind.
> - There are Superfish registry entries left behind, some of them relating to SuperfishIEAddon.dll (which there appears to be no add-ons for Superfish in IE for me, but I would like to be sure), and other related registry entries.

- 17 -

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

- Possibly other remnants of the software I have not seen?

I have spoken on two separate occasions with Lenovo phone support, both times they insisted that this Superfish software was not installed by Lenovo and that it is malicious and should be removed, at which time they offered to charge me either a one-time fee of $120, or sell me a monthly software support subscription.  I insisted that this Superfish software came pre-installed from the factory, citing where it said "Install Date" in the "Programs and Features" (which was the same install date as the rest of the Lenovo software), as well as the registry entry where Superfish is listed under the "MFGApps" string value. Also, I told them about the folder "Program Files\Lenovo\VisualDiscovery" (if I remember the path name correctly) which used to exist, but I was told this was the virus trying to implant itself somewhere.

I find it surprising that the Lenovo software support reps were not aware that Lenovo included Superfish with their laptops.

I and most likely others would appreciate that Lenovo provide a removal tool to *COMPLETELY* remove this Superfish software (and any remnants that remain for those who have already uninstalled it, like myself) i.e. ALL of it's associated files, registry entries, ie add-ons, firefox extensions, chrome extensions, etc. , and provide any other direction as necessary.[17]

48.     Because Defendants' Superfish Malware exposes computer systems to outside attacks, computer user's can also experience problems from other adware, spyware, or malware that was installed as a result of the computer's compromised security measures under the Superfish Malware.

49.     Class Members have also been harmed in that Defendants intercepted their electronic communications in violation of Federal and California State law.

---

[17] http://forums.lenovo.com/t5/Yoga-Flex-Laptops-and/Pre-installed-Superfish-Visual-Discovery-on-Lenovo-Flex-2-15/td-p/1896989.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

50.    As a result of Defendants' conduct in installing and operating the Superfish Malware on Lenovo computers, Plaintiff and members of the Classes have suffered harm in that: (1) their electronic communications were intercepted; (2) their computer activity was monitored; (3) their private information and/or data was collected; (4) the performance of their computers was impaired; and (5) they purchased goods that they otherwise would not have purchased or would have paid less for had they known about Defendants' Superfish Malware. In addition, Class Members have also suffered harm in connection with: (1) expending time and/or money to remove the Superfish Malware and/or repair their computers; (2) removing additional malware, adware, or viruses caused by the Superfish Malware; (3) dealing with security issues caused by the Superfish Malware; and/or (4) the nuisance and annoyance of handling issues caused by the Superfish Malware.

51.    Through their installation and operation of the Superfish Malware on computers purchased by Plaintiff and the members of the Classes, Defendants also invaded the privacy of Plaintiff and the members of the Classes.

## CLASS ACTION ALLEGATIONS

52.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself and all others similarly situated and seeks certification of the following National Class:

- 19 -

> National Class: All purchasers of a Lenovo computer in the United States who purchased a computer with the Superfish program preinstalled on it during the period January 1, 2012 to the present.

53.     As an alternative to the National Class, in the event that the Court does not apply California law to all Class Members claims regardless of where they reside, Plaintiff will seek certification of a California Subclass and other subclasses as appropriate asserting claims under California law. The California Subclass is defined as follows:

> California Subclass: All purchasers of a Lenovo computer in the State of California who purchased a computer with the Superfish program preinstalled on it during the period January 1, 2012 to the present.

54.     Excluded from the proposed Classes are Lenovo (United States), Inc., its parents, subsidiaries, affiliates and controlled persons, as well as the officers and directors (and their immediate family) of Lenovo (United States), Inc., its parents, subsidiaries, affiliates and controlled persons. Also excluded from the proposed Classes are Lenovo Group Limited, its parents, subsidiaries, affiliates and controlled persons, as well as the officers and directors (and their immediate family) of Lenovo Lenovo Group Limited, its parents, subsidiaries, affiliates and controlled persons. Also excluded from the proposed Class are Superfish, Inc., its parents, subsidiaries, affiliates and controlled persons, as well as the officers and directors (and their

immediate family) of Superfish, Inc., its parents, subsidiaries, affiliates and controlled persons. Also excluded is any judicial officer assigned to this case.

55.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23.

56.     **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. Defendant Lenovo is the largest PC maker in the world, selling millions of computers annually. While the exact number of Class Members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of thousands of members in each Class located throughout the United States. As such, it would be impracticable to join the Class Members individually.

57.     **Typicality:** Plaintiff's claims are typical of the claims of members of the Classes and Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff and all members of the Classes are similarly affected by Defendants' wrongful conduct and were injured by the same wrongful acts, practices, and omissions committed by Defendants, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct giving rise to the claims of the other members of the Classes.

- 21 -

58.     **Commonality:** Common questions of law and fact exist as to all members of the Classes and predominate over any individual questions. Such common questions include, but are not limited to:

a.   Whether Lenovo manufactured and/or sold computers containing the Superfish Malware;

b.   Whether Defendants' intercepted the electronic communications of members of the Classes;

c.   Whether Defendants' conduct violates the Electronic Communications Privacy Act ("ECPA");

d.   Whether Defendants' conduct violates California state consumer protection and unfair competition laws;

e.   Whether Defendants' conduct caused injury to Plaintiff and the members of the Classes;

59.     **Adequacy**: Plaintiff will adequately represent the proposed class members. They have retained counsel competent and experienced in class actions to pursue this action vigorously. Plaintiff has no interests contrary to or in conflict with the interests of Class Members.

60.     **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty

- 22 -

to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT ONE
### Violations of California's Consumer Legal Remedies Act
### (Cal. Civ. Code § 1750 *et seq.*)
### (Against All Defendants)

61.     Plaintiff incorporates each and every allegation above as if fully set forth herein.

62.     Plaintiff asserts a claim under California's Consumer Legal Remedies Act. It is appropriate to apply California's Consumer Legal Remedies Act to all purchasers of Lenovo computers infected with the Superfish Malware because Defendants' conduct emanated from California, Defendants do business in California, Defendants have offices in California, and Defendant Superfish is headquartered in California. Plaintiff first notified Defendant of these issues on January 1, 2015.

63.     In the event that the court finds that California's Consumer Legal Remedies Act does not apply to all members of the Classes, Plaintiff alternatively alleges a California Subclass as defined above.

64.     This cause of action is brought pursuant to the Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750, et seq.). The acts, practices, and omissions described herein were intended to result in the sale of goods to the consuming public. These acts, practices, and omissions constitute unlawful methods of competition, and unfair or deceptive acts undertaken in a transaction that resulted

in the sale of goods to consumers. Such acts, practices, and omissions include, but are in no way limited to, representing that goods had sponsorship, approval, characteristics, benefits, uses, ingredients, or quantities which they do not have, or that they were of a particular quality or standard when they were of another.

65.     Defendants controlled and participated in the installation and operation of the Superfish Malware on Lenovo computers they knew would be sold to the public. Defendants, however, intentionally concealed, omitted, and/or failed to disclose material facts about the installation and operation of the Superfish Malware on Lenovo computers, Defendants' use of the Superfish Malware to intercept electronic communications, the diminished performance of computers caused by the Superfish Malware, the increased vulnerability to outside attacks due to the Superfish Malware, and the inability to detect such attacks due to the weakened security measures caused by the Superfish Malware.

66.     Defendants' acts, omissions, concealment, practices, and non-disclosures, as described herein, were knowingly deceptive and were made in conscious disregard of their effects on consumers. Defendants were required by law to make adequate disclosures of material information to consumers concerning the installation and operation of the Superfish Malware on the Lenovo computers. Defendants failed to do so and instead omitted and/or concealed the material information concerning the installation and operation of the Superfish Malware on

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Lenovo computers in order to induce Plaintiff and the members of the Classes to purchase the Lenovo computers.

67.     The information that Defendants omitted, concealed, and/or failed to disclose is material in that it is and was likely to affect a consumer's choice of computer. Furthermore, Plaintiff, the members of the Classes, consumers, and reasonable persons would have considered such information important in deciding whether or not to purchase a Lenovo computer and/or what price to pay for a Lenovo computer.

68.     Defendants had a duty to disclose the omitted material facts because:

> a. At the time of their purchase, Plaintiff and the members of the Classes did not have knowledge of the material facts including, but not limited to, the installation and operation of the Superfish Malware on Lenovo computers;
>
> b. Defendants had exclusive knowledge of the material facts not known to Plaintiff and the members of the Classes since only Defendants had access to information about their agreement regarding the installation and operation of the Superfish Malware on Lenovo computers;
>
> c. Plaintiff and the members of the Classes could not reasonably have been expected to learn or discover the Superfish Malware on their computers, or that it was being used to intercept their electronic communications since it was designed to avoid detection;
>
> d. Defendants knew that Plaintiff and the members of the Classes could not reasonably have been expected to learn or discover the

- 25 -

installation and operation of the Superfish Malware on their computers, or that it was being used to intercept their electronic communications;

e.  Defendants actively concealed and suppressed the material facts about the Superfish Malware from Plaintiff and the members of the Classes by, among other things, failing to disclose the information to consumers prior to the time of their purchases, failing to warn consumers of the security risks associated with the Superfish Malware at the time of their purchase, and continuing to suppress material facts despite consumer complaints.

69.   In purchasing the Lenovo computers, Plaintiff and the members of the Classes relied on Defendants' acts, practices, omissions, concealment and non-disclosures to their detriment.  Had the material facts been disclosed, Plaintiff and the members of the Classes would not have purchased the Lenovo computers or would have paid less.  Plaintiff and the members of the Classes were therefore deceived into purchasing the Lenovo computers as a direct and proximate result of Defendants' failure to disclose the omitted material information.

70.   By engaging in the conduct set forth herein, Defendants violated and continue to violate Cal. Civ. Code § 1770(a)(5) of the CLRA in that Defendants, through their acts, practices, and omissions, misrepresented and continue to misrepresent the sponsorship, approval, characteristics, ingredients, uses, benefits or quantities of the Lenovo computers.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

71.     By engaging in the conduct set forth herein, Defendants violated and continue to violate Cal. Civ. Code § 1770(a)(6) of the CLRA in that Defendants, through their acts, practices, and omissions, represented and continue to represent that the Lenovo computers were original or new when they have been altered.

72.     By engaging in the conduct set forth herein, Defendants violated and continue to violate Cal. Civ. Code § 1770(a)(7) of the CLRA in that Defendants, through their acts, practices, and omissions, misrepresented and continue to misrepresent the standard, quality, or grade of the Lenovo computers.

73.     By engaging in the conduct set forth herein, Defendants violated and continue to violate Cal. Civ. Code § 1770(a)(9) of the CLRA in that Defendants, through their acts, practices, and omissions, advertised the Lenovo computers with the intent not to sell them as advertised.

74.     By engaging in the conduct set forth herein, Defendants violated and continue to violate Cal. Civ. Code § 1770(a)(16) of the CLRA in that Defendants, through their acts, practices, and omissions, represented and continue to represent that the Lenovo computers have been supplied in accordance with a previous representation when they have not.

75.     As a direct and proximate result of Defendants' violations of the CLRA as alleged herein, Plaintiff and the members of the Classes have suffered and will continue to suffer damages in an amount to be proven at trial.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

76.     By engaging in the conduct described herein, Defendants have acted with fraud, malice, and oppression and in conscious disregard of the rights of Plaintiff and the members of the Classes. As a result, Plaintiff and the members of the Classes are entitled to punitive and exemplary damages in an amount to be proven at trial. Plaintiff and the members of the Classes are also entitled to equitable relief.

77.     On January 8, 2015, Plaintiff, through her counsel, notified Defendant Lenovo of the unlawful methods of competition, and unfair or deceptive acts described herein by written notice which contained a demand that Defendant Lenovo cease and desist the unlawful conduct, offer to make appropriate restitution, engage in corrective advertising, and identify and notify consumers of the infected Lenovo computers of their right to an appropriate remedy upon their request, among other things, as required by Cal. Civ. Code § 1782. Plaintiff's notice to Defendant Lenovo was sent by certified mail, return receipt requested pursuant to Cal. Civ. Code § 1782(a).  Defendant Lenovo failed to provide appropriate relief for its violations of the CLRA within 30 days of its receipt of Plaintiff's letter. Pursuant to Cal. Civ. Code §§ 1780 and 1782, Plaintiff therefore seeks actual, statutory, and punitive damages as to Defendant Lenovo, in addition to equitable relief and attorneys' fees and costs, on behalf herself and all others similarly situated.

78.     On March 12, 2015, Plaintiff, through her counsel, notified Defendant Superfish of the unlawful methods of competition, and unfair or deceptive acts

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

described herein by written notice which contained a demand that Defendant Superfish cease and desist the unlawful conduct, offer to make appropriate restitution, engage in corrective advertising, and identify and notify consumers of the infected Lenovo computers of their right to an appropriate remedy upon their request, among other things, as required by Cal. Civ. Code § 1782. Plaintiff's notice to Defendant Superfish was sent by certified mail, return receipt requested pursuant to Cal. Civ. Code § 1782(a). If Defendant fails to provide appropriate relief for its violation of the CLRA within 30 days of the date of the notification letter, Plaintiff will amend this Complaint to seek actual, statutory and punitive damages in addition to equitable relief.  Plaintiff is currently only seeking injunctive relief as to this claim against Defendant Superfish.

## COUNT TWO
### Violation of the Federal Wiretap Act
### Title I of the ECPA (18 U.S.C. § 2510 *et seq.*)
### (Against All Defendants)

79.     Plaintiff incorporates each and every allegation above as if fully set forth herein.

80.     The Federal Wiretap Act (18 U.S.C. § 2510 et seq.) prohibits the interception of any wire, oral or electronic communications.  The Electronic Communications Privacy Act provides a private right of action against anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to

- 29 -

intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. §§ 2511, 2520.

81.     As alleged herein, Defendants intentionally and without consent intercepted the electronic communications of Plaintiff and the members of the Classes. Through the Superfish Malware, Defendants intercepted communications between Plaintiff and members of the Class, and the servers of Internet Websites they visited. Defendants also intercepted the secure HTTPS connections and Internet traffic of Plaintiff and the members of the Classes.

82.     Defendants used the Superfish Malware to intercept the electronic communications of Plaintiff and the members of the Classes and to create false security certificates to intercept their encrypted electronic communications.

83.     Neither the Plaintiff nor the members of the Classes were aware that Defendants were intercepting their electronic communications.

84.     In violation of 28 U.S.C. § 2511, Defendants also intentionally disclosed, endeavored to disclose, used, and/or endeavored to use the information obtained through the interception of the electronic communications of Plaintiff and the members of the Classes despite knowing or having reason to know the information was obtained through the unlawful interception of electronic communications.

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

85.  Pursuant to 18 U.S.C. § 2520, Plaintiff and the members of the Classes are entitled to:

    a.  statutory damages as authorized by 28 U.S.C. §2520;

    b.  punitive damages in an amount to be determined by a jury;

    c.  reasonable costs and attorneys' fees; and

    d.  any preliminary or other equitable or declaratory relief as may be appropriate.

**COUNT THREE**
**Violation of the Stored Communications Act**
**Title II of the ECPA (18 U.S.C. §§2701 et seq.)**
**(Against All Defendants)**

86.  Plaintiff incorporates each and every allegation above as if fully set forth herein.

87.  Plaintiff asserts a violation of the Federal Wiretap Act. In the alternative, Plaintiff asserts a claim for violation of the Stored Communications Act ("SCA") (18 U.S.C. §§ 2701 et seq.) in the event that it is found that Defendants intercept communications while they are in storage, rather than in transit.

88.  The Stored Communications Act prohibits a person from intentionally accessing without authorization, or in excess of authorization, a facility through which an electronic communication service is provided and thus, obtaining, altering, or preventing authorized access to an electronic communication while it is in electronic storage.

- 31 -

89.     Through the Superfish Malware, Defendants accessed facilities through which an electronic communication service is provided. In particular, the computers of Plaintiff and the members of the Classes provide electronic communication serves, including operating as printer servers, wireless networking providers, and remote terminals through which electronic communications are provided.

90.     Through the use of the Superfish Malware, Defendants intentionally accessed electronic communications of Plaintiff and the members of the Classes, including Internet browsing communications, while those communications were in storage on the computers of Plaintiff and the members of the Classes. Defendants obtained and altered these electronic communications by intercepting secure connections and modifying users' connections and communications on the Internet.

91.     Thus, Defendants violated 18 U.S.C. § 2701(a) by intentionally accessing without authorization, or in excess of authorization, facilities through which an electronic communication service is provided and obtaining and/or altering electronic communications while they were in electronic storage.

92.     As a result of Defendants' unlawful conduct, as alleged herein, Plaintiff and members of the Classes and been harmed and suffered injury.

93.     In light of Defendants' violations of 18 U.S.C. § 2701 and pursuant to 18 U.S.C. § 2707, Plaintiff seeks preliminary and other equitable or declaratory relief as may be appropriate, statutory damages as authorized by 28 U.S.C. §2707, punitive

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

damages, and reasonable costs and attorneys' fees on behalf of themselves and members of the Classes.

## COUNT FOUR
### Violation of the Computer Fraud and Abuse Act
### (18 U.S.C. §1030.)
### (Against All Defendants)

94.     Plaintiff incorporates the above allegations by reference as if fully set forth herein.

95.     The Lenovo computers with Superfish Malware that were purchased by Plaintiff and the members of the Classes were used in or affected interstate or foreign commerce or communication and, thus, were protected computers within the meaning of 18 U.S.C. § 1030.

96.     As alleged herein, Defendants intentionally accessed the computers of Plaintiff and the members of the Classes without authorization or in excess of authorization and thereby obtained information from such protected computers.

97.     Defendants also knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct caused as loss to Plaintiff and the members of the Classes aggregating at least $5,000 during any one-year period.

- 33 -

# COUNT FIVE
## Trespass to Chattels
## California Common Law
## (Against All Defendants)

98.     Plaintiff incorporates the above allegations by reference as if fully set forth herein.

99.     Plaintiff asserts a trespass to chattels claim under California common law. It is appropriate to apply California law to all purchasers of Lenovo computers infected with the Superfish Malware because Defendants' conduct emanated from California, Defendants do business in California, Defendants have offices in California, and Defendant Superfish is headquartered in California.

100.   In the event that the court finds that California law does not apply to all members of the Classes, Plaintiff alternatively alleges a California Subclass as defined above.

101.   At all times relevant hereto, Plaintiff and the members of the Classes were the owners of computers on which Defendants installed and operated the Superfish Malware without the knowledge or consent of Plaintiff and the members of the Classes.

102.   Without consent, Defendants intentionally interfered with Plaintiff's and the members of the Classes' use and enjoyment of their computers. Defendants accessed their computers, monitored their activities, intercepted their secure connections and communications, modified or impaired the computers' security

- 34 -

measures, injected advertisements into Web browsing sessions, and collected data and personal information from the computers, among other things.

103.   The installation and operation of the Superfish Malware on the computers of Plaintiff and the members of the Classes impairs the condition and the value of the computers.

104.   In doing so, Defendants intentionally intermeddled with, damaged, and deprived Plaintiff and the members of the Classes the full use and benefits of their computers.

105.   As a proximate result of Defendants' conduct, Plaintiff and the members of the Classes suffered harm.

106.   Wherefore Plaintiff prays for the relief as set forth below.

**COUNT SIX**
**Violations Of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code §§ 17200 et seq.)**
**(Against All Defendants)**

107.   Plaintiff incorporates and re-alleges each and every allegation of this complaint as if stated fully herein.

108.   Plaintiff asserts a claim under California's Unfair Competition Law. It is appropriate to apply California's Unfair Competition Law to all purchasers of Lenovo computers infected with the Superfish Malware because Defendants' conduct emanated from California, Defendants do business in California, Defendants have offices in California, and Defendant Superfish is headquartered in California.

109.   In the event that the court finds that California's Unfair Competition Law does not apply to all members of the Classes, Plaintiff alternatively alleges a California Subclass as defined above.

110.   Beginning at an exact date unknown to Plaintiff but at least since September 2014, Defendants have committed acts of unfair competition as defined by California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, et seq.)

111.   By engaging in the acts, practices, and omissions described herein, Defendants have committed unlawful, unfair, and fraudulent business acts and practices within the meaning of the UCL. As a proximate result of Defendants' unlawful installation and operation of the Superfish Malware on the computers of Plaintiff and the members of the Classes, Plaintiff and the members of the Classes have suffered harm and lost money and/or property.

112.   By engaging in the above described acts and practices, including the installation and operation of the Superfish Malware on the computers of Plaintiff and the members of the Classes and the unauthorized access and interception of their electronic communications,  Defendants have committed one or more acts of unfair competition within the meaning of the UCL.

113.   Defendants' business acts and practices are likely to deceive, and did deceive, Plaintiff, the members of the Classes and the consuming public, and

consequently constitute "fraudulent" acts and practices within the meaning of the UCL. Furthermore, Defendants conduct was likely to deceive reasonable consumers in that Defendants intentionally and misleadingly sold new computers with pre-installed Superfish Malware.

114.   Defendants' acts and practices also violate 18 U.S.C. §§ 1030, 2511, California Penal Code § 631, California Business and Professions Code Sections 22947.2, 22947.3, 22947.4, California Penal Code §502 and the common law. Consequently, Defendants' acts and practices, as alleged herein, constitute unlawful acts and practice within the meaning of the UCL.

115.   Defendants' acts and practices also threaten a continued violation of 18 U.S.C. §§ 1030, 2511, California Penal Code § 631, California Business and Professions Code Sections 22947.2, 22947.3, 22947.4, California Penal Code §502 and the common law, violate the policy and spirit of such laws, and otherwise significantly harm consumers. Furthermore, Defendants' acts and practices are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. The harm to Plaintiff and the members of the Classes, and members of the general public substantially outweighs any benefits of Defendants' conduct. Consequently, Defendants' acts and practices constitute "unfair" business acts and practices within the meaning of the UCL.

116.   As a result of Defendants' conduct, Plaintiff and the members of the Class have been harmed as alleged herein. As such, Plaintiff seeks restitution and/or disgorgement on behalf of themselves and the members of the Classes, and any further relief that the court deems proper. In addition, Plaintiff seeks reasonable attorneys' fees and pray for the relief set forth below.

## COUNT SEVEN
### Violation of California Penal Code §§ 631 and 637.2
### California Invasion of Privacy Act ("CIPA")
### Against All Defendants)

117.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

118.   Plaintiff asserts a claim under California's Invasion of Privacy Act. It is appropriate to apply California's Invasion of Privacy Act to all purchasers of Lenovo computers infected with the Superfish Malware because Defendants' conduct emanated from California, Defendants do business in California, Defendants have offices in California, and Defendant Superfish is headquartered in California.

119.   In the event that the court finds that California's Invasion of Privacy Act does not apply to all members of the Classes, Plaintiff alternatively alleges a California Subclass as defined above.

120.   California Penal Code § 631(a) makes it unlawful, by means of any machine, instrument or contrivance, to purposefully intercept the content of a communication over any "telegraph or telephone wire, line, cable or instrument," or

to read or attempt to read or learn the content of any such communications without the consent of all parties to the communication.

121.   The internet searches and communications with websites and third parties of Plaintiff and members of the Classes are communications within the meaning of California Penal Code § 631. Defendants are "persons" within the meaning of the CIPA.

122.   Defendants intercepted the communications to and from Plaintiff and the members of the Classes using the Superfish Malware and servers that qualify as machines, instruments, or contrivances as defined by the CIPA. Furthermore, Defendants knowingly and willfully intercepted the internet communications of Plaintiff and the members of the Classes while they were in transit.

123.   Plaintiff and the members of the Classes did not consent to Defendants' interception of their internet searches and private communications. In addition, Defendants were not parties to the communications of Plaintiff and the members of the Classes.

124.    Plaintiff and the members of the Classes have been injured by Defendants' unlawful interception of their internet searches and communications.

125.   Defendants' conduct in violation of the CIPA occurred in the State of California because those acts resulted from business decisions, practices and operating policies that Defendants developed, implemented and/or utilized in

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

California which are unlawful and constitute criminal conduct in Defendant Superfish's state of residence and principal place of business. Defendants also profited from their conduct in the State of California.

126. As a result of Defendants' violations of California Penal Code § 631 and pursuant to California Penal Code § 637.2, Plaintiff seeks appropriate declaratory relief, statutory damages as permitted by California Penal Code § 637.2, and reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment as follows:

(a) That the Court enter an order certifying the class, appointing Plaintiff's as representatives of said class, and appointing Plaintiff's counsel as class counsel;

(b) That the Court enter judgment against Defendants for the causes of action alleged against it;

(c) For restitution of all amounts in an amount according to proof at trial;

(d) For statutory damages in the maximum amount permitted by law;

(e) For punitive and exemplary damages;

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

(f)     For such injunctive relief, declaratory relief, orders, or judgment as the

court deems necessary or appropriate;

(g)     For payment of attorneys' fees and costs reasonably incurred;

(h)     For pre and post-judgment interest, to the extent allowable;

(i)     That the Court order the disgorgement of all revenues unjustly earned by

Defendants for selling computers with preinstalled Superfish Malware.

### JURY DEMAND

Plaintiff, individually and for the Classes she seeks to represent, demands trial by jury on each and every triable issue.


Date:  March 13, 2015                    Respectfully submitted,

                                         /s/ Natasha A. Naraghi
                                         Natasha A. Naraghi, Esq.
                                         LAW OFFICES OF ALEXANDER M.
                                         SCHACK
                                         16870 W. Bernardo Drive, #400
                                         San Diego, CA 92128
                                         (858) 485-6535  (858) 485-0608 fax
                                         natashanaraghi@amslawoffice.com

                                         /s/ Geoffrey J. Spreter
                                         Geoffrey J. Spreter, Esq.
                                         SPRETER LEGAL SERVICES, APC
                                         601 3rd Street
                                         Coronado, CA 92118
                                         Telephone: 619-865-7986
                                         spreterlegalservices@gmail.com

FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL